UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH A. DAOU and KAREN M. DAOU,

                Plaintiff,

v.

BLC BANK, S.A.L., CREDIT LIBANAIS,
S.A.L., AL-MAWARID BANK, S.A.L., and
BANQUE DU LIBAN,

                Defendants.

Case No. 1:20-cv-4438-DLC

**DEFENDANTS BLC BANK, S.A.L., AND CREDIT LIBANAIS, S.A.L.'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR AN ORDER OF ATTACHMENT</u>**

Jeffrey D. Rotenberg
Caroline A. Fish
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel. 212.335.4500
Fax. 212.335.4501

*Attorneys for BLC Bank, S.A.L., and
Credit Libanais, S.A.L.*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.   STATEMENT OF FACTS .......................................................................................... 2

II.  PLAINTIFFS FAIL TO CARRY THEIR HEAVY BURDEN OF SHOWING THAT
     PREJUDGMENT ATTACHMENT IS WARRANTED ................................................ 3

     A.   Plaintiffs Fail To State A Claim For Money Judgment ..................................... 4

     B.   Plaintiffs Fail To Demonstrate Probability Of Success On The Merits ............. 4

     C.   Plaintiffs Fail to Demonstrate One or More Grounds For Attachment ............. 7

          1.   Plaintiffs Fail To Satisfy CPLR § 6201(1) ........................................... 8

          2.   Plaintiffs Fail To Satisfy CPLR § 6201(3) ........................................... 11

III. THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY ATTACHMENT ............ 13

IV.  IF ATTACHMENT IS GRANTED, PLAINTIFFS SHOULD BE REQUIRED TO POST A
     SIGNIFICANT BOND ................................................................................................ 14

V.   THE BANKS AND AM BANK SHOULD NOT BE JOINTLY AND SEVERALLY LIABLE
     FOR THE AMOUNT OF ANY ATTACHMENT ORDER ............................................ 15

VI.  PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY SHOULD BE DENIED ............. 16

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Solar Power, Inc.*,
  2019 WL 2210661 (S.D.N.Y. May 22, 2019) ............................................................... 3, 10

*Al Rushaid v. Pictet & Cie*
  28 N.Y.3d 316 (2016) ......................................................................................................... 6, 7

*Ally Bank v. Reimer*,
  2010 WL 446025 (E.D.N.Y. Jan. 29, 2010), *R. & R.adopted*
  2010 WL 1163268 (E.D.N.Y. Mar. 12, 2010) ..................................................................... 4

*In re Amaranth Natural Gas Commodities Litigation*
  711 F. Supp. 2d 301 (S.D.N.Y. 2010) ................................................................................ 10

*Asdourian v. Konstantin*,
  50 F. Supp. 2d 152 (E.D.N.Y. 1999) .................................................................................. 13

*Ayyash v. Bank Al-Madina*,
  233 F.R.D. 325 (S.D.N.Y. 2005) ....................................................................................... 19

*Ayyash v. Bank Al-Madina*,
  2004 WL 3464721 (S.D.N.Y. Nov. 19, 2004) .................................................................... 19

*BlackRock, Inc. v. Schroders PLC*,
  2007 WL 1573933 (S.D.N.Y. May 30, 2007) .................................................................... 17

*Bollenbach v. Haynes*,
  2018 WL 4278347 (S.D.N.Y. May 29, 2018) .................................................................... 13

*Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*,
  178 F. Supp. 2d 380 (S.D.N.Y. 2001) ..................................................................... 3, 4, 11, 13

*Cargill Fin. Serv. Int'l, Inc. v. Bank Fin. & Credit Ltd.*,
  896 N.Y.S.2d 317 (1st Dep't 2010) .................................................................................... 14

*Caronia v. Hustedt Chevrolet, Inc.*,
  2009 WL 3615289 (E.D.N.Y. Oct. 30, 2009) .................................................................... 14

*Cecere v. County of Nassau*,
  258 F. Supp. 2d 184 (E.D.N.Y. 2003) ................................................................................ 20

*Computer Strategies, Inc. v. Commodore Bus. Machs., Inc.*,
  105 A.D.2d 167 (1984) ....................................................................................................... 13

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
  594 F. Supp. 2d 308 (E.D.N.Y. 2009) ............................................................................... 3, 4

*Elliott Assocs., L.P. v. Republic of Peru*,
   948 F. Supp. 1203 (S.D.N.Y. 1996) ...................................................................... 8, 13, 14

*Elton Leather Corp. v. First Gen. Res. Co.*,
   138 A.D.2d 132 (1st Dep't 1988) .................................................................................. 3

*Etalon Imob S.R.L. v. Schoenbach*
   2012 WL 4741595 (S.D.N.Y. Oct. 3, 2012) ................................................................ 10

*Fratelli Italiani, LLC v. Mironova*,
   2019 WL 3759160 (S.D.N.Y. Apr. 11, 2019) ............................................................... 3

*Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*,
   862 F. Supp. 1070 (S.D.N.Y. 1994) ..................................................................... 3, 9, 13

*Grafstein v. Schwartz*,
   100 A.D.3d 699 (2d Dep't 2012) ................................................................................... 3

*Herzi v. Ateliers De La Haute-Garonne*,
   2015 WL 8479676 (S.D.N.Y. Oct. 13, 2015) ............................................................... 3

*Hume v. 1 Prospect Park ALF, LLC*,
   137 A.D.3d 1080 (2d Dep't 2016) ............................................................................... 15

*In Gem Holdco, LLC v. Changing World Technologies, L.P.*,
   2015 WL 1227936 (Sup. Ct., N.Y. Cty. Mar. 18, 2015) ........................................ 10, 11

*Jones v. U.S. Postal Service*,
   2020 WL 5525748 (S.D.N.Y. Sept. 15, 2020) ............................................................ 18

*JP Morgan Chase Bank, N.A. v. Reijtenbagh*
   615 F. Supp. 2d 278 (S.D.N.Y. 2009) ......................................................................... 19

*Kashi v. Gratsos*
   790 F.2d 1050 (2d Cir. 1986) ...................................................................................... 16

*Levy v. Young Adult Institute, Inc.*,
   2015 WL 170442 (S.D.N.Y. Jan. 13, 2015) ................................................................ 17

*Litwin v. OceanFreight, Inc.*,
   865 F. Supp. 2d 385 (S.D.N.Y. 2011) ......................................................................... 17

*Meridien Int'l Bank Ltd, v. Gov't of Republic of Liberia*,
   1996 WL 22338 (S.D.N.Y. Jan. 22, 1996) ................................................................ 8, 9

*Mischon de Reya New York LLP v. Grail Semiconductor, Inc.*,
   2011 WL 6957595 (S.D.N.Y. Dec. 28, 2011) .......................................................... 3, 11

*Musket Corp. v. PDVSA Petroleo, S.A.*,
   512 F. Supp. 2d 155 (S.D.N.Y. 2007) ...................................................................... 4, 13

*Nat'l Audubon Soc., Inc. v. Sonopia Corp.*,
  2009 WL 636952 (S.D.N.Y. Mar. 6, 2009) ............................................................ 3

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ..................................................................... 17, 18

*OMG Fid., Inc. v. Sirius Techs., Inc.*,
  239 F.R.D. 300 (N.D.N.Y. 2006) ..................................................................... 17

*Oriska Ins. Co. v. Avalon Gardens Rehab. & Health Care Center, LLC*,
  2018 WL 6074693 (N.D.N.Y. Nov. 21, 2018) ..................................................... 17

*Plaintiff Funding Holding, Inc. v. Carrera*,
  2017 WL 7411183 (E.D.N.Y. Feb. 6, 2017) ..................................................... 8, 13

*R.B. Dev. Co., Ltd. v. Tutis Capital LLC*
  2018 WL 7076023 (E.D.N.Y. Nov. 14, 2018) ..................................................... 16

*Reed Smith LLP v. Leed HR LLC*,
  156 A.D.3d 420 (1st Dep't 2017) ..................................................................... 12

*Samirah & Enung v. Sabhnani*
  2010 WL 2629770 (E.D.N.Y. June 28, 2010) ..................................................... 11

*Sidwell & Co., Ltd. v. Kamchatimpex*,
  632 N.Y.S.2d 455 (Sup. Ct., N.Y. Cty. 1995) ..................................................... 14

*Signal Capital Corp. v. Frank*,
  895 F. Supp. 62 (S.D.N.Y.1995) ................................................................. 12, 13

*Silverman v. Miranda*,
  116 F. Supp.3d 289 (S.D.N.Y. 2015) ................................................................. 3

*Skyline Steel, LLC v. PilePro, LLC*,
  2015 WL 5076695 (S.D.N.Y. Aug. 27, 2015) ..................................................... 3

*Societe Generale Alsacienne de Banque, Zurich v. Flemington Dev. Corp.*,
  118 A.D.2d 769 (2d Dep't 1986) ..................................................................... 12

*Special Situations Cayman Fund, L.P. v. Dot Com Ent. Group, Inc.*,
  2003 WL 23350128 (W.D.N.Y. Dec. 5, 2003) ..................................................... 17

*Standard Steel & Tinplate Corp. v. Manuel Int'l D.I.S.C. Inc.*,
  1981 WL 6769692 (S.D.N.Y. Nov. 10, 1981) ..................................................... 8, 9

*Strategic Growth Int'l Inc. v. RemoteMDx Inc.*,
  2008 WL 4179235 (S.D.N.Y. Sept. 10, 2008) ..................................................... 8

*Strike 3 Holdings, LLC v. Doe*,
  331 F.R.D. 14 (E.D.N.Y. 2019) ..................................................................... 18

*Swift Splash Ltd. v. Rice Corp.*,
    2010 WL 3767131 (S.D.N.Y. Sept. 27, 2010) .................................................................. 3

*Thornock v. Kinderhill Corp.*,
    712 F. Supp. 1123 (S.D.N.Y.1989) ................................................................................ 13

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*,
    109 A.D.3d 49 (2013) ...................................................................................................... 8

*Von Bock v Metro. Life Ins. Co.*,
    223 A.D.2d 700 (2d Dep't 1996) ................................................................................... 15

*Weider Health & Fitness v. AusTex Oil Ltd.*,
    2018 WL 8579820 (S.D.N.Y. Dec. 19, 2018), *R. & R. adopted*
    2019 WL 1324049 (S.D.N.Y. Mar. 25, 2019) .................................................................. 8

*Wen v. CT & TC Corp.*,
    2017 WL 59082 (E.D.N.Y. Jan. 5, 2017) ......................................................................... 3

*Wilcox Indus. Corp. v. Hansen*,
    279 F.R.D. 64 (D.N.H. 2012) ....................................................................................... 17

## Statutes

N.Y. C.P.L.R. § 6201 ......................................................................................................... *passim*

N.Y. C.P.L.R. § 6212 ................................................................................................................. 4

N.Y. C.P.L.R. § 7502 .............................................................................................................. 11

Fla. Stat. § 673.4121 ................................................................................................................. 4

## Other Authorities

Weinstein, et al., 12 New York Civil Practice: CPLR, ¶ 6201.02 (2d ed. 2008) ......................... 3

Defendants BLC Bank, S.A.L. ("BLC"), and Credit Libanais, S.A.L. ("CL," together the "Banks"), by and through their undersigned attorneys, respectfully submit this memorandum of law in opposition to the motion for an order of attachment ("Motion") filed by Joseph and Karen Daou ("Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs' Motion should be denied.  Plaintiffs fall well-short of carrying their heavy burden of establishing a right to this extraordinary and harsh remedy.  Plaintiffs fail to satisfy the elements for attachment under New York law:

*First*, Plaintiffs fail to plead any claim for monetary relief, as set forth in the Banks' motion to dismiss Plaintiffs' complaint (*see* ECF No. 44).

*Second*, Plaintiffs have not and cannot show a probability of success on the merits.  Beyond the lack of substantive merit to Plaintiffs' claims, Plaintiffs fail to establish personal jurisdiction over the Banks.  They also fail to show that this is the proper forum for this dispute.  As established in the Banks' motion to dismiss the Plaintiffs' complaint (ECF No. 44), it is not.

*Third*, Plaintiffs cannot demonstrate any ground for attachment under New York's Civil Practice Law and Rules ("CPLR") § 6201.  They offer proof of neither (a) the need for the *drastic action* of an order of attachment, as required by § 6201(1), nor (b) any *intent* to defraud or frustrate a judgment or *actual conduct* evincing fraud or frustration, as required by § 6201(3).

While Plaintiffs fail to satisfy the statutory elements for attachment, even had they, the Court should exercise its discretion to deny the Motion because attachment would impact and disrupt a Lebanese banking system that is already under extreme stress and unduly prioritize Plaintiffs over other of the Banks' customers and creditors.

Finally, Plaintiffs do not make the requisite showing for expedited discovery.

The Court should deny Plaintiffs' Motion, along with Plaintiffs' request for expedited discovery.[1]

## ARGUMENT

### I.   STATEMENT OF FACTS

The relevant facts are contained in the Banks' Memorandum of Law in Support of Their Motion to Dismiss the Plaintiffs' Complaint and the Declaration of Elias Joseph Abimrad (Ex. 1), the Declaration of Bassam Farid Hassan (Ex. 2), the Declaration of Patrick Soumrani (Ex. 15), and the Declaration of Nasri Antoine Diab (Ex. 16).[2] *See* ECF Nos. 43–45.

Plaintiffs filed suit on June 10, 2020, against the Banks along with Al-Mawarid Bank, S.A.L.'s ("AM Bank") and Banque du Liban, the Central Bank of Lebanon ("Central Bank"). Compl., ECF No. 1.  On July 22, 2020, the parties filed a joint-letter motion reflecting the Banks' and defendant Am Bank's agreement to accept service of the Complaint as part of a stipulation with Plaintiffs on a briefing schedule for the Banks' and AM Bank's anticipated motions to dismiss.  ECF Nos. 16, 17.  On July 24, 2020, the Court ordered a briefing schedule for these motions to dismiss, with the Banks' moving brief due on October 9, 2020.  ECF No. 23.  Six days later, on July 30, 2020, Plaintiffs moved for an order of prejudgment attachment against the Banks and AM Bank's United States assets and for expedited discovery relating to those assets.  ECF Nos. 24–27.  The Court ordered *sua sponte* that the opposition to the Motion should be filed along with the anticipated motions to dismiss on October 9, 2020.  ECF Nos. 23, 24.

---

[1] The Banks incorporate the arguments contained in AM Bank's Opposition to Plaintiffs' Motion for Attachment (ECF No. 42) and its Memorandum of Law in Support of its Motion to Dismiss (ECF No. 41-1), as applicable.

[2] Exhibits cited "Ex." are attached to the Declaration of Jeffrey D. Rotenberg, ECF No. 45, filed October 9, 2020.

## II.  PLAINTIFFS FAIL TO CARRY THEIR HEAVY BURDEN OF SHOWING THAT PREJUDGMENT ATTACHMENT IS WARRANTED

Attachment is an extraordinary and harsh remedy that is not "lightly granted." *Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1073 (S.D.N.Y. 1994).[3]  That is because attachment "'deprives the defendant of the use and enjoyment of property at an extremely embryonic stage of the litigation[,] . . . long before the defendant's liability to the plaintiff is established.'"  *Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*, 178 F. Supp. 2d 380, 383 (S.D.N.Y. 2001) (quoting Weinstein, et al., 12 New York Civil Practice: CPLR, ¶ 6201.02 (2d ed. 2008)); *accord Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, 2009 WL 636952, at *2 (S.D.N.Y. Mar. 6, 2009).  Given the harshness of the remedy, plaintiffs "bear[] a heavy burden in attempting to establish [their] right to an attachment."  *Skyline Steel, LLC v. PilePro, LLC*, 2015 WL 5076695, at *2 (S.D.N.Y. Aug. 27, 2015).[4]

A plaintiff seeking an order of attachment must show "that (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits;" (3) it has demonstrated one or more grounds for attachment under CPLR § 6201; "and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff."  *DLJ Mortg. Cap.,*

---

[3] Plaintiffs' cases agree: "[a]ttachment is an extraordinary remedy" and "courts are leery of granting such harsh relief." *See, e.g.*, *Fratelli Italiani, LLC v. Mironova*, 2019 WL 3759160, at *7 (S.D.N.Y. Apr. 11, 2019) (internal citations and quotations omitted); *Herzi v. Ateliers De La Haute-Garonne*, 2015 WL 8479676, at *2 (S.D.N.Y. Oct. 13, 2015) (prejudgment attachment a "drastic remedy").

[4] The law is "well established" that the attachment statute must be "*strictly*" construed against the Plaintiffs contrary to what they argue. *See Buy This, Inc.*, 178 F. Supp. 2d at 383 ("[I]t is well established that the New York attachment statutes are construed strictly against those who seek to invoke the remedy."); *Silverman v. Miranda*, 116 F. Supp.3d 289, 310–311 (S.D.N.Y. 2015) ("[b]ecause attachment is a harsh remedy, the statute must be strictly construed in favor of those against whom it may be applied.") (quotation omitted) (citing cases); *accord Skyline Steel*, 2015 WL 5076695, at *2; *Swift Splash Ltd. v. Rice Corp.*, 2010 WL 3767131, at *4 (S.D.N.Y. Sept. 27, 2010); *DLJ Mortg. Capital*, 594 F. Supp. 2d at 319; *Wen v. CT & TC Corp.*, 2017 WL 59082, at *2 (E.D.N.Y. Jan. 5, 2017); *Grafstein v. Schwartz*, 100 A.D.3d 699, 699 (2d Dep't 2012).  Plaintiffs' cases say the same. *See e.g.*, *Adler v. Solar Power, Inc.*, 2019 WL 2210661, at *3 (S.D.N.Y. May 22, 2019) ("party seeking . . . attachment bears a heavy burden . . .  because New York attachment statutes are construed strictly against those who seek to invoke the remedy.") (internal alterations and quotation omitted); *Mischon de Reya New York LLP v. Grail Semiconductor, Inc.*, 2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28, 2011) (same); *Elton Leather Corp. v. First Gen. Res. Co.*, 138 A.D.2d 132, 135 (1st Dep't 1988) (same).

*Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318–319 (E.D.N.Y. 2009) (quoting CPLR §§ 6212, 6201).  Plaintiffs fail nearly across the board in making the "particularly daunting" showing required to satisfy these elements.  *See Buy This, Inc.*, 178 F. Supp. 2d at 383.  The Motion should be denied.

### A.      Plaintiffs Fail To State A Claim For Money Judgment

The threshold for attachment is a claim for monetary relief.  *See Ally Bank v. Reimer*, 2010 WL 446025, (E.D.N.Y. Jan. 29, 2010), *R. & R. adopted* 2010 WL 1163268 (E.D.N.Y. Mar. 12, 2010) (where "papers clearly establish that the plaintiff must ultimately be defeated" no "cause of action exists").  Plaintiffs have not pleaded such a claim.  For the Motion, Plaintiffs rely on six of the Complaint's 12 causes of action: conversion, unjust enrichment, Florida Statute § 673.4121, and the three counts of breach of contract (one against each of the defendant commercial banks).  Pls.' Br., ECF 25, at 9.  The Banks' motion to dismiss the Complaint, filed contemporaneous with the instant opposition brief, demonstrates that none of these claims are viable as a matter of law.  *See* ECF No. 44, at Section II(B).  For the reasons discussed there and below, Plaintiffs have no monetary claim against the Banks.  The Motion thus fails to get off the starting gate.

### B.      Plaintiffs Fail To Demonstrate Probability Of Success On The Merits

Beyond pleading a cause of action for money judgment, Plaintiffs must demonstrate "[p]robability of success on the merits"—"that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case."  *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007); Pls. Br., ECF No. 25, at 9.  Plaintiffs' proffer of evidence in support of the Motion is basically the reiteration of the Complaint's insufficient allegations.  *See* Pls. Br., ECF No. 25, at 9–12.  It follows that by virtue of their failure to state a claim, Plaintiffs fail to meet the heightened "probability of success" standard here.  The factual evidence and Lebanese legal analysis the Banks offer in opposition to

the Motion further negates any possibility of Plaintiffs' prevailing on their claims.  *See* Exs. 1, 2, 15, 16.

Plaintiffs focus on two untenable bases in support of "the probability of success" of their claims.  First, Plaintiffs contend that they are likely to prevail because the Banks have wrongfully misappropriated their funds and wrongfully refused transfers of USD outside Lebanon.  Pls.' Br., ECF No. 25, at 10.  Plaintiffs offer no legal support for this bald assertion.  *Id.*  Plaintiffs do not even say what law applies for purposes of evaluating their claims, let alone how that law supports what they are claiming.  *Id.*  To be sure, Lebanese law governs the conduct of these Lebanese banks in their dealings with bank customers.  ECF No. 44, at Section II(A); Ex. 15, ¶¶ 6–9; Ex. 16, ¶¶ 8–11.  Yet, Plaintiffs do not articulate what Lebanese law required of the Banks and how the Banks violated this law in their dealings with Plaintiffs.  *See* Pls.' Br., ECF No. 25, at 10.  Nor do Plaintiffs discuss the parties' agreements and what these agreements say or do not say about Plaintiffs' rights and privileges as customers of the Banks.  *See id.*  Without this basic showing, Plaintiffs have not demonstrated any likelihood of success.

While the Banks bear no burden here, it should be noted that the Banks complied with their obligations under Lebanese law and the account opening agreements.  The Banks had the legal right to deny requests for international transfer of funds on deposit.  Ex. 15, ¶ 15; Ex. 16, ¶¶ 14–15.  The Banks had no legal or contractual obligations to make international transfers.  Ex. 1, ¶ 16; Ex. 2, ¶ 27; Ex. 15, ¶¶ 15–18; Ex. 16, ¶¶ 14–15; *see* Exs. 3–5.  In any event, the Banks may have been legally and practically precluded from making the requested transfers.  *See* Ex. 16, ¶¶ 17–18. In addition, under Lebanese law, the Banks' tender and Plaintiffs' acceptance of banker's checks drawn on the Central Bank was proper.  Ex. 15, ¶ 23; Ex. 16, ¶ 22.  By these banker's checks drawn on the Central Bank, Plaintiffs' funds are available for deposit by the Plaintiffs in Lebanon.

Ex. 1, ¶ 18; Ex. 16, ¶¶ 20–21.[5]  By Plaintiffs' acceptance of these checks, the Banks satisfied their obligations to Plaintiffs.  Ex. 15, ¶ 23; Ex. 16, ¶ 22.

Second, Plaintiffs argue that the Banks are subject to personal jurisdiction.  Pls.' Br., ECF No. 25, at 10.  Plaintiffs are wrong, as described in the Banks' motion to dismiss.  ECF No. 44, at Section I(A).  Plaintiffs' brief discussion of personal jurisdiction in the Motion confirms the Banks' analysis.  The conduct alleged in the terrorism and money laundering cases Plaintiffs cite (*see* Pls.' Br., ECF No. 25, at 11), involving multiple alleged criminal actors and global conspiracies, is fundamentally distinct from the few routine transactions that passed through correspondent accounts here.  *See* ECF No. 44, at Section I(A).  Plaintiffs do not and cannot allege that any one of the few correspondent account transactions with the Banks between 2016 and 2018 was illegal or improper (*see* Daou Decl., ECF No. 27, ¶¶ 22–29; 77–82) or that the correspondent bank accounts were at the center of any alleged wrongful scheme (indeed, Plaintiffs' actions demonstrate how peripheral the correspondent accounts were to any dealings, as they did deposit, transfer and withdraw money by other means).  *See, e.g.*, Ex. 2, ¶ 18.  This lawsuit is about how and where Plaintiffs' could access funds between October and December 2019, during the financial and banking situation Lebanon.  Unlike in the cases Plaintiffs cite, the correspondent accounts are merely incidental to the lawsuit.  *See* ECF No. 44, at Section I(A)(1).  These cases provide no support for finding personal jurisdiction over the Banks here.[6]

The New York Court of Appeals' 4-3 decision in *Al Rushaid v. Pictet & Cie* highlights

---

[5] Plaintiffs know this.  On December 3, 2019, Mr. Daou deposited a Central Bank-drawn banker's check (withdrawn from CL) at AM Bank to fund his newly opened account there in the amount of US $5,735,930.00.  Ex. 1, ¶ 19; *see* AM Br., ECF No. 41-1, at 5 (citing El Khoury Decl. ¶ 29); Daou Decl., ECF No. 27, at ¶ 145.

[6] Additional procedural grounds for dismissal exist apart from want of jurisdiction.  The BLC agreements with Plaintiffs contain a forum selection clause that mandates dismissal.  ECF No. 44, at Section I(B)(1).  Virtually all the other forum *non conveniens* factors also support dismissal of this action in favor of Lebanon.  ECF No. 44, at Section I(B)(2).

these differences.  28 N.Y.3d 316 (2016).  There, the court ruled that a substantial nexus existed between the defendant bank's correspondent accounts and the plaintiff's claims arising from a money laundering scheme.  *Id*. at 316–317.  The court emphasized that the claims "depend[ed]" on the "transfers of money to the New York correspondent bank as part of the money-laundering scheme that put the bribes/kickbacks in the hands of the employees" involved in the scheme.  The court explained that "the money laundering could not proceed without the use of the correspondent bank account," and that the "scheme . . . designed relied precisely on the existence of bank accounts in different jurisdictions, through which the money would pass," and as designed "necessarily including the use of a New York bank account."  *Id.* at 327–30.  To prevail, the plaintiffs had to show the actual flow of funds through the New York correspondent accounts on their way from the payors of the bribes to the recipients of the bribes.  Thus, the court found a substantial nexus between the accounts and the claims.

*Rushaid* teaches that to support personal jurisdiction over a foreign bank based on correspondent accounts, the bank's New York correspondent accounts must have an integral role in the wrongful scheme and a direct nexus to the victim's claims arising from the scheme. Applying this principle here, given the absence of facts showing the accounts' integral role and their required nexus to Plaintiffs' claims, a New York court should not assert jurisdiction over the Banks in this foreign dispute based solely on their correspondent accounts.

### C.      Plaintiffs Fail to Demonstrate One or More Grounds For Attachment

Plaintiff must also demonstrate one or more grounds for attachment under CPLR § 6201. Plaintiffs' motion relies on CPLR § 6201(1) and § 6201(3) (*see* Pls.' Br., ECF No. 25, at 12, 17), but Plaintiffs satisfy neither provision.  The Motion must be denied for this independent reason.

1.      Plaintiffs Fail To Satisfy CPLR § 6201(1)

Plaintiffs maintain that they need only show "that the defendant is not located in New York" to satisfy CPLR § 6201(1).  (Pls.' Br., ECF No. 25, at 13 n.1).  But residency alone is inadequate. *See Plaintiff Funding Holding, Inc. v. Carrera*, 2017 WL 7411183, at *5 (E.D.N.Y. Feb. 6, 2017) (Plaintiffs failed to satisfy CPLR § 6201(1) where the "sole argument in their brief addressing whether grounds for attachment exist" under this provision was defendants' place residence); *VisionChina Media Inc. v. S'holder Representative Servs., LLC,* 109 A.D.3d 49, 62 (2013) (that buyers were Chinese corporations was insufficient ground for granting sellers an attachment; there was no evidence that buyers lacked sufficient assets, or that they would choose to hide or otherwise dispose of their assets).  In fact, "[w]hen attachment is sought pursuant to § 6201(1) to secure a judgment . . . 'attachment should issue only upon a showing that *drastic action* is required for security purposes.'"  *Weider Health & Fitness v. AusTex Oil Ltd.*, 2018 WL 8579820, at *12 (S.D.N.Y. Dec. 19, 2018), *R. & R. adopted* 2019 WL 1324049 (S.D.N.Y. Mar. 25, 2019) (quoting *Elliott Assocs., L.P. v. Republic of Peru*, 948 F. Supp. 1203, 1214 (S.D.N.Y. 1996)) (internal alterations omitted) (emphasis added); *see Standard Steel & Tinplate Corp. v. Manuel Int'l D.I.S.C. Inc.*, 1981 WL 6769692, at *1 (S.D.N.Y. Nov. 10, 1981) ("no basis for a contention that sec. 6201(1) permits attachment in all instances in which the defendant is a foreign corporation not licensed to do business in New York").

Plaintiffs seek attachment to secure a judgment.  Pls.' Br., ECF No. 25, at 12, 18.  Thus, Plaintiffs must show why *drastic action* is required.  The "drastic action" standard requires that Plaintiffs show "there is reason to believe that Defendants will not satisfy any judgment entered against them."  *Weider Health*, 2018 WL 8579820, at *12 (citing *Strategic Growth Int'l Inc. v. RemoteMDx Inc.*, 2008 WL 4179235, at *7 (S.D.N.Y. Sept. 10, 2008)).  Plaintiffs must demonstrate "a real risk of the enforcement of a future judgment." *Meridien Int'l Bank Ltd, v.*

*Gov't of Republic of Liberia*, 1996 WL 22338, at *3 (S.D.N.Y. Jan. 22, 1996); *Expromtorg*, 862 F. Supp. at 1073 ("Generally, this Court has held that attachment for security purposes is only appropriate when plaintiff will have difficulty enforcing a judgment").  Here, Plaintiffs do not make this showing and thus fail to justify the drastic remedy of attachment under CPLR § 6201(1); *Standard Steel*, 1981 WL 6769692, at *1.

Plaintiffs hardly attempt to support their request for security by attachment.  They offer no evidence other than a declaration that virtually tracks the Complaint.  *See* Daou Decl., ECF No 27.  Plaintiffs make unsupported claims of "flagrant misconduct" and "financial instability."  Pls.' Br., ECF No. 25, at 16–17.  They talk about an inadequately alleged "Ponzi scheme" and "unlawful pact."  *Id.*  Plaintiffs offer no evidence supporting these claims.  At the same time, Plaintiffs do not and cannot show imminent or past actions by the Banks to place their assets out of the reach of Plaintiffs.  Again, Plaintiffs have been given banker's checks in the amounts of their deposits drawn on the Central Bank.  They can deposit these checks today in Lebanon (as Mr. Daou did in funding his AM Bank account).  *See* Ex. 1, ¶¶ 2, 18; Ex. 2, ¶¶ 29–30; Daou Decl., ECF No. 27, at ¶ 145.  There is obviously no reason to order attachment when Plaintiffs already have access to funds in the amounts they seek to attach.

Plaintiffs identify "political turmoil in Lebanon" as grounds for attachment, relying on a series of news articles regarding the financial and political situation in Lebanon.  *See* Exs. to Major Decl. 1–12, 14–24, ECF Nos. 26-1–26-12, 26-14–26-24.  This type of generalized claim does not alter the analysis.  For one thing, Plaintiffs cannot connect these assertions to the need for attachment.  And, certainly, Lebanon's history of and real-time turmoil did not dissuade Plaintiffs from effectively trading millions of dollars over nearly four years in pursuit of exorbitant interest rates.  *See* Ex. 7; Ex. 1, ¶¶ 14–15; Ex. 2, ¶¶ 21–22.  It did not dissuade Plaintiffs from continuing

to negotiate higher and higher rates into the fall of 2019.  *Id.*  It did not deter Plaintiffs from making overtures to the Banks about new deposits into December 2019 (which they declined, *see* Ex. 2, ¶ 30) and opening new accounts with at least AM Bank in Lebanon in December 2019.  *See* Daou Decl., ECF No. 27, ¶¶ 140, 145; Ex. 1, ¶ 19; AM Br. (citing El Khoury Decl. ¶ 29).

Plaintiffs' cases confirm that the drastic remedy of attachment is only justified by way of an evidentiary showing that defendants are imminently poised to or have already altogether disposed of all or nearly all of their assets—facts that Plaintiffs are unable to establish here.  *See* Pls.' Br., ECF No. 25, at 14–16.  If anything, these cases confirm the insufficiency of Plaintiffs' showing here:

First, in *Adler*, liability had been established on partial summary judgment, and the evidence showed defendant's "standard business practice" of "developing and then disposing of its main assets . . . and moving the proceeds into the People's Republic of China, at least partly, for the purpose of shielding the proceeds from judgment."  2019 WL 2210661, at **3–4.

Second in *In re Amaranth Natural Gas Commodities Litigation*, the defendant was in essence "seek[ing] to transfer nearly forty percent of its remaining assets to entities from whom plaintiffs will not be able to recover."  711 F. Supp. 2d 301, 304, 312 (S.D.N.Y. 2010).

Third, in *Etalon Imob S.R.L. v. Schoenbach*, the defendants admitted on the record that the escrow account that was supposed to hold the plaintiff's funds had been emptied, inexplicably, of these funds outside of only $45.  2012 WL 4741595, at n.1 (S.D.N.Y. Oct. 3, 2012).

Fourth, in *In Gem Holdco, LLC v. Changing World Technologies, L.P.*, the defendant was actively "forming a new corporate entity" in a possible "attempt[] to transfer assets to a new company to evade the . . . creditors' claims," tax credits at issue belonged to creditors, and the

party "admitted [a] lack of liquidity" that raised concerns regarding satisfaction of the judgment. 2015 WL 1227936, at *3 (Sup. Ct., N.Y. Cty. Mar. 18, 2015).

Plaintiffs' other cases all similarly fail to compel the result Plaintiffs demand.[7]  Plaintiffs' cases demonstrate the degree of proof required for the drastic remedy of attachment under CPLR § 6201(1) far exceeds Plaintiffs' showing here, particularly in the face of the Banks' competing evidence and the legal analysis required under Lebanese law, which Plaintiffs do not even attempt.

## 2.   Plaintiffs Fail To Satisfy CPLR § 6201(3)

CPLR § 6201(3) requires that Plaintiffs show that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."  This provision "has two parts, namely intent to engage in a prohibited act and the prohibited act itself."  *Buy This, Inc.*, 178 F. Supp. 2d at 382–383.  Plaintiffs, as "the part[ies] moving for the attachment," "ha[ve] the burden of proving . . . [both] of these . . . elements" in order to meet its burden under New York law.  *Id.*  They establish neither.

First, as Plaintiffs' cases affirm:

> Fraud is not lightly inferred, and the moving papers must contain evidentiary facts—as opposed to conclusions —proving the fraud . . . Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient. It must appear that such fraudulent intent really existed in the defendant's mind.

---

[7] In *Samirah & Enung v. Sabhnani*, the ground for attachment was CPLR § 6201(4), which Plaintiffs do not and cannot rely on here.  2010 WL 2629770, at *2 (E.D.N.Y. June 28, 2010).  There, the defendants had already been convicted after a jury trial of forced labor and related crimes, "the Plaintiffs [were] victims of the crimes for which the Defendants were convicted and the damages they [sought] were allegedly sustained as a result of the Defendants' criminal conduct."  *Id.*  As such, the court found attachment warranted, as "each element can be proven conclusively through previously litigated facts in the criminal trial."  *Id.*  Plaintiffs have no such facts or liability here.  Likewise, *Mischon De Reya* is not comparable.  As Plaintiffs indicate, *Mischon De Reya* concerned a pending arbitration—not at issue here—and the court applied a different statute, CPLR § 7502 (not relied on here).  2011 WL 6957595, at *3; Pls.' Br., ECF No. 25, at 15.  In applying that different statute, the court applied a different standard (not relevant here).  2011 WL 6957595, at *8.  The case is not comparable, though it should be noted that the court discredited the plaintiffs' conclusory assertion that defendant was poised to imminently transfer assets out of the reach of creditors as mere "speculation."  *Id.* at *9.

*Societe Generale Alsacienne de Banque, Zurich v. Flemington Dev. Corp.*, 118 A.D.2d 769, 772–773 (2d Dep't 1986) (internal citations and quotations omitted); *see also Reed Smith LLP v. Leed HR LLC*, 156 A.D.3d 420 (1st Dep't 2017) (attachment warranted where there was "*considerable evidence* of a far-reaching fraudulent scheme") (emphasis added).  Neither the Complaint nor the moving papers offer evidence suggestive of actual *intent* to defraud or any fraud itself.  At best, Plaintiffs offer speculation and theorizing, as opposed to facts, to support what are simply conclusory assertions of "circumstances" they allege show fraudulent intent and fraudulent conduct.  *See* Pls.' Br., ECF No. 25, at 18.   This speculation and theorizing is contradicted by documents attached to Plaintiffs' moving papers.  For example, Plaintiffs conclusorily allege that the Banks "refuse[d] to honor any checks . . . outside of Lebanon" and "Banks simply do not care about the rule of law or their clients' rights."  Pls.' Br., ECF No. 25, at 18.  But Plaintiffs' attach these checks and each unambiguously shows it is for deposit in Beirut, Lebanon only.  *See* ECF Nos. 27-5, 27-13, 27-16 ("Payable à Beirut").  Plaintiffs even attach letters that say the same: each check is available for payment in Lebanon.  *See* ECF Nos. 27-6, 27-14 ("Checks must be presented at local bank in Lebanon").  Plaintiffs do not—and cannot—explain why the Banks' issuance of valid checks to Plaintiffs for deposit in Lebanon constitutes an "intent to defraud or frustrate a judgment."  *See* Pls.' Br., ECF No. 25, at 18.  Rather, it shows the Banks' honored their obligations to the client in accordance with the parties' agreements and Lebanese law.  *See* Ex. 15, ¶ 23; Ex. 16, ¶ 22.

        Second, Courts have refused to infer the "danger" of transfer or disposition of assets where the plaintiffs "point[] to no actual or pending transfers or dispositions of assets that would frustrate a judgment in favor of [plaintiff] in [the] action by the defendants."  *Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y.1995).  Here, Plaintiffs have alleged no actual or pending transfers

or dispositions of assets that would frustrate a judgment in their favor.  And, even if they had (which they have not), transfer or deposition is insufficient alone to support attachment.  *See Computer Strategies, Inc. v. Commodore Bus. Machs., Inc.*, 105 A.D.2d 167, 173 (1984).  Evidence of wrongful intent is required to transform a transfer or disposition into a basis for an attachment order.  Such evidence is entirely lacking.  Accordingly, Plaintiffs have failed to satisfy their evidentiary burden for attachment on this ground.

## III.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY ATTACHMENT

Even if Plaintiffs had satisfied the statutory requirements for attachment (which they have not), the Court can and should exercise its discretion to deny attachment.  "Satisfaction of the statutory criteria . . . does not guarantee that a court will issue such a relief. '[S]uch relief is discretionary, and since attachment is a harsh remedy, the court must exercise care in its application.'"  *Musket Corp., S.A.*, 512 F. Supp. 2d at 160 (quoting *Signal Capital*, 895 F. Supp. at 64); *Buy This, Inc.*, 178 F. Supp. 2d at 383("[E]ven if [the plaintiff] fulfills its burden of proving all the [statutory] elements . . . 'it would still be possible to deny the harsh remedy of attachment, for attachment is a discretionary remedy.'") (quoting *Thornock v. Kinderhill Corp.*, 712 F. Supp. 1123, 1132 (S.D.N.Y.1989)); *accord Elliott Assocs.*, 948 F. Supp. at 1211; *Expromtorg*, 862 F. Supp. at 1073; *Bollenbach v. Haynes*, 2018 WL 4278347, at *2 (S.D.N.Y. May 29, 2018); *Carrera*, 2017 WL 7411183, at *5; *Asdourian v. Konstantin*, 50 F. Supp. 2d 152, 159 (E.D.N.Y. 1999).  There are a number of reasons why Plaintiffs' motion should be denied apart from the failure to satisfy the statutory elements of attachment.

First, the consequences of an attachment order support denial of this motion.  Attachment would risk disruption of the correspondent banking system and the Banks' regular business activities to the detriment of the markets and the Banks' customers.  New York courts have

13

exercised their discretion to deny attachment of correspondent accounts on such grounds, despite satisfaction of the statutory factors.  *See, e.g.*, *Cargill Fin. Serv. Int'l, Inc. v. Bank Fin. & Credit Ltd.*, 896 N.Y.S.2d 317, 318 (1st Dep't 2010) (denying attachment of correspondent accounts where "[t]he evidence showed that . . . the wholesale attachment of all funds in the accounts would have interfered with innocent third parties' access to their money"); *Sidwell & Co., Ltd. v. Kamchatimpex,*, 632 N.Y.S.2d 455, 459 (Sup. Ct., N.Y. Cty. 1995) ("If New York permits correspondent bank accounts to be regularly subject to attachment . . . the entire system of correspondent banking, in which New York banks play an important role, will be disrupted").  It is also apparent that attachment would impact and disrupt a Lebanese banking system that is already under stress.  Courts have exercised their discretion to deny attachment where it would cause undue harm to a nation's economy.  *See Elliott Associates*, 948 F. Supp. at 1214 (denying attachment where there were "significant concerns about the consequences of an attachment to . . . the Peruvian economy").

Second, New York Courts recognize that attachment is improper where a creditor is using the device to obtain priority over other creditors.  *See Caronia v. Hustedt Chevrolet, Inc.*, 2009 WL 3615289, at *2 (E.D.N.Y. Oct. 30, 2009).  Here, a potential consequence of granting a freeze order would be to give preferential treatment to the Plaintiffs over other of the Banks' customers. And under both New York and Lebanese banking laws, all customer-creditors are required to be treated on an equal basis.  *See* Ex. 16, ¶¶ 28–29.  The Court should not allow Plaintiffs to improperly obtain a priority over other customers with respect to the Banks' assets.

## IV.   IF ATTACHMENT IS GRANTED, PLAINTIFFS SHOULD BE REQUIRED TO POST A SIGNIFICANT BOND

Plaintiffs acknowledge a bond is appropriate should their motion be granted in whole or in part.  Pls. Br., ECF No. 25, at 22.  Where the parties differ is as to the magnitude of the bond.

Plaintiffs seek a mere $500.00 undertaking.  *Id.*  Courts routinely hold that a $500 undertaking is insufficient where a defendant's risk is greater (as here) and that a much higher undertaking is required "to protect the defendant's interest during the pendency of [the] action."  *Von Bock v Metro. Life Ins. Co.*, 223 A.D.2d 700, 700 (2d Dep't 1996) ("$500 undertaking was inadequate"); *Hume v. 1 Prospect Park ALF, LLC*, 137 A.D.3d 1080, 1081 (2d Dep't 2016) ("the $500 bond . . . was inadequate").  Plaintiffs' undertaking should be in an amount equal to or greater than the amount of the attachment—precisely, the dollar amount of funds attached at each of the Banks. For example, if $5 million USD is attached, Plaintiffs should be required to post at least $5 million USD.

## V.   THE BANKS AND AM BANK SHOULD NOT BE JOINTLY AND SEVERALLY LIABLE FOR THE AMOUNT OF ANY ATTACHMENT ORDER

Plaintiffs claim that attachment should be joint and several among the Banks and AM Bank because they have a "successful conspiracy claim."  Pls.' Br., ECF No. 25, at 21.  As detailed in the Banks' motion to dismiss, Plaintiffs have failed to plead civil conspiracy as a matter of law. *See* ECF No. 44, at Section II(B)(6).  Under New York law, on which they appear to reply, Plaintiffs need to show an underlying tort for a conspiracy claim.  *Id.*  Yet, they do not address either of their two underlying torts (for fraud and conversion) in their Motion.  *See* Pls.' Br., ECF No. 25, at 21.  If no fraud and no conversion, there can be no conspiracy.

Plaintiffs certainly do not proffer evidence demonstrating they are likely to prevail on their conspiracy claim.  Without any proof and relying solely on speculation, Plaintiffs allege that "Defendants *agreed to* and *did unlawfully refuse* to allow Plaintiffs and certain other USD depositors to transfer their USD outside Lebanon and to instead misappropriate Plaintiffs' USD for their own use to the exclusion of Plaintiffs."  *Id.* at 22 (emphasis added).  Plaintiffs speculate that "Defendants also *agreed to* and *did make* fraudulent misrepresentations . . . to carry out their

scheme of hoarding USD in Lebanon and misappropriating Plaintiffs' USD on deposit with the Banks to do so." *Id.* (emphasis added).  They vaguely allege that "Defendants *agreed to* and *did pass* off bad checks" and that "[a]ll of Defendants' misconduct was intentional.  *Id.*  (emphasis added).  Plaintiffs cite no support or evidence for any of these speculations.  *See id.*  They plead no facts demonstrating that any one defendant has ever met or corresponded with another, much less "*agreed*" to carry out an elaborate international scheme against Plaintiffs, or any depositors for that matter.  Without a civil conspiracy claim, Plaintiffs' request for joint and several attachment should be denied.

The primary cases that Plaintiffs rely on demonstrates just *how far* Plaintiffs are from the successful conspiracy claim to support joint and several liability for an attachment.  *See id.* at 21.  In *Kashi v. Gratsos*, the defendant's status as "a member of the civil conspiracy" had already been "proved by [plaintiff] at trial" such that he was jointly and severally with his co-conspirators for the victim's losses.  790 F.2d 1050, 1054 (2d Cir. 1986).  Similarly, in *R.B. Dev. Co., Ltd. v. Tutis Capital LLC*, there had already been multiple judgments as to conspiracy liability.  2018 WL 7076023, at *4 (E.D.N.Y. Nov. 14, 2018).  Here, Plaintiffs have no such findings upon which to rely.

The Court should reject Plaintiffs' request for joint and several liability should Plaintiffs' Motion be granted (which, as discussed above, it should not be).

## VI.   PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY SHOULD BE DENIED

Plaintiffs claim they should be entitled to "limited, expedited discovery so that Plaintiffs can discovery (*sic*) all of the Banks' United States assets."  Pls.' Br., ECF No. 25, at 24.  Expedited discovery "is available only at the district court's sound discretion."  *BlackRock, Inc. v. Schroders*

*PLC*, 2007 WL 1573933, at *8 (S.D.N.Y. May 30, 2007).  The Court should deny Plaintiffs' request here.

As a threshold matter, "'the pendency of defendants' motions to dismiss weighs against ordering expedited discovery.'"  *Oriska Ins. Co. v. Avalon Gardens Rehab. & Health Care Center, LLC*, 2018 WL 6074693, at *10, n.13 (N.D.N.Y. Nov. 21, 2018) (quoting *Wilcox Indus. Corp. v. Hansen*, 279 F.R.D. 64, 72 (D.N.H. 2012) and citing *OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 304 (N.D.N.Y. 2006) ("The filing or the anticipated filing of such a dismissal motion is a factor that the court may consider in ruling upon a motion for expedited discovery.")).  The Banks' have a pending and potentially dispositive motion to dismiss that weighs against a grant of expedited discovery here.  *See* ECF No. 44.

As to the applicable standard, Plaintiffs are mistaken in their contention that the *Notaro* test should not be considered in assessing their request for expedited discovery.[8]  To satisfy this test, Plaintiffs must "demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982); *see Jones v. U.S. Postal Service*, 2020 WL 5525748, at 1 (S.D.N.Y. Sept. 15, 2020) (applying *Notaro* test).

---

[8] Plaintiffs claim the *Notaro* test should not apply because Plaintiffs are seeking compensatory relief, not injunctive relief.  Pls.' Br., ECF No. 25, at n. 2.  First, Plaintiffs are seeking expedited discovery for purposes of emergency non-monetary relief—an order of attachment on property.  Second, the *Notaro* Court was not limited to injunctive relief in its holding or rationale.  *See Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982) ("[T]he court must fashion standards for granting leave [for expedited discovery] that protect the defendant").  Today, courts are free to consider either standard and the *Notaro* test is often considered.  *Special Situations Cayman Fund, L.P. v. Dot Com Ent. Group, Inc.*, 2003 WL 23350128, at n.7 (W.D.N.Y. Dec. 5, 2003) (declining to "select the appropriate standard to be applied to a request for expedited discovery" and holding that plaintiffs' request failed to satisfy either standard); *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385 (S.D.N.Y. 2011) ("Courts in the Second Circuit employ two tests for determining the propriety of an expedited discovery request"; denying request for expedited discovery under both standards); *Levy v. Young Adult Institute, Inc.*, 2015 WL 170442, at *11 (S.D.N.Y. Jan. 13, 2015) ("Plaintiffs have not met the burden for expedited discovery under either of the Second Circuit standards.").

Plaintiffs fail to establish any of these elements.  *See* Pls.' Br., ECF No. 25, at 23.  First, Plaintiffs do not satisfy the threshold irreparable injury requirement.  Apart from the lack of cognizable injury altogether, the suggestion of any risk of irreparable injury is negated by Plaintiffs' decision to wait months after the Banks' rejection of their purported return of the banker's checks before filing the Motion.  *See* Ex. 1, ¶¶ 19–22; Ex. 2, ¶ 32–36.  Second, Plaintiffs fail to show a probability of success on the merits of their claim as described above and in the Banks' motion to dismiss.  *See supra*, Section II(B); ECF No. 44, at Section II.  Third, Plaintiffs fail to show a connection between expedited discovery and the avoidance of irreparable injury (assuming there was irreparable injury).  Finally, the balancing of harms weighs heavily against a grant of expedited discovery.  *See supra*, Section III.

Even under the reasonableness standard Plaintiffs ask the Court to apply, Plaintiffs fail to satisfy their burden.  Pls.' Br., ECF No. 25, at n.2.  Plaintiffs' only articulated basis for expedited discovery is that they want to "ensur[e] that Defendants will not . . . evade the attachment of Defendants' assets in the United States."  *Id.*  This generic statement is no different than what any plaintiff purporting to seek monetary recovery could offer in support of an attachment motion—a conclusory concern of evasion or lack of assets to satisfy a judgment.  It is not alone a reasonable basis for expedited discovery.  *See Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14, 17 (E.D.N.Y. 2019) (evaluating "'the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances'"; denying motion) (quoting *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting motion only after finding a "substantial showing of merit to [plaintiff's] claims" and "strong evidentiary showing" of need for expedited discovery)).

*JP Morgan Chase Bank, N.A. v. Reijtenbagh*, cited by Plaintiffs, does not advance their cause.  615 F. Supp. 2d 278, 281–83 (S.D.N.Y. 2009).  In that case, defendants pledged artwork

as collateral on a debt, and the artwork was housed in a designated location pursuant to the parties' pledge agreement. *Id.* When a state court granted an application to seize the collateral upon defendant's default, the artwork was missing from the contractually designated location. *Id.* The court then allowed expedited discovery to help plaintiffs locate the collateral. *Id.* at 283. Here, there is no specific missing asset as in *Reihtenbagh* that Plaintiffs are legally entitled to and that discovery will allow Plaintiffs to pursue. Instead, Plaintiffs seek broad asset discovery on a theory not pleaded in the Complaint, and Plaintiffs do not demonstrate legal entitlement to any property in the Banks' possession. *See* Pls.' Br., ECF No. 25, at 23; Ex. 15, ¶ 23; Ex. 16, ¶¶ 20–22.

Plaintiffs' reliance on *Ayyash v. Bank Al-Madina* fares no better. 233 F.R.D. 325, 326 (S.D.N.Y. 2005). There, Plaintiffs made a "strong evidentiary showing"—with specific allegations and proof—that a trusted bank executive engaged in an elaborate scheme to siphon money from the plaintiff's bank over time until the bank ultimately collapsed under the fraudulent conduct. *Ayyash v. Bank Al-Madina*, 2004 WL 3464721, at ¶ 22 , 25, 27, 57 (S.D.N.Y. Nov. 19, 2004). The court granted plaintiff's request for expedited discovery after evaluating "the reasonableness of the request in light of all the surrounding circumstances" and finding a "substantial showing of merit to [plaintiff's] claims." *Ayyash*, 233 F.R.D. at 327 (quotation omitted). Here, by contrast, Plaintiffs' allegations are entirely conclusory and contradicted, rather than confirmed, by actual facts and there is no "substantial showing of merit" to their claims.

These cases confirm that Plaintiffs' assertions are insufficient to support the request for expedited discovery under even the most lenient standard (which should not be applied in any event). *See Cecere v. County of Nassau*, 258 F. Supp. 2d 184, 188 (E.D.N.Y. 2003) ("The allegations in the complaint, without more, do not serve as a legitimate predicate for expedited

discovery."). Because Plaintiffs fail to make a showing that they are entitled to expedited discovery, the request should be denied.

## CONCLUSION

For the foregoing reasons, the Banks respectfully request that the Court deny Plaintiffs' Motion in its entirety.

DATED:  New York, New York
        October 9, 2020

Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ Jeffrey D. Rotenberg*
    Jeffrey D. Rotenberg
    Caroline A. Fish
    1251 Avenue of Americas
    New York, NY  10020-1104
    Tel.:  212.335.4500
    Fax.:  212.335.4501
    Jeffrey.Rotenberg@us.dlapiper.com
    Caroline.Fish@us.dlapiper.com

    *Attorneys for Defendants BLC*
    *Bank, S.A.L., and Credit Libanais,*
    *S.A.L.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am one of the attorneys for the defendant in this action and that on October 9, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.


/s/ *Jeffrey D. Rotenberg*
Jeffrey D. Rotenberg