UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH A. DAOU and KAREN M. DAOU,

                              Plaintiffs,

           -against-

BLC BANK, S.A.L.; CREDIT LIBANAIS, S.A.L.;
AL-MAWARID BANK, S.A.L.; and BANQUE
DU LIBAN,

                           Defendants.

Case No. 1:20-cv-04438 (DLC)

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
AM BANK S.A.L.**

**SQUIRE PATTON BOGGS (US) LLP**
Gassan A. Baloul
Mitchell R. Berger
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

Joseph S. Alonzo
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Counsel for Defendant AM Bank S.A.L.*

November 20, 2020

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ....................................................................................................... 7

I.      THE PARTIES' MANDATORY FORUM SELECTION AGREEMENT
        REQUIRES DISMISSAL UNDER THE DOCTRINE OF *FORUM NON
        CONVENIENS.* .................................................................................... 7

II.     PLAINTIFFS' ALLEGATIONS DO NOT STATE A *PRIMA FACIE* CASE FOR
        GENERAL OR SPECIFIC PERSONAL JURISDICTION OVER AM BANK............. 13

        A.      AM Bank is a Lebanese Bank with No U.S. Operations. ................................... 14

        B.      There is No General Jurisdiction over AM Bank Because AM Bank Is Not
                "Essentially at Home" in the United States. ........................................................ 14

        C.      Plaintiffs Do Not Establish Specific Jurisdiction over AM Bank........................ 15

III.    PLAINTIFFS FAIL TO ASSERT THEIR CLAIMS UNDER LEBANESE LAW,
        WHICH REQUIRES DISMISSAL OF THOSE CLAIMS. ............................................. 17

IV.     PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION, REQUIRING
        DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(6)............................................. 18

        A.      Plaintiffs Fail to State a Claim for Breach of Contract. ...................................... 19

        B.      Plaintiffs Fail to State Claims for Unjust Enrichment, Conversion, or
                Promissory Estoppel. ........................................................................................... 20

        C.      Plaintiffs Fail to State a Claim for Fraud. ........................................................... 21

        D.      Plaintiffs' "Bad Check" Claims Must Be Dismissed........................................... 22

        E.      Plaintiffs' Conspiracy Claim Must Be Dismissed. .............................................. 23

        F.      Plaintiffs' RICO Claims Must Be Dismissed. ..................................................... 24

CONCLUSION...................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alcoa S.S. Co. v. M/V Nordic Regent*,
   654 F.2d 147 (2d Cir. 1980)...................................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................18

*Atlantic Marine Constr. Co. v. U.S. Dist. Court*,
   571 U.S. 49 (2013)...................................................................................7, 8, 9, 11

*Bd. of Trustees v. BNY Mellon, N.A.*,
   No. 11-CV-6345, 2012 U.S. Dist. LEXIS 132724 (S.D.N.Y. Sept. 10, 2012)......................20

*BMW of N. Am. LLC v. M/V Courage*,
   254 F. Supp. 3d 591 (S.D.N.Y. 2017)....................................................................11

*Caribbean Wholesales & Serv. Corp. v. US JVC Corp.*,
   855 F. Supp. 627 (S.D.N.Y. 1994) .......................................................................17

*Chew v. Dietrich*,
   143 F.3d 24 (2d Cir. 1998)....................................................................................16

*Chirag v. MT Marida Marguerite Schiffahrts*,
   604 F. App'x 16 (2d Cir. 2015) ............................................................................13

*Crigger v. Fahnestock & Co.*,
   443 F.3d 230 (2d Cir. 2006)..................................................................................23

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).............................................................................................14

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019)..................................................................................15

*Druyan v. Jagger*,
   508 F. Supp. 2d 228 (S.D.N.Y. 2007)...............................................................5, 21

*Du Quenoy v. Am. Univ. of Beirut*,
   No. 19-3182, 2020 U.S. App. LEXIS 31436 (2d Cir. Oct. 2, 2020) ........................8, 9, 11, 12

*Erausquin v. Notz, Stucki Mgmt. (Berm.)*,
   806 F. Supp. 2d 712 (S.D.N.Y. 2011)....................................................................3

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
  20 F. Supp. 3d 451 (S.D.N.Y. 2014) (Cote, J.)...............................................................24, 25

*Giordano v. UBS, AG*,
  134 F. Supp. 3d 697 (S.D.N.Y. 2015)..................................................................................8, 9

*Guzman v. Hecht*,
  No. 18-cv-3947 (DLC), 2019 U.S. Dist. LEXIS 48193 (S.D.N.Y. Mar. 22,
  2019) ..........................................................................................................................................25

*Harte v. Ocwen Fin. Corp.*,
  No. 13-CV-5410, 2014 U.S. Dist. LEXIS 132611 (E.D.N.Y. Sept. 19, 2014) .......................21

*Hau Yin To v. HSBC Holdings, PLC*,
  700 F. App'x 66 (2d Cir. 2017) ...............................................................................................15

*Horvath v. Banco Comercial Portugues, S.A.*,
  461 F. App'x 61 (2d Cir. 2012) ...............................................................................................10

*Jazini by Jazini v. Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998).....................................................................................................13

*Johnson v. UBS AG*,
  791 F. App'x 240 (2d Cir. 2019) .............................................................................................14

*Kante v. All Taxi*,
  958 N.Y.S.2d 61 (App. Div. 2d Dep't 2010)......................................................................20, 21

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006).....................................................................................................23

*Korean Press Agency, Inc. v. Yonhap New Agency*,
  421 F. Supp. 2d 775 (S.D.N.Y. 2006)..................................................................................10, 11

*Kosher Provisions, Inc. v. Blue & White Food Prods. Corp.*,
  No. CV-04-361, 2005 U.S. Dist. LEXIS 48333 (E.D.N.Y. Aug. 9, 2005).............................21

*Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*,
  337 F. Supp. 3d 274 (S.D.N.Y. 2018)..................................................................................8, 10

*Levine v. Torino Jewelers, Ltd.*,
  05 CIV. 3159 (DLC), 2006 U.S. Dist. LEXIS 11932 (S.D.N.Y. Mar. 22, 2006)...................24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262, 2015 U.S. Dist. LEXIS 147561 (S.D.N.Y. Oct. 19, 2015) .....................16

*Licci v. Lebanese Canadian Bank*,
  673 F.3d 50 (2d Cir. 2012)..........................................................................................2, 13, 15

*Licci v. Lebanese Canadian Bank*,
    732 F.3d 161 (2d Cir. 2013)..................................................................................13, 15

*Licci v. Lebanese Canadian Bank*,
    739 F.3d 45 (2d Cir. 2013)...........................................................................................17

*Lurie v. Norwegian Cruise Lines, Ltd.*,
    305 F. Supp. 2d 352 (S.D.N.Y. 2004)........................................................................10

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972)....................................................................................................9, 17

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
    714 F.3d 714 (2d Cir. 2013)......................................................................................8, 11

*Magi XXI Inc. v. Stato della Citta del Vaticano*,
    818 F. Supp. 2d 597 (E.D.N.Y. 2011) .......................................................................10

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)........................................................................................8, 9

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2d Cir. 2014)........................................................................................19

*McLarty Capital P'ship SBIC, L.P. v. Brazda*,
    No. 18-cv-2599 (DLC), 2018 U.S. Dist. LEXIS 103615 (S.D.N.Y. June 20,
    2018) .............................................................................................................................8

*Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*,
    No. 03-cv-5262, 2004 U.S. Dist. LEXIS 3508 (S.D.N.Y. Mar. 5, 2004)...................8

*Negrete v. Citibank, N.A.*,
    759 F. App'x 42 (2d Cir. 2019) .................................................................................21

*Ocasio v. United States*,
    136 S. Ct. 1423 (2016)..........................................................................................23, 24

*Ortiz v. CIOX Health LLC*,
    No. 17cv4039(DLC), 2018 U.S. Dist. LEXIS 29010 (S.D.N.Y. Feb. 22, 2018)......22

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)..........................................................................................13

*Peschmann v. BlogTalkRadio, Inc.*,
    No. 15 Civ. 9504, 2017 U.S. Dist. LEXIS 156694 (S.D.N.Y. Sept. 22, 2017) .........3

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007)..........................................................................................9

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)...............................................................................................12

*Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*,
    No. 18-cv-3528, 2019 U.S. Dist. LEXIS 100901 (E.D.N.Y. June 17, 2019) ...........................3

*Roby v. Corporation of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993)...............................................................................................17

*Siverls-Dunham v. Seung Huen Lee*,
    No. 05 Civ. 7518, 2006 U.S. Dist. LEXIS 82927 (S.D.N.Y. Nov. 13, 2006) ........................16

*Spool v. World Child Intern. Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)...............................................................................................25

*SPV OSUS, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)...........................................................................................13, 14

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
    135 F. Supp. 3d 219 (S.D.N.Y. 2015).....................................................................................3

*In re Terrorist Attacks on Sept. 11, 2001*,
    295 F. Supp. 3d 416 (S.D.N.Y. 2018), *rev'd and remanded on other grounds
    sub nom.*, *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779
    F. App'x 66 (2d Cir. 2019) ..................................................................................................13

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................................................................15

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016)......................................................................................13, 14, 15

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003)...................5, 19

*Woo v. City of New York*,
    No. 93 Civ. 7007, 1996 U.S. Dist. LEXIS 11689 (S.D.N.Y. 1996) .......................................17

**Statutes**

18 U.S.C. § 1962.........................................................................................................................24

Fla. Stat. 68.065(3)(a) .................................................................................................................23

**Rules**

CPLR § 301..................................................................................................................................13

CPLR § 302..................................................................................................................................13

Fed. R. Civ. P. 9 ................................................................................................................ 2, 21

Fed. R. Civ. P. 12 ................................................................................................................. *passim*

## PRELIMINARY STATEMENT

In the midst of an unprecedented financial crisis in Lebanon[1], and after learning that their two other Lebanese banks[2] would not transfer their funds to them in the United States due to crisis-limits on U.S. dollar transactions[3], Plaintiffs tried to change their luck by moving their funds in December 2019 to new accounts at AM Bank S.A.L. ("AM Bank" or "the Bank").[4]   These circumstances alone negate any plausible allegation that Plaintiffs reasonably expected AM Bank would wire-transfer Plaintiffs' funds to them in the United States when Plaintiffs' other Lebanese banks would not.   Any such expectation was further negated by the terms of Plaintiffs' account agreements with AM Bank, which expressly acknowledged the Bank's right to decline, at its sole discretion, any particular type of transaction.   Still, when Plaintiffs requested a check for nearly all of their funds—including Plaintiffs' deposit with AM Bank, plus interest—the Bank issued them a check for the full amount requested, payable in Lebanon and drawn on the Bank's account at Lebanon's Central Bank (the BDL).   Despite Plaintiffs' amendment of their original allegations, it remains clear that AM Bank cannot be liable when it lived up to both the terms of its agreement with Plaintiffs and every reasonable expectation Plaintiffs could have had in these circumstances.

Plaintiffs' claims nonetheless do not belong in this Court.   Their agreements with AM Bank contain a mandatory forum selection clause requiring Plaintiffs to litigate their claims against the Bank exclusively in the courts of Beirut.   Plaintiffs' claims against AM Bank accordingly should be dismissed for *forum non conveniens*.   Additionally, AM Bank is not subject to either general or

---

[1] *See* First Amended Complaint (ECF #50) ("Amended Complaint" or "Am. Compl."), ¶¶ 261, 371 (alleging that the crisis "was deepening" in November 2019, and "took hold in 2019 and continued in 2020.").
[2] *See id.* ¶¶ 111, 115, 207, 211 (alleging Plaintiffs' accounts and deposits at two other Lebanese banks since 2016).
[3] *See id.* ¶¶ 36, 147, 154, 258 (in response to the crisis, Lebanese banks, in consultation with the Lebanese central bank, Defendant Banque du Liban ("BDL"), have imposed restrictions on cash withdrawals of U.S. dollars from Lebanese banks and restrictions on transfers of dollars outside of Lebanon).
[4] The Amended Complaint identifies AM Bank by its former name, "Al-Mawarid Bank, S.A.L."

specific jurisdiction in this action, because it does not generally do business in New York[5] and did not transact any business here from which Plaintiffs' claims arise.[6] *Forum non conveniens*, however, pretermits any need to resolve the jurisdictional issue; the Amended Complaint does not even acknowledge Plaintiffs' contractual obligation to litigate in the courts of Lebanon.

If this case remains in this Court contrary to Plaintiffs' forum-selection agreement with AM Bank and the lack of jurisdiction over the Bank, then the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because:

- Plaintiffs fail to allege their claims under Lebanese law, as their agreement with AM Bank necessitates.

- Plaintiffs' agreements with AM Bank, which are properly before this Court given the breach of contract claim, confirm that the Bank acted entirely in accordance with the contracts.  Moreover, Plaintiffs have failed to plausibly allege damages.  As Plaintiffs acknowledge, Joseph Daou deposited a check with AM Bank in Lebanon, and the Bank, at Plaintiffs' request, has issued Plaintiffs a check in full satisfaction of their deposit, payable at any bank in Lebanon.  Plaintiffs' funds remain in their AM Bank account.

- The conversion, unjust enrichment, and promissory estoppel claims (tenth, eleventh, and twelfth causes of action) are barred because the relationship between the parties is governed by contracts, and Plaintiffs' quasi-contractual claims merely re-allege the same facts and the same alleged injury as the breach of contract claim.

- Plaintiffs' fraud claim (and their RICO claim, to the extent it is predicated on alleged fraudulent activity) must be dismissed because it is based on the same alleged facts as the breach of contract claim; is not pled with the specificity required under Fed. R. Civ. P. 9(b); and does not plausibly allege causation or damages.

- Plaintiffs' fifth and sixth causes of action, pled under common law and Florida law respectively, essentially allege the issuance of bad checks.  These claims must be dismissed because Plaintiffs have not demonstrated that forum law or Florida law applies to a check issued in Lebanon and payable only in Lebanon, nor that the Bank issued a bad check, rather than a valid check payable in Lebanon.

---

[5] AM Bank is a Lebanese bank headquartered in Beirut.  *Id*. ¶ 65; *see also* the Declaration of Youssef Hanna El Khoury (previously filed in this action at ECF #41-2) ("El Khoury Declaration" or "El Khoury Decl."), ¶¶ 5-6.
[6] While AM Bank maintains a correspondent bank account with Bank of New York Mellon in New York (Am. Compl. ¶ 304), the law in this circuit is clear that "'mere maintenance' of a correspondent bank account in New York does not suffice to establish personal jurisdiction there."  *Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 65 (2d Cir. 2012); *see id.* at 65 n.13 (collecting cases).  As shown in the El-Khoury Declaration (¶¶ 34, 44, 54), the few transactions through Plaintiffs' AM Bank accounts were all processed within Lebanon, not through the Bank's New York correspondent bank.

- Plaintiffs' conspiracy claims must be dismissed because Plaintiffs do not plausibly allege an agreement by AM Bank to commit an unlawful act that harmed the Plaintiffs.

- Plaintiffs fail to allege standing, causation, and other elements required for a RICO claim.

## STATEMENT OF FACTS[7]

Plaintiffs are U.S. citizens and residents of Florida.  Am. Compl. ¶¶ 61-62.  Since 2016, long before opening accounts at AM Bank, Plaintiffs maintained U.S. dollar-denominated accounts at two other Lebanese banks, Defendants BLC Bank ("BLC") and Credit Libanais ("CL").  *See id*. ¶¶ 111, 115, 207, 211.  "AM Bank is a Lebanese bank with its headquarters located in the Yared Building, 6th Floor, Abdel Aziz Street, Hamra, 1103-2110, Beirut, Lebanon.  AM Bank is a Lebanese joint stock company, and a citizen of Lebanon."  *Id*. ¶ 65.  AM Bank S.A.L. was established in Lebanon in 1980, and was formerly known as Al-Mawarid Bank.  El Khoury Decl. ¶ 5.

Lebanon, and particularly the Lebanese banking industry, is in the midst of an unprecedented economic and fiscal crisis.  As alleged in the Amended Complaint, Plaintiffs were very much aware of the crisis as it unfolded.  As early as February 6, 2019, Joseph Daou asked a CL employee about "rumors … that depositors of Lebanese banks were having difficulty withdrawing USD cash".  Am. Compl. ¶ 229.  In April 2019, Daou discussed with CL employees

---

[7] The facts are taken from the Amended Complaint and the El Khoury Declaration.  Facts taken from the Amended Complaint are assumed to be true solely for the purpose of this Rule 12 motion.  The El Khoury Declaration properly provides facts outside the Amended Complaint on the *forum non conveniens* and jurisdictional issues.  *See Erausquin v. Notz, Stucki Mgmt. (Berm.)*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011) ("In deciding a forum non conveniens challenge, a court may rely on evidence outside the pleadings, including affidavits.") (citing *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158 (2d Cir. 1980) (en banc) ("it is the well established practice in the Southern District of New York to decide such motions on affidavits.")); *Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*, No. 18-cv-3528, 2019 U.S. Dist. LEXIS 100901, at *2, *17 (E.D.N.Y. June 17, 2019) ("A motion to dismiss pursuant to Rule 12(b)(2) . . . is inherently a matter requiring the resolution of factual issues outside of the pleadings.  Therefore all pertinent documentation submitted by the parties may be considered in deciding the motion.") (internal quotations and citation omitted); *Peschmann v. BlogTalkRadio, Inc.*, No. 15 Civ. 9504, 2017 U.S. Dist. LEXIS 156694, at *15 (S.D.N.Y. Sept. 22, 2017) ("[C]ourts are authorized to rely on affidavits [and declarations] submitted by the parties in deciding a Rule 12(b)(2) motion to dismiss.") (internal quotations and citation omitted, alterations in original).  The Court need not accept as true jurisdictional allegations in the Amended Complaint that are contradicted by affidavit evidence.  *See Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 228 (S.D.N.Y. 2015) ("[W]hen a defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiffs do not counter that evidence—the allegation may be deemed refuted.") (internal quotation and citation omitted).

the potential lowering of depositors' interest rates, including Plaintiffs', based on instructions from "BDL and the Lebanese Association of Banks".  *Id.* ¶¶ 231-33.  On October 29, 2019, a BLC employee told Daou that "the Lebanese banks, including BLC Bank, were closed" due to the crisis.  *Id.* ¶ 141.  And on November 11, 2019, Plaintiffs allege, "Joseph Daou learned the news of a nationwide strike by bank tellers who were refusing to work without better security given the civil unrest in Lebanon as the banking crisis was deepening."  *Id.* ¶ 261.

In particular, Plaintiffs admit that they were aware in the fall of 2019 that Lebanese banks had imposed restrictions on transfers of U.S. dollars out of Lebanon.  In October 2019, Daou asked a CL employee whether "the rumors of wire transfers outside of Lebanon being prohibited were true."  *Id.* ¶ 242.  Then, on November 7, 2019, Daou and a CL employee "discussed the informal constraints on cash withdrawals being reported in the press," and the employee "conceded to Joseph Daou that CL Bank was indeed restraining cash withdrawals."  *Id.* ¶ 258.  On November 7 and November 8, a BLC employee told Daou that BLC was refusing to execute a wire transfer of Plaintiffs' dollars to the United States "at the direction of BLC Bank's Board."  *Id.* ¶¶ 147, 154.  On November 8, Plaintiffs allege, a BLC employee advised Daou that the restriction on transfers of dollars outside Lebanon "was being carried out through an informal agreement among the banks."  *Id.* ¶ 158.

For months in the fall of 2019, Plaintiffs allegedly instructed BLC and CL to send wire transfers to the United States, and those banks declined to do so.  *See id.* ¶¶ 128-173, 243-279.

Before December 2019, Plaintiffs were not customers of AM Bank and had no relationship with AM Bank.  *See id*. ¶¶ 306-07, 312 ("Plaintiffs had not previously done business with AM Bank").  Yet, as Plaintiffs allege, they were well aware of the ongoing Lebanese financial crisis and that the crisis had led Lebanese banks, by "informal agreement," to place restrictions on dollar-

denominated transfers out of Lebanon, *id.* ¶ 158.  Plaintiffs themselves had unsuccessfully sought to transfer their funds on deposit with BLC and CL to the United States.  *See id.* ¶¶ 128-173, 243-279.

Then, Plaintiffs allege, on December 2, 2019, AM Bank employee Youssef El Khoury "solicited Joseph Daou to deposit USD with AM Bank."  *Id.* ¶ 307.  The next day, December 3, 2019, Daou, "while physically present in Lebanon, opened a bank account at AM Bank through its branch in Jounieh."  *Id.* ¶ 312; El Khoury Decl. ¶ 15.  The account that Joseph Daou opened at AM Bank on December 3, 2019, is referred to herein as the "Daou-Gerges Account."  Plaintiffs also allege that in December 2019, they opened a second account, a joint account for the Plaintiffs (the "Daou Plaintiffs' Account").  Am. Compl. ¶¶ 316-17.

Consistent with AM Bank's policies and procedures, while Joseph Daou was at AM Bank's Jounieh branch on December 3, 2019, he was provided with and signed one General Agreement for the Daou-Gerges Account and one General Agreement for the Daou Plaintiffs' Account.  El Khoury Decl. ¶ 19.[8]  Plaintiff Karen Daou also signed the General Agreement related to the Daou Plaintiffs' Account.  *Id.*  Copies of the General Agreements, with translations, are attached to the El Khoury Decl. at Exhibits 2 and 3 (ECF 41-4, 41-5).  Article 68 of the General Agreements provides, in relevant part, that "Beirut courts alone have jurisdiction to consider all cases or disputes raised by" the customer (here, Plaintiffs) against the Bank.  El Khoury Decl. ¶ 20.

---

[8] The Court can consider the contracts and checks discussed herein in deciding AM Bank's Rule 12(b)(6) motion, because those documents are referenced either directly or by implication in, and are integral to, the Amended Complaint.  "When reviewing a motion to dismiss, a court may consider documents attached to the pleadings, as well as documents outside the pleadings 'that are integral or relied upon by the plaintiff in preparing the pleadings.'"  *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003) (quoting *Goldin-Feldman Co., Inc. v. Blum & Fink, Inc.*, No. 99 Civ. 11637, 2000 U.S. LEXIS 11928, at *6 (S.D.N.Y. Aug. 18, 2000)).  "Therefore, this court may consider a document not expressly incorporated by reference in a complaint without converting a 12(b)(6) motion into a motion for summary judgment where the document is 'integral to the complaint.'"  *Druyan v. Jagger*, 508 F. Supp. 2d 228, 236 (S.D.N.Y. 2007) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Here, the contracts between the parties, the check Plaintiffs deposited into the Daou-Gerges Account in December 2019, and the check AM Bank issued to Plaintiffs in March 2020 are all integral to the Amended Complaint and Plaintiffs' claims.

The same day that Joseph Daou opened the Daou-Gerges Account, he deposited $5,735,928.67 into the account.  Am. Compl. ¶ 313.  The deposit was made via check drawn on CL's account with the BDL.  El Khoury Decl. ¶ 29 and Exhibit 5 (ECF 41-7).

In addition to formulating and implementing monetary and banking policies in Lebanon, the BDL operates a payment system that performs U.S. Dollar clearing functions for transfers between Lebanese banks, including check clearing, inter-bank transfers, and personal money transfers.  *Id.* ¶ 30.  All banks operating in Lebanon, including BLC, CL, and AM Bank, are required to participate in the BDL's payment system.  *Id.*  Dollar-denominated transfers between an account-holder at AM Bank and an account-holder at another Lebanese bank, such as a check drawn on another Lebanese bank for payment into an AM Bank account-holder's account, are settled through the BDL's payment system.  *Id.* ¶ 33.  Given that AM Bank, CL, and the BDL are all participants in the BDL's payment system, the check that Joseph Daou used to fund the Daou-Gerges Account on December 3, 2019, was cleared through the BDL's payment system, and was <u>not</u> processed through AM Bank's U.S. correspondent bank, Bank of New York Mellon.  *Id.* ¶ 34.

In January and February 2020, Joseph Daou requested that AM Bank initiate a wire transfer of Plaintiffs' dollars to the United States.  *See, e.g.*, Am. Compl. ¶¶ 319, 323, 327, 330, 332.  AM Bank responded that "due to the external wire transfers restrictions in Lebanon," AM Bank would not initiate a wire transfer of dollars to the United States, because "all the external transfers are restricted for the time being."  *Id.* ¶¶ 324, 328.

On February 25, 2020, Plaintiffs requested that their funds be transferred from the Daou-Gerges Account to the Daou Plaintiffs' Account.  *Id.* ¶ 334.  AM Bank complied with this request and transferred the funds to the Daou Plaintiffs' Account.  *Id.*  As set forth in the El Khoury Decl., AM Bank clears and settles dollar-denominated transfers from one AM Bank account-holder to

another on the Bank's own books.  *Id.* ¶ 31-32.  The transfer of Plaintiffs' funds from the Daou-Gerges Account to the Daou Plaintiffs' Account was between two accounts at AM Bank; accordingly, this transfer was settled on the books of AM Bank, and was not processed through AM Bank's correspondent account at Bank of New York Mellon.  *Id.* ¶ 44.

On March 4, 2020, Joseph Daou requested that AM Bank issue Plaintiffs a bank check drawn on the BDL.  Am. Compl. ¶ 337.  On March 7, pursuant to those instructions, AM Bank issued a check drawn on the BDL, and payable to Plaintiffs, in the amount of $5,811,500.  *Id.* ¶ 338; El Khoury Decl. ¶ 48.  The check was delivered to Plaintiffs' representative, who was physically present in Lebanon.  Am. Compl. ¶ 338.  A copy of the check is attached to the El Khoury Decl. at Exhibit 6 (ECF 41-8).  The check clearly stated on its face that it was drawn on the BDL, that it was payable in "BEIRUT," and that it was "To be cleared in Lebanon."  El Khoury Decl. ¶ 49.  Plaintiffs allege that they then attempted to deposit the check with a bank in the United States, and that it was returned and not paid.  Am. Compl. ¶¶ 340-41.

## ARGUMENT

### I.   THE PARTIES' MANDATORY FORUM SELECTION AGREEMENT REQUIRES DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

The General Agreements that govern the relationship between the Plaintiffs and AM Bank contain mandatory forum selection clauses that require the Plaintiffs to bring any claims against the Bank <u>exclusively</u> in the courts of Beirut, Lebanon.  El Khoury Decl. ¶ 20.  Specifically, Article 68 of the General Agreements provides that "Beirut courts alone have jurisdiction to consider all cases or disputes raised by" the customer (here, Plaintiffs) against the Bank.  *Id.*  This requires the dismissal of all of Plaintiffs' claims against AM Bank pursuant to the doctrine of *forum non conveniens*.  *See Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60 (2013) (holding that "the appropriate way to enforce a forum-selection clause pointing to a … foreign forum is

through the doctrine of *forum non conveniens*"); *Du Quenoy v. Am. Univ. of Beirut*, No. 19-3182, 2020 U.S. App. LEXIS 31436, at *2 (2d Cir. Oct. 2, 2020) (summary order) (same); *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) (same).

Courts in this circuit have consistently recognized that there is "a strong federal public policy supporting the enforcement of forum selection clauses." *Martinez*, 740 F.3d at 219 (citing *Atlantic Marine*); *see Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (holding that forum selection clauses "further vital interests of the justice system, including judicial economy and efficiency, ensure that parties will not be required to defend lawsuits in far-flung fora, and promote uniformity of result.") (internal quotations, alterations, and citations omitted); *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03-cv-5262, 2004 U.S. Dist. LEXIS 3508, at *8 (S.D.N.Y. Mar. 5, 2004) ("[T]he Second Circuit has developed a policy of honoring forum selection clauses."); *Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 293 (S.D.N.Y. 2018) ("New York has a strong public policy of enforcing forum selection clauses so that parties are able to rely on the terms of the contracts they make.") (citation omitted). "Courts, including the Court of Appeals for the Second Circuit, have recognized that a party may not maintain a suit in federal court when it has committed to litigate claims against its contract counterparty in another jurisdiction, such as the courts of a particular state or foreign nation." *Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 701-02 (S.D.N.Y. 2015) (citing *Martinez*, 740 F.3d at 219). Accordingly, as this Court has held, "'[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause' unless 'extraordinary circumstances unrelated to the convenience of the parties' exist." *McLarty Capital P'ship SBIC, L.P. v. Brazda*, No. 18-cv-2599 (DLC), 2018 U.S. Dist. LEXIS 103615, at *5 (S.D.N.Y. June 20, 2018) (quoting *Atlantic Marine*, 571 U.S. at 62).

"[F]orum-selection clauses 'are prima facie valid and should be enforced' absent extraordinary circumstances." *Giordano*, 134 F. Supp. 3d at 702 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). "In *Atlantic Marine*, the Supreme Court reconfirmed this principle and explained that 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Atlantic Marine*, 571 U.S. at 63 (alteration in original, internal quotation omitted)); *Du Quenoy*, 2020 U.S. App. LEXIS 31436, at *2 (same). This is because a forum selection clause "'represents the parties' agreement as to the most proper forum.'" *Atlantic Marine,* 571 U.S. at 63 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). And "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atlantic Marine*, 571 U.S. at 66.

"Courts in the Second Circuit 'employ a four-part analysis' in determining whether to 'dismiss[] a claim based on a forum selection clause.'" *Giordano*, 134 F. Supp. 3d at 702 (quoting *Martinez*, 740 F.3d at 217) (alteration in original); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). The four parts of the analysis are:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any dispute to the designated forum or simply *permitted* to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383-84 (internal quotations and citations omitted)); *Du Quenoy*, 2020 U.S. App. LEXIS 31436, at *2-*3. This analysis, applied to the forum selection clause in the General Agreements, requires dismissal of Plaintiffs' claims against AM Bank.

A forum selection clause "'is reasonably communicated if it is phrased in clear and unambiguous language.'" *Lazare Kaplan Int'l,* 337 F. Supp. 3d at 290 (quoting *Magi XXI Inc. v. Stato della Citta del Vaticano*, 818 F. Supp. 2d 597, 604-05 (E.D.N.Y. 2011)).  Where, as here, the forum selection clause is plainly stated in the parties' contract, this factor is satisfied.  "Absent substantive unconscionability or fraud of a type not alleged here, parties are charged with knowing and understanding the contents of documents they knowingly sign." *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012) (clause was reasonably communicated despite plaintiff's claim that it appeared in separate "terms and conditions" document he did not receive and was written in a language he did not understand).  The forum selection clause is plainly stated within the General Agreements in clear and unambiguous language.

The forum selection clause also satisfies the second factor because it is phrased in mandatory, rather than permissive language: "Beirut courts <u>alone</u> have jurisdiction" to litigate Plaintiffs' claims.  El Khoury Decl. ¶ 20 (emphasis added).

The forum selection clause also satisfies the third factor because it encompasses <u>all</u> of the Plaintiffs' claims against the Bank.  The clause explicitly states that "<u>all cases or disputes</u> raised by" Plaintiffs against the Bank must be brought in Beirut.  *Id.* (emphasis added).  This broad language encompasses both contract and tort claims.  *See, e.g., Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F. Supp. 2d 352, 363 (S.D.N.Y. 2004) (holding that it is "well settled that forum selection clauses may encompass claims beyond breach of the contract containing the clause, including tort claims."); *Korean Press Agency, Inc. v. Yonhap New Agency*, 421 F. Supp. 2d 775, 781 (S.D.N.Y. 2006) (holding that forum selection clause covering "any disputes [that] arise between 'A' and 'B'" encompassed tort claims because the clause was "significantly broader than clauses in similar cases which were found to encompass more than just contractual claims").  The Second Circuit

has held that a forum selection clause extends to tort claims between the parties if those claims "ultimately depend on the existence of a contractual relationship between the signatory parties." *BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 597 (S.D.N.Y. 2017) (citing *Magi XXI*, 714 F.3d at 724) (internal quotation marks omitted); *Korean Press Agency*, 421 F. Supp. 2d at 781 (same). "Put another way, '[c]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.'" *BMW of N. Am.*, 254 F. Supp. 3d at 597 (quoting *Magi XXI*, 714 F.3d at 724-25).

Here, Plaintiffs' claims against the Bank all arise from the banking relationship between Plaintiffs and the Bank, which is governed by the General Agreements containing the broad, mandatory forum selection clause. Accordingly, all of Plaintiffs' claims are subject to the clause.

Finally, Plaintiffs cannot show that enforcement of the parties' agreed-upon forum selection clause would be unreasonable or unjust, or that the clause is otherwise invalid. "These exceptions" to enforceability "are 'interpreted narrowly.'" *Du Quenoy*, 2020 U.S. App. LEXIS 31436, at *3 (quoting *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010)).

With respect to the "unreasonable or unjust" language, it is important to note that while a court engaging in a *forum non conveniens* analysis typically weighs both public and private-interest factors, where the parties have a valid forum selection clause, the court "should not consider arguments about the parties' private interests." *Atlantic Marine*, 571 U.S. at 64. Instead, the court *"*must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* "As a consequence, a district court may consider arguments about public-interest factors only"—and because public policy favors enforcement of forum selection clauses, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63-64 (internal quotation and alteration omitted); *see also Du Quenoy*, 2020 U.S. App.

LEXIS 31436, at *5-*6 (Second Circuit holding that forum selection clause in favor of Lebanon was enforceable and that plaintiff's claim that "various difficulties of litigating in Lebanon . . . will effectively deprive him of his day in court" was "unavailing").

The following "public interest" factors may be relevant to a *forum non conveniens* analysis: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized controversies decided at home"; (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action"; (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law"; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotations and citation omitted).

Here, these factors favor enforcement of the parties' forum selection clause. Plaintiffs' claims against AM Bank are centered in Lebanon, and bear no relationship to New York. AM Bank is a Lebanese bank headquartered in Beirut; Plaintiffs' accounts were opened, and Joseph Daou executed the General Agreements, while Daou was physically present in Lebanon; and the claims relate to banks operating in the context of the ongoing Lebanese financial crisis. Lebanon has a strong interest in regulating its banks and litigating claims related to the crisis. Thus, factors (2) and (5) favor litigating these claims in Lebanon. As discussed below, Lebanese law governs Plaintiffs' claims, and therefore factors (3) and (4) also favor Lebanon. Finally, given that this case bears no relationship to New York, there is no reason for the Court to add to court congestion here by declining to enforce the parties' forum selection clause.

The Amended Complaint includes <u>no</u> new allegations relating to the forum selection clauses in the parties' General Agreements. Those clauses should be enforced, and Plaintiffs'

12

Amended Complaint as against AM Bank should be dismissed in its entirety pursuant to the doctrine of *forum non conveniens*.

## II.   PLAINTIFFS' ALLEGATIONS DO NOT STATE A *PRIMA FACIE* CASE FOR GENERAL OR SPECIFIC PERSONAL JURISDICTION OVER AM BANK.

On a Rule 12(b)(2) motion to dismiss, the "plaintiff has the burden of making a prima facie showing that personal jurisdiction over the defendant exists." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 424 (S.D.N.Y. 2018) (citation omitted), *rev'd and remanded on other grounds sub nom.*, *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66 (2d Cir. 2019); *see Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010); *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citation omitted).   The Amended Complaint "'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'"   *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 59 (2d Cir. 2012) (same).   "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place."   *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (citing *Jazini by Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (rejecting jurisdictional allegations lacking "supporting facts" and "factual specificity")).   On a Rule 12(b)(2) motion, "the court is neither required to draw argumentative inferences in the plaintiff's favor, nor must it accept as true a legal conclusion couched as a factual allegation."   *In re Terrorist Attacks*, 295 F. Supp. 3d at 424 (citations and quotations omitted).

Here, Plaintiffs allege that Defendants are subject to personal jurisdiction pursuant to CPLR § 301 and § 302(a)(1).   Am. Compl. ¶¶ 71-72.   However, the Court may only exercise jurisdiction over the Bank consistent with due process and "'traditional notions of fair play and substantial

justice' under the circumstances of the particular case." *Waldman v. PLO*, 835 F.3d 317, 331 (2d

Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)); *Johnson v. UBS AG*, 791 F.

App'x 240, 242 (2d Cir. 2019) (summary order); *see Daimler*, 571 U.S. at 126-27.   Under these

standards, despite filing an Amended Complaint, Plaintiffs have failed to make a *prima facie* case

for either general or specific personal jurisdiction over AM Bank, requiring dismissal.

### A.      AM Bank is a Lebanese Bank with No U.S. Operations.

As Plaintiffs concede, AM Bank is "a Lebanese bank with its headquarters located in …

Beirut, Lebanon" and is "a citizen of Lebanon."   Am. Compl. ¶ 65.   As a commercial bank

headquartered in Beirut, Lebanon, AM Bank is regulated by the BDL, the regulator for all banks

in Lebanon.   El Khoury Decl. ¶ 7.   The Bank is not incorporated, licensed, registered as a foreign

corporation, or otherwise authorized to conduct business anywhere in the United States.   *Id.* ¶ 55.

It does not have a branch, office, subsidiary, agency, or other regular place of business anywhere

in the United States.   *Id.* ¶ 56.   It does not own, lease, or occupy any real property in the United

States.   *Id.* ¶ 57.   It has no employees, directors, or officers in the United States.   *Id.* ¶ 58.

### B.      There is No General Jurisdiction over AM Bank Because AM Bank Is Not "Essentially at Home" in the United States.

As Plaintiffs appear to acknowledge, this Court does not have general jurisdiction over AM

Bank.   General jurisdiction is limited to circumstances where a defendant's contacts with the forum

are so "constant and pervasive" that it is "essentially at home in the forum State."   *Daimler*, 571

U.S. at 122 (citation omitted); *Waldman*, 835 F.3d at 331.   As the Second Circuit recently

reaffirmed, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts

impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the

defendant's continuous and systematic general business contacts."   *SPV OSUS, Ltd.*, 882 F.3d at

343 (citation omitted).

### C.      Plaintiffs Do Not Establish Specific Jurisdiction over AM Bank.

When determining whether specific jurisdiction exists over a defendant consistent with constitutional due process, courts consider "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 287 (2014) (citations omitted); *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (same).  The Second Circuit has confirmed that to establish specific jurisdiction, a plaintiff must plausibly allege facts showing that "the defendants' <u>suit-related conduct</u> . . . creates a substantial connection with the forum State," *Waldman*, 835 F.3d at 335 (emphasis added); *see, e.g., Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) ("To establish personal jurisdiction under § 302(a)(1), the defendant must have transacted business within the state and the claim asserted must arise from that business activity.") (citation omitted).  When the defendant is a bank, and jurisdiction is predicated on alleged financial transfers through the United States, a plaintiff must show not only the defendant's "selection and repeated use of New York's banking system" during the relevant period, but also that the defendant made financial transfers through U.S. banks that served "as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress," *Licci*, 732 F.3d at 171.

The *Licci* test does not allow for specific jurisdiction over AM Bank because AM Bank did not make <u>any</u> use of the New York (or other U.S.) banking system related to the Plaintiffs' accounts. Plaintiffs allege that the Bank maintains a correspondent account at Bank of New York Mellon in New York.  Am. Compl. ¶ 304.  However, "'mere maintenance' of a correspondent bank account in New York does not suffice to establish personal jurisdiction there."  *Licci*, 673 F.3d at 65; *see id.* at 65 n.13 (collecting cases); *Hau Yin To*, 700 F. App'x at 67 (holding that "the mere maintenance of correspondent bank accounts at an affiliate bank in New York" does not give rise to personal jurisdiction) (citation omitted).  Plaintiffs do not and could not plausibly allege that AM Bank processed any transactions through the United States related to the Plaintiffs' accounts—and the El

15

Khoury Declaration confirms that it did not.  Specifically, the only deposits or withdrawals on Plaintiffs' AM Bank accounts at any time are Plaintiffs' initial deposit of the check into the Daou-Gerges Account on December 3, 2019, and the transfer from the Daou-Gerges Account to the Daou Plaintiffs' Account on February 25, 2020.  El Khoury Decl. ¶¶ 37, 51-52.  The check was cleared in Lebanon through the BDL's payment system, and the transfer was settled on AM Bank's own books. *Id.* ¶¶ 29, 33-35, 43-44.  Accordingly, neither transaction was processed through AM Bank's New York correspondent bank.  *Id.* ¶¶ 34, 44, 54.

Plaintiffs also allege that "[o]n December 2, 2019, El-Khoury solicited Joseph Daou to deposit USD with AM Bank."  Am. Compl. ¶ 307.  This allegation cannot create specific jurisdiction over the Bank.  First, there is no allegation that Joseph Daou was in the United States when this "solicitation" took place.  Moreover, "mere solicitation of business within the state does not constitute the transaction of business within the state absent some other New York-directed activities."  *Siverls-Dunham v. Seung Huen Lee*, No. 05 Civ. 7518, 2006 U.S. Dist. LEXIS 82927, at *34 (S.D.N.Y. Nov. 13, 2006) (internal quotations and citation omitted).

Allegations in the Amended Complaint that the Bank communicated with Plaintiffs while they were in the United States cannot support specific jurisdiction, because those alleged communications post-dated when Plaintiffs opened their Bank accounts.  Those alleged communications all concern Plaintiffs' efforts to do business with a Lebanese bank in Lebanon, not any effort by AM Bank to do banking business with Plaintiffs in the United States.  Further, Plaintiffs claim injury from the loss of the funds they deposited with AM Bank.  Specific jurisdiction requires a causal-connection between a defendant's in-forum contacts and the plaintiff's injury.  *See Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 U.S. Dist. LEXIS 147561, at *157-58 (S.D.N.Y. Oct. 19, 2015).  Contacts

occurring after Plaintiffs had already deposited those funds cannot be causally related to their injury, and cannot give rise to specific jurisdiction over the Bank. *See Woo v. City of New York*, No. 93 Civ. 7007, 1996 U.S. Dist. LEXIS 11689, at *20 (S.D.N.Y. 1996) ("conduct after an injury cannot be the proximate cause of the same injury") (quotation and citation omitted).

## III.    PLAINTIFFS FAIL TO ASSERT THEIR CLAIMS UNDER LEBANESE LAW, WHICH REQUIRES DISMISSAL OF THOSE CLAIMS.

Where, as here, the parties have agreed to a forum selection clause mandating that disputes be litigated exclusively in one jurisdiction (here, Lebanon), that also reflects an implicit selection of Lebanese law to apply to the dispute. *See, e.g., Caribbean Wholesales & Serv. Corp. v. US JVC Corp.,* 855 F. Supp. 627, 629 (S.D.N.Y. 1994) ("By agreeing to litigate their dispute in a particular forum, parties implicitly agree to the application of the forum's law -- or more accurately, to the application of the forum's choice of law rules since these rules may in turn direct the application of another forum's substantive law."); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 13 n.15 (1972) ("It is . . . reasonable to conclude that the forum clause was also an effort to obtain certainty as to the applicable substantive law."); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("It defies reason to suggest that a plaintiff may circumvent forum selection and arbitration clauses merely by stating claims under laws not recognized by the forum selected in the agreement.  A plaintiff simply would have to allege violations of his country's . . . law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction.").

Even aside from the forum selection clause, New York choice-of-law rules provide that "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied." *Licci v. Lebanese Canadian Bank*, 739 F.3d 45, 48 (2d Cir. 2013) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)).  This is "a flexible approach intended to give controlling effect to the law of the

jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Id.* (citation and internal quotation omitted). Where, as here, the choice-of-law analysis is applied to "conduct-regulating rules that people use as a guide to governing their primary conduct," "the law of the jurisdiction where the [alleged wrongful acts] occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.* at 49 (citation and internal quotation omitted).

Here, Lebanon has the greatest interest in this litigation. Lebanon has a strong interest in litigating claims against Lebanese banks and the BDL. Plaintiffs' contracts with AM Bank were signed in Lebanon, and those contracts contain numerous references to Lebanese law. Joseph Daou arranged to open Plaintiffs' AM Bank accounts while he was present in Lebanon, and deposited a check with the Bank while in Lebanon. All of the transactions relating to Plaintiffs' accounts with AM Bank were processed entirely within Lebanon, not New York. And all of AM Bank's allegedly wrongful conduct occurred in Lebanon. Accordingly, Lebanon is the jurisdiction with the greatest interest in this action, and Lebanese law should apply to Plaintiffs' claims.

## IV.   PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION, REQUIRING DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6).

Independent of the mandatory and exclusive forum selection clause in the contracts between Plaintiffs and the Bank, the insurmountable lack of personal jurisdiction, and their failure to allege Lebanese law, Plaintiffs' claims are legally insufficient to establish a claim, despite Plaintiffs' amendment of their pleading and even crediting their allegations for Rule 12(b)(6) purposes. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).   Under Rule 12(b)(6), the court may consider only well-pled factual allegations, *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014), and must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citation omitted).

### A.     Plaintiffs Fail to State a Claim for Breach of Contract.

Plaintiffs' breach of contract claim must be dismissed because, despite amending their pleading, the Plaintiffs do not plausibly allege a breach of any provision of their contracts with the Bank.   As an initial matter, the Amended Complaint does not identify any contracts between the Plaintiffs and the Bank, let alone the specific provisions of any contract that AM Bank is alleged to have breached.   Second, the plain language of the General Agreements and other contracts between the Plaintiffs and the Bank make clear that the Plaintiffs have not plausibly alleged any breach.

To assert a breach of contract claim, "a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." *Wolff*, 210 F. Supp. 2d at 494-95 (citation omitted) (noting dismissal of complaint where "Plaintiffs had asserted that they had the right" to engage in certain transactions and that defendant "breached the contract by not authorizing" the transactions, but where the complaint "failed to provide . . . notice of the specific contractual provision allegedly breached").   Plaintiffs have not identified any provisions of any of their contracts with AM Bank that AM Bank purportedly breached.   This alone requires dismissal of this claim.

Indeed, the General Agreements make clear that the Bank is not obligated to perform any transaction requested by the Plaintiffs, such as a transfer of Plaintiffs' funds to the United States. *See* El Khoury Decl. ¶¶ 21-25.   Rather, under Lebanese law, where a customer deposits funds with a bank, the bank's only obligation is to return the value of the deposit in one or more payments, in the place where the initial agreement between the bank and the customer was executed—here,

Lebanon.  *See* the Declaration of Malek Arslan (previously filed in this action at ECF #41-9) ("Arslan Decl."), ¶¶ 15-17 (citing Article 307 of the Lebanese Code of Commerce and Article 764 of the Lebanese Code of Obligations and Contracts).

The Plaintiffs' sole deposit of funds with AM Bank was in the form of a check, drawn on CL's account at the BDL and payable in Lebanon.  Those funds were deposited into the Daou-Gerges Account in December 2019.  In February 2020, at Plaintiffs' request, AM Bank transferred those funds to the Daou Plaintiffs' Account, where they remain today.  *See* Am. Compl. ¶ 52 (admitting that AM Bank has "credited Plaintiffs' account").  The Plaintiffs are free to receive their funds in the same manner they deposited them with the Bank—in Lebanon, by check payable in Lebanon or by transfer to an account at any Lebanese bank.  Indeed, the Bank has already provided Plaintiffs with this opportunity by providing Plaintiffs with a check for the full amount of their deposit plus interest. But the Bank is not obligated to provide those funds to Plaintiffs <u>in the United States</u>, and Plaintiffs have not identified any Lebanese law or any contract provision that would require the Bank to do so.

### B. Plaintiffs Fail to State Claims for Unjust Enrichment, Conversion, or Promissory Estoppel.

Plaintiffs have not plausibly alleged that causes of action for unjust enrichment, conversion, or promissory estoppel exist under Lebanese law.  *See* Arslan Decl. ¶¶ 20-22.  Even under New York law, these claims would fail because the Plaintiffs and the Bank are parties to valid contracts, and the only injury Plaintiffs allege arises out of the alleged breach of those contracts.

"[A] valid and enforceable contract precludes recovery in quasi-contract for all matters covered by the contract."  *Bd. of Trustees v. BNY Mellon, N.A.*, No. 11-CV-6345, 2012 U.S. Dist. LEXIS 132724, at *17 (S.D.N.Y. Sept. 10, 2012) (citation omitted).  "For a cause of action in conversion to lie, the duty breached must spring from circumstances extraneous to the contract; wrongfully withholding money pursuant to a contractual relationship constitutes a breach of the

contractual relationship, not conversion." *Kante v. All Taxi*, 958 N.Y.S.2d 61, 61 (N.Y. App. Div. 2d Dep't 2010). "A promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract." *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2014 U.S. Dist. LEXIS 132611, at *33 (E.D.N.Y. Sept. 19, 2014) (citation omitted); *see Kosher Provisions, Inc. v. Blue & White Food Prods. Corp.*, No. CV-04-361, 2005 U.S. Dist. LEXIS 48333, at *11-12 (E.D.N.Y. Aug. 9, 2005) ("A party may recover under a promissory estoppel claim only in the absence of an enforceable contract.") (citation omitted). Here, Plaintiffs' quasi-contract claims improperly are based on the same facts and the same purported obligations that are governed by Plaintiffs' contracts with the Bank.

## C.   Plaintiffs Fail to State a Claim for Fraud.

Plaintiffs' fraud claim must be dismissed for multiple reasons. First, as with the quasi-contract claims, this claim is based on the same allegations as Plaintiffs' contract claim. "It is axiomatic that a plaintiff cannot plead a fraud claim based on the same facts that underlie her breach of contract claim unless she (i) demonstrates a legal duty separate from the duty to perform under the contract; (ii) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Druyan*, 508 F. Supp. 2d at 239 (citations omitted). Plaintiffs have not plausibly done so here.

Second, Plaintiffs have not alleged any fraudulent statements with the specificity required. "Claims for fraud must be pled with 'particularity.'" *Negrete v. Citibank, N.A.*, 759 F. App'x 42, 47 (2d Cir. 2019) (citing Fed. R. Civ. P. 9(b)). "That ordinarily requires a complaint alleging fraud to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* Plaintiffs have not plausibly alleged any statements by AM Bank that meet these requirements.

Third, Plaintiffs have not plausibly alleged causation or damages with respect to their fraud claim.  Plaintiffs' only deposit with AM Bank was by check drawn on CL's account at the BDL on December 3, 2019.  Plaintiffs have not plausibly alleged any fraudulent statements by AM Bank that caused Plaintiffs to make that deposit.  Further, Plaintiffs acknowledge that the funds they deposited with AM Bank remain in their account.  The only "injury" they claim is that AM Bank has not transferred those funds to the United States.  But Plaintiffs have not plausibly alleged that they are entitled to receive those funds in the United States or that, absent any alleged fraudulent statements, Plaintiffs would have been able to transfer those funds to the United States.  Indeed, Plaintiffs acknowledge that, before they ever opened their AM Bank accounts, Plaintiffs were well aware of the Lebanese financial crisis and the resulting restrictions on transfers of dollars outside of Lebanon.[9]

### D.      Plaintiffs' "Bad Check" Claims Must Be Dismissed.

Plaintiffs' fifth and sixth causes of action, pled under common law and Florida law respectively, essentially allege that AM Bank issued the Plaintiffs bad checks.  First, Plaintiffs have failed to allege their "dishonored check" claim under Lebanese law.  Nor have Plaintiffs established that Florida law or U.S. common law applies extraterritorially to a check issued in Lebanon, by a Lebanese bank, drawn on the BDL, and payable only in Lebanon.  As explained in Section III *supra*, Lebanese law applies to Plaintiffs' claims, including claims involving the check AM Bank issued to Plaintiffs in Lebanon, payable in Lebanon.  Second, regardless of what law applies, these claims must be dismissed because Plaintiffs have not plausibly alleged that the Bank issued a "bad" or

---

[9]  Even if Plaintiffs could plausibly allege any fraudulent statements by AM Bank with the requisite specificity—which they have not and could not—Plaintiffs' fraud claim would still fail because, given Plaintiffs' admitted awareness of the Lebanese financial and banking crisis and their repeated and unsuccessful attempts to obtain U.S. funds transfers at their two predecessor Lebanese banks, Plaintiffs could not plausibly allege that they reasonably relied on any purported representations by a third Lebanese bank, AM Bank, that they would be able to obtain on-demand transfers to the United States of any dollars they subsequently deposited with the Bank.  *See, e.g.*, *Ortiz v. CIOX Health LLC*, No. 17cv4039 (DLC), 2018 U.S. Dist. LEXIS 29010, at *12 (S.D.N.Y. Feb. 22, 2018) (dismissing fraud claim where "conclusory statement" in amended complaint "fail[ed] to plead reasonable reliance on a false statement of the defendants.").

"dishonored" check.  Rather, Plaintiffs' own allegations confirm that AM Bank issued a check payable in Lebanon, drawn on AM Bank's account at the BDL—in Lebanon—that would provide Plaintiffs with the funds from their Bank account—in Lebanon, where Plaintiffs originally deposited their funds with AM Bank.  *See* Am. Compl. ¶ 20 (checks "could not be deposited anywhere outside of Lebanon, including in the United States"); *id.* ¶ 386.  The check stated on its face that it was payable in "BEIRUT," and that it was "[t]o be cleared in Lebanon."  El Khoury Decl. ¶ 49. Accordingly, even if the check constituted a contract enforceable on its own terms, Plaintiffs have not plausibly alleged that the Bank issued an <u>invalid</u> check intended for clearance in Florida.  Rather, AM Bank issued a check that, on its face, is <u>valid</u> and intended for clearance only in Lebanon.

Moreover, Fla. Stat. 68.065(3)(a) limits actions to checks where payment is refused "because of lack of funds, lack of credit, or lack of an account, or where the maker or drawer stops payment on the instrument with intent to defraud".  Here, Plaintiffs admit that AM Bank is a "large creditor[] of BDL, having deposited billions of USD with BDL" and that "BDL allows the banks to issue cashier's checks" drawn on their BDL accounts.  Am. Compl. ¶ 42.  By Plaintiffs' own admission, therefore, payment on the check was not refused "because of lack of funds, lack of credit, or lack of an account," nor was it stopped <u>by AM Bank</u> at all.  Rather, payment was refused by BDL because Plaintiffs presented it in the United States, when the check is payable only in Lebanon.

### E.  Plaintiffs' Conspiracy Claim Must Be Dismissed.

"New York does not recognize an independent tort of conspiracy."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citation omitted); *see Crigger v. Fahnestock & Co.*, 443 F.3d 230, 237 (2d Cir. 2006) ("Under New York law, civil conspiracy to commit fraud, standing alone, is not actionable . . . if the underlying independent tort has not been adequately pleaded.") (citation and quotation omitted).  "[T]he crux of a conspiracy is a collective criminal agreement— [a] partnership in crime."  *Ocasio v. United States*, 136 S. Ct. 1423, 1441 (2016) (internal quotation

and citation omitted).  Plaintiffs' conspiracy claim fails because Plaintiffs have not plausibly alleged that AM Bank agreed with anyone to commit a wrongful act.  As noted above, the Bank is not required, either by Lebanese law or by Plaintiffs' contracts with the Bank, to accede to Plaintiffs' requests for transfers of dollars outside of Lebanon.  In addition, to the extent Plaintiffs allege that the Defendants agreed to make "fraudulent misrepresentations" to Plaintiffs, these allegations fail for the same lack of particularity and lack of damages as discussed above regarding Plaintiffs' fraud claim.  Indeed, to the extent Plaintiffs do allege the "conspiracy" with any specificity, it is that Plaintiffs allegedly sought to transfer their funds back to the United States in September 2019, only to be "confronted by the conspiracy within the Lebanese banking system," Am. Compl. ¶¶ 347-48.  But Plaintiffs did not even open their accounts with AM Bank until December 2019.  To the extent Plaintiffs' non-specific and conclusory allegations can be credited, they indicate that AM Bank was not part of any conspiracy that injured Plaintiffs.  Plaintiffs' conspiracy claim must be dismissed.

### F.   Plaintiffs' RICO Claims Must Be Dismissed.[10]

Plaintiffs' RICO claims, plead under 18 U.S.C. §§ 1962(c) and 1962(d), must be dismissed. First, Plaintiffs have not alleged an injury "by reason of" any RICO violation by AM Bank.  To have standing to bring a RICO claim, a plaintiff must plead (1) the defendant's violation of § 1962, (2) injury, and (3) causation of the injury by the defendant's violation.  *Levine v. Torino Jewelers, Ltd.*, 05 CIV. 3159 (DLC), 2006 U.S. Dist. LEXIS 11932, at *8 (S.D.N.Y. Mar. 22, 2006) ("The causation requirement of RICO standing is satisfied if the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged.") (citation and internal quotations omitted); *see FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014) (Cote, J.) (plaintiff must show that RICO violation was both proximate and but-for cause of his injury).

---

[10] AM Bank summarizes herein arguments specific to the Bank, and otherwise adopts the arguments regarding Plaintiffs' RICO claims made by the other Defendants, which have equal application to AM Bank.

Here, Plaintiffs' only deposit with the Bank was on December 3, 2019, by check drawn on an account at the BDL.  Am. Compl. ¶ 313; El Khoury Decl. Exhibit 5 (ECF 41-7).  Plaintiffs do not allege that AM Bank engaged in any purported RICO violations <u>prior</u> to Plaintiffs' deposit, and any alleged RICO violations <u>subsequent</u> to the deposit could not have been the proximate or but-for cause of Plaintiffs' alleged injury.  Moreover, in March 2020, the Bank provided Plaintiffs with a check drawn on the Bank's account at the BDL, in the full amount Plaintiffs requested (an amount <u>larger</u> than Plaintiffs' deposit with the Bank).  Am. Compl. ¶¶ 337-38; El Khoury Decl. Exhibit 6 (ECF 41-8).  Plaintiffs have suffered no injury, and thus lack standing.

Second, for the reasons set forth above in Section IV(C), Plaintiffs have failed to plausibly allege fraud claims against the Bank, and thus the RICO claims, which are predicated on alleged mail and wire fraud, must also be dismissed.  *See, e.g., Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (RICO claims based on fraud must be plead with specificity).

Third, Plaintiffs have not plausibly alleged a RICO "enterprise" or that the Bank played a role in <u>directing the affairs</u> of such an "enterprise."  *See Guzman v. Hecht*, No. 18-cv-3947 (DLC), 2019 U.S. Dist. LEXIS 48193, *12-13 (S.D.N.Y. Mar. 22, 2019) ("In order to participate . . . in the conduct of [an] enterprise's affairs, . . . one must have some part in directing those affairs.") (citation and quotations omitted).

Finally, because Plaintiffs' substantive RICO claim against the Bank must be dismissed, the RICO conspiracy claim must also fail.  *See*, *e.g.*, *FindTheBest.com, Inc.*, 20 F. Supp. 3d at 461 ("Because [plaintiff] has not adequately pled a RICO claim … [plaintiff's] conspiracy claim fails as well.").  The RICO conspiracy claim also must be dismissed because, as discussed *supra*, Plaintiffs have failed to plausibly allege that AM Bank engaged in a conspiracy.

## <u>CONCLUSION</u>

The Amended Complaint should be dismissed as against AM Bank with prejudice.


Dated: November 20, 2020                    Respectfully submitted,
                                                **SQUIRE PATTON BOGGS (US) LLP**


                                                /s/ *Gassan A. Baloul*
                                                Gassan A. Baloul
                                                gassan.baloul@squirepb.com
                                                Mitchell R. Berger
                                                mitchell.berger@squirepb.com
                                                2550 M Street, N.W.
                                                Washington, D.C. 20037
                                                Telephone: (202) 457-6000
                                                Facsimile:  (202) 457-6315


                                                Joseph S. Alonzo
                                                joseph.alonzo@squirepb.com
                                                1211 Avenue of the Americas, 26th Floor
                                                New York, New York 10036
                                                Telephone: (212) 872-9800
                                                Facsimile:  (212) 872-9815


                                                *Counsel for Defendant AM Bank S.A.L.*