# Exhibit 3

 

 Branch: Daunieh  Date: 09/03/2016

Account No: ▮

## AGREEMENT FOR OPENING AN ACCOUNT / ACCOUNTS IN OUR NAMES AT YOUR BANK WITH A REQUEST TO ISSUE BANK PAYMENT CARDS AND SUBSCRIBE TO THE BANK'S ELECTRONIC SERVICES

I/we the undersigned:

1) Joseph Abdallah Daou
2) Karen Maued Joseph Kaziaani Sp. Joseph Daou
3) ------
4) ------

(Jointly and severally)
Having elected domicile at the following address: Daumanh, near Reuka Cap sunville, Bloc C, 2nd floor 71/4/2000

Kindly request you to open ☐ in my name  ☒ in our names  ☐ in the name of :

(1) ------ in our books the following account/accounts:

| | | | |
|---|---|---|---|
| 1- Savings Account | ☐ Fixed maturity date (2) : <br> ☐ First maturity date: <br> ☐ Sight | Interest rate: | Currency: (3) <br> Currency: <br> Currency: |
| 2- Collective Savings Account | ☐ Fixed maturity date : <br> ☐ First maturity date: <br> ☐ Sight | Interest rate: | Currency: <br> Currency: <br> Currency: |
| 3- Joint Savings Account | ☐ Fixed maturity date : <br> ☐ First maturity date: <br> ☐ Sight | Interest rate: | Currency: <br> Currency: <br> Currency: |
| 4- Deposit Account | ☐ Fixed maturity date : <br> ☐ First maturity date: | Interest rate: | Currency: <br> Currency: |
| 5- Joint Deposit Account | ☐ Fixed maturity date : <br> ☐ First maturity date: | Interest rate | Currency: <br> Currency: |
| 6- Collective Deposit Account | ☐ Fixed maturity date : <br> ☐ First maturity date: | Interest rate: | Currency: <br> Currency: |
| 7- Current Accounts <br> Checking Accounts | ☐ Sight | Interest rate: | Currency: <br> Currency: |
| 8- Joint Current Accounts <br> Joint Current Accounts | ☐ Sight | Interest rate: | Currency: <br> Currency: |
| 9- Collective Current Accounts (4) <br> Collective Checking Accounts | ☐ Sight | Interest rate: | Currency: <br> Currency: |

*Signatures: Joseph Daou / Karen Daou*

2

The Collective Accounts for several parties can be operated ☐ by sole signature ☐ by any of the following two joint signatures   ☐   (other to be specified)

1) ........................................................................................................

2) ........................................................................................................

3) ........................................................................................................

We hereby kindly request the Bank, in addition to the opening of the above mentioned accounts, to perform the following:

| 1- Issue ☐ in my name ☐ in the name of | 1-Accept ☐ the subscription ☐ the subscription of to the followings electronics services | Name of the services beneficiary |
|---|---|---|
| ☐ Visa | ☐ Phone Banking | |
| ☐ MasterCard | ☐ Internet Banking | |
| ☐ Diners Club | ☐ WAP Banking | |
| ☐ BankerNet Visa Electron | ☐ TV Banking | |
| ☐ Other Cards | ☐ Other Services | |

This account/accounts and the issuance of cards as well as the subscription to the electronics services are subject to the special conditions stated hereunder, and we declare that we have read and approved them.

Account Holder / Account Holders Signatures (5)

Read and approved Josephadeo
Valid for opening a
checking and saving
account
Read and approved valid for     Josep...
opening checking and saving           Mar/9/2016
account
                 Karin Daou
                                 3/21/16  3/21/16

1) Mention the name of the minor person, or the mentally retarded customer; in the latter such case, the customer can only open a Savings or a Deposit Account.
2) Fix the maturity date to one month/ three months/ one year or more
3) Specify the currency
4) Valid for opening a Collective joint liability account, and by Power of Attorney entered into between us.
5) The Account Holder/Holders should, before signing the present Agreement, handwrite the following: " read and approved valid for opening an account/accounts and for issuance of cards and for subscription to electronic services ".


checking & saving acc  KD

3

### 1- GENERAL CONDITIONS GOVERNING THE OPENING AND OPERATION OF A SAVINGS ACCOUNT

1- A personal passbook is given by the Bank to the Account Holder/s upon the opening of a savings account. This passbook is the equivalent of a bill to the order of the depositor. It is neither transferable, nor endorsable. The amounts can only be deposited and withdrawn in cash upon presentation of the passbook to the issuing branch where the Account was opened. The transactions shall be recorded in the passbook which be should signed by authorized signing officers of the branch. The withdrawal cannot be effected by cheques or transfers.

2- Should the Bank agree to accept payments by means of cheques, their value shall be entered in the account but remains subject to final clearing before which date the Account Holder/s shall not be entitled to withdraw any related amount. In case of non- payment of the cheques for any reason, the Bank is entitled and without prior notice, to debit the account with the relevant amount. The Bank is also exempted from protest for non payment of the cheque and the issuance of the notice of advice subject of article 367 of the Code of Commerce, since it is the responsibility of the Account Holders to enquire about the said cheque with the Bank.

3- The Account Holder/s shall assume alone the responsibility for the loss, robbery or illegal use of the passbook, in which cases the Account Holder should immediately notify the Bank. The Account Holder or the Account Holders may jointly receive a new passbook by signing a written declaration notifying the Bank of the loss, thereby giving the Bank total and final discharge.

4- In case of a Sight Savings Account, the interests are calculated according to the rates fixed by the Bank and shall be accrued and capitalized on December 31 of each year or at the closing of the account, and the amount of interest is entered in the passbook upon its presentation to the branch. The Bank reserves the right at all times to amend the applied interest at its discretion.

5- In case of a Fixed Term Deposit, the Account Holder is not allowed to withdraw the amounts deposited before the maturity date, the interests are calculated according to the rates fixed by the Bank and shall be accrued and capitalized upon maturity. Interest rates cannot be modified except upon maturity. The Bank reserves the right to renew the deposit automatically for the same previous period and at the rates applicable upon renewal, unless the Account Holder gives different instructions to the Bank, at least five working days prior to maturity date.

6- In case of Fixed Term Deposit, the Bank reserves the right and without prior notice to the Account Holder to automatically debit the Account upon first maturity for all amounts related to withdrawals effected by payment cards and/or charges and fees related to services due and not settled, in addition to other expenses due.

7- In case of a Joint Savings Account, each Account Holder, being jointly creditor, is solely entitled to operate the account unconditionally and unreservedly, provided he presents the savings passbook for each transaction. He has the right to deposit or withdraw any amount, utilize the balance and allocate all or part of the credit balance to secure any debts due to the Bank, be it of a third party or all or any of the Account Holders, according to the Bank terms, ask for the closing of the Account, give total and final discharge to the Bank, and remit the savings passbook. The Bank is not compelled to inform all the Account Holders of the activity of each of them. The Account Holders are jointly entitled to assign one or several authorized representatives other than the Holders themselves, and to revoke them.

8- Upon the death of one of the Joint Account Holders, his partner/s alive have the absolute right to utilize the totality of the account. In this case, the Bank is not compelled to give any information to the heirs of the deceased Account Holder unless otherwise clearly stated in the present Agreement and agreed upon by all Holders.

9- In case of several Account Holders, those having the signing authority are entitled to operate the account by their joint signatures unconditionally and unreservedly, provided they present the savings passbook for each transaction of deposit or withdrawal; their rights include the right to utilize the balance and allocate all or part of the credit balance to secure any debts due to the Bank be it of a third party or all or any of the Account Holders according to the terms of the Bank, to ask for the closing of the account, to give total and final discharge to the Bank and to remit the savings passbook. The Account Holders are jointly entitled to designate one or several representatives by an official proxy clearly specifying their prerogatives.

10- In case of death of one of the several Account Holders, the balance at the date of the death notice served to the Bank shall be equally divided among the living Holders and the heirs of the deceased party. In this case, the Bank shall automatically block the part of the deceased party in order to pay it to the heirs, according to the Law on the Limitation of Successions. The Bank should not accept any notice from any of the Account Holders stating the opposition on the rights of the other Account Holders or forbidding them to freely operate and utilize the Account separately. However, should any legal action be taken among the Account Holders concerning their account, the Bank shall be obliged to block the account as soon as notified of the legal action. This measure


KD

4

shall remain in force until the Bank receives a request signed by all Account Holders to release the account, or an enforceable court rule settling the dispute. The account shall bear no interest when blocked.

11- Said account is subject to the provisions of this Agreement and to the Laws stipulated in the Code of Money and Credit, the Code of Obligations and Contracts, and the Law governing the Joint Account, dated December 19, 1961.

## 2- CONDITIONS GOVERNING FIXED TERM DEPOSIT ACCOUNTS

1- The Account shall bear interest according to the agreed rate, and shall be accrued on the capital amount at each maturity, before which date no withdraw is allowed. The Deposit is considered implicitly renewed, once or more, and shall bear interest according to the rates applied at maturity by the Bank, unless otherwise advised by the Account Holder, at least 5 working days prior to that date.

2- If no deposits nor withdraws are effected in 5 consecutive years (except for the interest) the account is considered dormant and the Bank reserves the right to stop accruing interest, and charge fees for services rendered.

3- Joint Deposit Accounts or Collective Deposit Accounts are subject to all regulations governing such accounts and stipulated in the first paragraph of this Application Form.

## 3- CONDITIONS GOVERNING CURRENT ACCOUNTS:

1- The customer makes withdrawals from his Account by means of a checkbook delivered to him by the Bank, which he undertakes to diligently safeguard. The Bank is not held responsible for any stolen, lost, or illegal use of the checks, before a written notification is received, to prevent any unlawful payment.

2- In case the Account Holder/s want/s to print their own personal checkbooks, a prior written approval must be obtained from the Bank to this effect. The Account Holder/s shall be fully responsible for any incompletion, default or error in printing and numbering these checks. The Bank is not required to control such checks numbering and serial order, nor is it liable for comparing them with the samples used by the Account/s Holder/s. The Bank's role is limited to the verification of signatures. To this effect, Account Holder/s undertake to notify the Bank of the printed checks numbers, and shall not use any different numbers without the Bank's prior approval.

3- The Bank is not held responsible for any delay in presenting the check for collection on due date, nor is it responsible for delays in sending notifications, or any loss or destruction of the checks while in transit among the Bank branches, or between the Bank and its correspondents.

4- The value of the checks deposited for collection on the responsibility and to the credit of the customer cannot be withdrawn until final clearance of the check. If the uncleared checks and their amounts are credited to the customer's accounts before final clearance, such entry will not be considered as a loan granted, and no withdrawal will be allowed until the check is finally cleared. The Account Holder/s has/have no right to issue a check without provision or no sufficient funds, nor to withdraw total or part of funds relative to a check issued.

5- The Account Holder/s declare/s that they read all provisions pertaining to the rules and regulations of the Central Office for Defaulting Customers stipulated in Decision No. 6060 dated November 25, 1995 issued by the Governor of the Central Bank of Lebanon. The Account Holder/s unreservedly approve the application of said provisions.

6- The Bank reserves the right to make a reverse-entry to the Account Holder/s account as a result of a material or legal error, or as a result of a bounced check for any reason, without prior notice. Each Account Holder disposing of funds credited to their account by mistake are liable to legal action taken against them, and the Bank reserves the right in such cases to claim any damages equivalent to the principal plus any accrued contractual interests and accessories as of the date of occurrence of the error.

7- In case of a Joint Current Account, all rules pertaining to the Joint Account stipulated in the first paragraph of this Application Form apply.

8- The Current Account bears interest according to the agreed rate, and shall be capitalized the 31st December of each year.




5

## 4- RULES AND REGULATIONS GOVERNING PAYMENT CARDS

1) The Cardholder or Account Holder is committed to the following:

1-1: Signing the Card upon receipt.

1-2: Remaining the sole user of the Card and its Personal Identification Number; using it within its authorized credit limit (or authorized operations for specified transactions), within the period of validity indicated on the Card. Each transaction made in excess of the authorized limit, and without the consent of the Bank, will be subject to an interest-based penalty, calculated on the amount withdrawn, according to the Bank's rates, and at its own discretion.
The Bank reserves the right to modify the authorized credit limit of the Card and/or its date of validity at any given moment, and as many times as it sees fit, at its own discretion and without the approval of the Cardholder.

1-3: Safe keeping the Card, keeping its Personal Identification Number highly confidential, using it adequately and without disclosing it, knowingly or unknowingly, to any other person.

1-4: Not granting or lending the Card to any third party. Consequently, the Account Holder remains committed to paying the Bank all amounts resulting from the use of the Card.

1-5: Immediately notifying the Bank, in writing, in case the Card is lost, stolen, or its Password/Personal Identification Number disclosed or used by any other party. The Cardholder and/or Account Holder remain fully responsible for all transactions and charges made, up until the Bank receives the written notification mentioned here-above.

1-6: Notifying the Bank in case the Card is withheld in any ATM machine regardless of the cause of its withholding. The Bank may not be held responsible for any such incidence.

2) The Bank cannot be held responsible in case the Card or any other service is used by a third party who gained knowledge of the Card's PIN due to the negligence of the Cardholder, or for any other reason. Therefore, neither the Cardholder nor the Account Holder has the right to oppose the transactions and fees charged to the specified card account since the Cardholder and the Account Holder gave their previous consent in regards to such responsibilities and risks.

3) The Card remains the property of the Bank at all times. Upon first request, the Cardholder or Account Holder must immediately return the Card to the Bank and reimburse all fees and charges due.

4) The use of the Card and/or the Personal Identification Number is considered the equivalent of the signature of the Account Holder and/or Cardholder, and has the same force of law as the signature. Therefore, neither the Cardholder nor the Account Holder may oppose any transactions executed with the Personal Identification Number in case of disagreement over transactions using the Card or any similar payment instrument.

5) Upon request of the Account Holder, the Bank may issue an additional Card to a third party with a different PIN. In such case, the Account Holder is jointly and severally liable along with the additional Cardholder for all transactions and related fees. The Bank or the Account Holder may at anytime, and whenever appropriate, cancel these cards without a previous written notification to the Cardholder.

6) The Account Holder gives the Bank the right to irrevocably debit his/her account, without prior notice, in the following cases:

6-1: All transactions amounts resulting from the use of the Card or any additional card issued upon the Cardholder's request to any third party, and upon receipt of sales advises and Card statements. The Bank reserves the right to convert the amount spent on the Card into the currency of the relevant card-related account, based upon the rate applied on the date of the currency conversion and without prior notice to the Account Holder.

6-2: The annual fee due upon the issuance of the Card or its renewal, which is fixed and modified at times by the Bank at its own discretion.

6-3: The amounts due for card services, as determined and/or occasionally modified by the Bank at its own discretion. For the above-mentioned reasons, the Account Holder accepts the accounting entries of the Bank and therefore he/she waives his/her right to oppose these entries since the Bank immediately executes the above-mentioned transactions as soon as made, without checking their correctness or any other related issue.

7) Upon receipt of a merchant credit slip duly accepted by the Bank for the reimbursement of a payment, the Bank undertakes to credit the Cardholder's account.

8) The Bank shall not be held responsible for the Card rejection at any Merchant Point Of Sale. Furthermore, the Bank may not be held responsible for any loss incurred directly or indirectly in case ATM machines, Points Of Sale or communication systems are out of service or technically disfunctioning.




6

9) The Bank holds no responsibility in case of a dispute between the Cardholder and/or the Account Holder, and the Merchant. Under no circumstance may such dispute justify the Cardholder and Account Holder's refusal to reimburse any amounts paid by the Bank for any transaction made or related fees and charges. Also, under no circumstances, may the Bank be held responsible for the refusal of a Card, for any reason, at any Merchant Point Of Sale and/or in case the Cardholder and/or the Account Holder are denied any related services.

10) The Bank reserves the right at any time to modify the conditions of this Agreement, terminate it or suspend it. In all cases, the Cardholder and the Account Holder remain responsible for all transactions and charges due and not reimbursed to the Bank.

11) The rules and conditions stipulated in the Agreement for the opening of an account or any other agreements or documents signed by the Account Holder and/or the Cardholder are considered an integral part of this Agreement. In case of any contradiction therein, the terms of the present Agreement shall prevail.

12) The delivery of a Card to a Cardholder or to the Account Holder is considered as an implicit acceptance by the Bank of the Application and all conditions specified in this Agreement.

### 5) CONDITIONS GOVERNING THE MONEY & BANKING SERVICES BY ELECTRONIC DELIVERY CHANNELS:

1) The Account Holder/s undertake to perform the following:

1-1 Use the PIN personally, protect it from loss and keep it confidential, without allowing any person to use it. The Bank is not responsible for any consequence of cyber-piracy or claim for hacked information via Internet, phone, TV or any other means leading to divulgate accounts information or execute illegal transactions on the account. Consequently, the Account Holder/s are liable to the Bank and to third parties for all the damages incurred due to the use or misuse of third parties of the PIN. The Account Holder/s agree/s to refund the Bank for any damage incurred accordingly.

1-2 Immediately notify the Bank, in writing, when the PIN is lost, or hacked, and the Cardholder/s remain/s fully responsible for all operations and charges until the Bank's reception of the written notice aforementioned.

1-3 To use Browsers of 128 encryption bit key. The Account Holder is held responsible for any consequence generating from the usage of any encryption program below 128 bit key.

1-4 To log out of the Online Banking web page upon finishing the banking transactions and not keeping these terminals unattended. Account Holder/s is/are responsible for any consequence resulting from this infraction.

2) The PIN related to the Account Holder/s remains the propriety of the Bank, consequently the Bank has the right, at its own discretion, and without any prior notice to return the right given to the Account Holder/s and to suspend the subscription to these programs.

3) The Bank reserves the right solely and at any given time to amend the conditions of usage of the password or the PIN; or to discontinue any service of the services provided, including bank transactions; or amend the terms and conditions related to the program of any of the electronic services. The Account Holder do not have the right to protest or claim any damages or indemnities of any kind or nature.

4) The Bank is not held responsible for any damages due to a delay in the data transmission or any sudden disconnection or emergency cases such as a power failure, holidays, strikes, force majeure, acts of God, security circumstances, government procedures, eavesdropping, or any virus that might attack the internet web. On the other hand, the Account Holder(s) undertake, in case their computer is hit by a virus, not to use the Internet Banking Service, and take all appropriate precautious measures to discontinue the spread of the virus through the Internet Banking Service. Any breach to these provisions will ensue full responsibility on the Account Holder(s) regarding all the damages incurred by the Bank.

5) The Bank performs the following:

5.1 – Notify the Account Holder(s) via electronic mail within 24 hours, in confirmation of execution of any banking operation. Within one week, the Bank generates and keeps a statement to this effect upon the request of the Account Holder(s) who undertake to receive it at their first visit to the Bank.

 

7

5.2 - Notify the Account Holder(s) by means of a detailed monthly statement showing all banking operations effected by them via any of the electronic services channels, according to the Bank's rules and regulations, related to this accounts or any of their accounts opened at the Bank.

6) All banking operations effected via any of the electronic services channels are recorded, to ensure the good execution of instructions made by the Account Holder(s). Such recordings are considered a final and irrevocable proof of their operations. The usage of the password or the PIN are equivalent to the signature of the Account Holder(s). Accordingly, the latter confirm the correctness of the Bank's books and accounts which are a definite proof of the dues resulting from the electronic services channels usage, and stipulated in the present agreement. Account Holder(s) cannot object their correctness in any way; they desist their right of requesting an audit on their books, accounts and transactions related to these dues, at any judicial instance.

### 6- GENERAL PROVISIONS GOVERNING ALL ACCOUNTS

1- The Account Holder(s) will be provided periodically, with statement of accounts of their current accounts, cards and electronic services, on the address stated on this form. The statement of account will include all operations effected on the Account as per the Bank's regulations. The Account Holder(s) is/are committed to informing the Bank of any modification which might occur on the address above mentioned. The Bank is also entitled to send these statements by the regular, special, or electronic courier. To this effect, the Account Holder(s) waives the banking secrecy rights stipulated in Article 2 of the September 3rd, 1956 Law.

2- The Bank's documents constitute the sole reliable proof as regards the Account Holder(s) and third parties; therefore the statement of accounts issued by the Bank constitute proof documents in any legal proceeding or request for execution. For this reason, as of this date, the Account Holder(s) waive their right to take legal action against the Bank protesting the correctness of the statement of accounts, and undertake not to present any defense against the Bank for absence of statements validation, or Account Holder's signature affixed to them, since the absence of a written request by the Account Holder(s) pertaining to correction of errors or amendments will be considered a proof of receipt and acceptance of all entries therein.

3- Should the balance of any Account in this Agreement become accidentally debtor, the Account Holder(s) undertakes to settle the balance plus any accrued interest and charges, upon the first request of the Bank. An interest charge shall be applied to the debtor amount according to interest rates fixed by the Bank at market value. A monthly fee of 2/000 shall also apply and capitalized at the end of each month.

4- The Account Holder(s) irrevocably authorizes the Bank, at any time, and without any advise or previous notice, to effect a clearing between debtor accounts of any kind and unpaid bills, with creditor accounts in the name of the Account Holder(s), including the savings accounts; in addition the Bank reserves the right to effect exchange operations according to market prices.

5- The Account Holder(s) expressly agree, regarding the use of payment cards or settlement of electronic services by electronic channels, that their account numbers linked to the password or PIN might appear, with their balance, on the screens of electronic machines, as any transaction effected by the Account Holder(s). The latter(s) exempt the Bank form any responsibility regarding banking secrecy in case a third party tried, without the positive intervention of the Bank, to obtain information regarding his/their account at the Bank.

6- All electronic banking services and payment cards stop upon the death of Account or Card Holder(s), as of the date of notification to the Bank. All amounts due to the Bank are automatically debited from the Account Holder's account, even after the death. The heirs undertake, jointly and severally, to honor all provisions stipulated in the present agreement, as well as to settle all amounts due to the Bank.

7- The Account Holder(s) undertake to pay all subscription fees, charges, and commissions periodically fixed by the Bank. To this effect, the Account Holder(s) irrevocably authorizes the Bank to debit any of their accounts to settle the amounts of said commissions, fees and charges.

8- Any revocation of proxy of Authorized Signatures regarding an account must be duly notified to the Bank. Only after due receipt of such notification, will the Bank commence applying it.

9- Each Account Holder(s) declare on their full responsibility that they are the Beneficial Owner(s) of all amounts existing or will be deposited in or transferred to the Account subject of the present agreement.

 

8

10- All due and unpaid liabilities of the Account Holder(s) shall be executed according to the provisions of laws in place, without any need for a Court rule to Validate the statement of accounts balances.

11- For any dispute arising between the Bank and the Account Holder(s) regarding this agreement, the Bank reserves the right to take legal action against the Account Holder(s) either in the Courts and Execution Departments of Beirut, or in the place of residence of the Account Holder(s).

12- The Bank reserves the right to accept or refuse any or all requests stipulated in the present agreement. To this effect, the Account Holder(s) acknowledge(s) that the opening of (an) account(s) in Bank's books or the issuance of Bank cards, or the subscription to electronic services, according to this agreement, constitute an acceptance from the Bank and makes it an Agreement of Account Opening, or an acceptance to issue Bank cards, or to subscribe to electronic Bank services.

SIGNÉ EN NOTRE PRÉSENCE

*I Read All provision of the present Form and hereby approved and certify their content.*

Account Holder (s) Signature [1]

*Joseph Adam  MAR/9/16*
*Karin Doan  3/21/16*

Bank Officer's Name and Signature [2]

*I read all provisions of the present Form and hereby approve and certify their content*

CREDIT LIBANAIS S.A.L
Agence JOUNIEH

(1) Each one of the Account Holder(s) should handwrite the following expression, before signing the Form:
   *I read all provisions of the present Form and hereby approve and certify their content.*

(2) The Bank Officer who witnessed the signature of this Form should also sign after conducting the proper verification of the Account Holder(s)

(Application for Opening a Unified Account)