# Exhibit 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH A. DAOU and KAREN M. DAOU,
               Plaintiff,

v.

BLC BANK, S.A.L., CREDIT LIBANAIS,     Case No. 1:20-cv-4438
S.A.L., AL-MAWARID BANK, S.A.L., and
BANQUE DU LIBAN,

               Defendants.

**DECLARATION OF PATRICK SOUMRANI, Esq.**

    I, Patrick Soumrani, declare pursuant to 28 U.S.C. § 1746:

    1. I am the managing partner of Soumrani Lawyers and Legal Counsels, a Lebanese law firm established in Beirut, Lebanon. I have been admitted to the Beirut Bar Association in 1993, and act as counsel and litigator.

    2. I hold an LL.D. from Paris II Assas University for a thesis titled "The fiduciary ownership of shares" which won the Albert Wahl Prize (rewarding the best thesis in Commercial and Corporate Law in France) and the Prize of the Association of Corporate Legal Counsels of Paris and Ile de France ("Le portage d'actions", éd. LGDJ, 1996, préface B. Oppetit). I specialize in mergers and acquisitions, banking and finance law, corporate law, commercial law and litigation. I am also a Professor of Corporate and Business Law at the School of Law and Political Sciences of Saint Joseph University of Beirut, and former member of the committee in charge of the revisions of the Code of Commerce, appointed by the Ministry of Justice.

1

3. I submit this declaration in support of Credit Libanais S.A.L.'s ("CL Bank") motion to dismiss plaintiffs Joseph and Karen Daou's (the "Plaintiffs") complaint (the "Complaint") and their Motion to Attach (the "Motion").

4. I am a native Arabic speaker and fluent in English, and for ease of the parties and the Court, have prepared this declaration in English.

5. For the purpose of this declaration I have reviewed scanned copies of the following documents:

a. The "Agreement for Opening an Account/Accounts in our Names at Your Bank with a Request to Issue Bank Payment Cards and Subscribe to the Bank's Electronic Services" dated 9 March 2016 duly executed by the Plaintiffs and CL Bank (the "Agreement").

b. The checks drawn by CL Bank on its account with Banque du Liban to the order of the Plaintiffs, dated, respectively, 21 November 2019 for an amount of US$5,300,000, and 2 December 2019 for an amount of US$40,180 (collectively the "Checks").

c. the Complaint filed by the Plaintiffs in this lawsuit and the Plaintiffs' declaration filed with the Motion.

A. **Governing Law**

6. Under the Lebanese conflict of law principles, the contracting parties are free to designate the Lebanese law as the law that governs their agreement[1], relationship and resolution of any disputes that may arise in connection therewith.

7. The general conditions set out in the Agreement designate, in clause 11 of the section titled "General Conditions Governing the Opening and Operation of a Savings Account", the Lebanese law as the law governing the said savings account (the "Account") and state that the "account is subject (…) to the Laws stipulated in the [Lebanese] Code of Money and Credit, the

---

[1] Except for agreements or issues determined by law as being of public interest.

Code of Obligations and Contracts, and the Law governing the Joint Account, dated 19 December 1961."

8. In my opinion, such clause would be given full effect under the laws of Lebanon. Consequently, the Lebanese law designated by this clause would govern (i) all questions of compliance with contractual obligations as between the parties in relation to the Account, and (ii) all contractual claims relating to the parties' agreements and to the parties' relationship deriving from the Account.

9. Any claims in tort by the Plaintiffs, including those for fraud or conversion, would also be governed by the Lebanese law, pursuant to the *"lex loci delicti commissi"* rule according to which the governing law in the case of a tort is the law of the place where the alleged tort has purportedly been committed. Based on my review of the Complaint and the Plaintiffs' declaration, under Lebanese law, Lebanon would be the place where the alleged torts deriving from the Agreement have been committed.

### B. Jurisdiction

10. Under the Lebanese conflict of jurisdiction principles, the courts of Lebanon are competent to look into this dispute.

11. This competence results from articles 74, 97, 100 and 102 of the Lebanese Code of Civil Proceedings ("CCP").

12. Article 74 of the CCP provides that *"[t]he international competence of the Lebanese courts is in principle subject to the rules governing the internal competence without distinction between a Lebanese and a foreigner"*.

13. Articles 97, 100 and 102 of the CCP, which are the relevant rules governing the internal competence of the Lebanese courts, give such courts competence to look in this dispute on each of the following grounds:

3

(i) all the Defendants are domiciled in Lebanon (articles 97, 100 and 102 of the CCP),

(ii) the Agreement has been signed and is performed in Lebanon where the Account is opened and maintained (article 100 of the CCP), and

(iii) the alleged tortuous acts have occurred in Lebanon (article 102 of the CCP).

14. It is my opinion that the Lebanese courts are the most appropriate courts to interpret and apply the Lebanese law, especially when the claim implicates the operation of the Lebanese financial system in light of the current financial crisis in Lebanon. Indeed, the crisis has given rise to legal issues that have not been previously addressed, in addition to the passing of new laws and regulations imposed by the unprecedented events that took place since October 2019. The interpretation and application of the said laws and regulations, as well as the answer to the legal issues that the crisis generated, can best be addressed in my opinion by the Lebanese courts because of their concrete understanding of the Lebanese financial situation and of its implications.

### C. Lebanese law relating to international transfers

15. The Lebanese statutes and decrees in force do not impose on banks the providing of the international transfers of funds service to their clients.

16. As a result, such transfers require the mutual agreement of the clients and the banks.

17. Nothing in the Agreement stipulates for an obligation on CL Bank to make payment to the Plaintiffs by way of international transfers.

18. In light of the above, it is my opinion that CL Bank is not obliged to abide by the Plaintiff's request to transfer abroad funds from the Account.

4

### D. Lebanese law relating to checks

19. CL Bank may pay the Plaintiffs' deposits by arranging for the issuance and remittance of banker checks, such as the Checks, to their order.

20. Payments by checks, such as the Checks, are recognized under the Lebanese law as a valid payment method usable in Lebanon, as provided for in articles 409 and subs. of the Code of Commerce ("CC").

21. Given that the Checks are crossed[2] and specify that their place of payment is Beirut, the Plaintiffs should expect and request payment thereof by deposit for crediting in an account with any bank in Lebanon.

22. This results from the provisions of articles 409 and 434 of the CC:

- Article 409, paragraph 4, of the CC provides that a check must contain the indication of the place where payment must be made. The Checks clearly mention on their face that they are payable in Beirut.

- According to Article 434 of the CC, crossed checks can be cashed only by way of their deposit in an account with the issuing bank or with any other bank of the Plaintiffs' choice.

23. Under Lebanese law, upon the Plaintiffs' acceptance of the Checks drawn on the Central Bank, it is my opinion that CL Bank would have performed its obligations to the Plaintiffs as to amounts set forth in the Checks, and it becomes incumbent upon the Plaintiffs to deposit the Checks in an account in any bank in Lebanon. Consequently, CL Bank would have no further obligation towards the Plaintiffs in this respect.

---

[2] Crossed checks are provided for in articles 433 and subs. of the CC. It is common practice in the banking industry in Lebanon to issue "crossed" checks, which are similar to the "banker" checks, in order to secure proper payment in favor of the payee. They constitute valid means of payment.

### E.  The Lebanese Courts are Fully Operational and Subject to the Rule of Law

24. I have reviewed the portions of the Plaintiffs' complaint concerning the "*utter collapse*" of the rule of law in Lebanon.  In my opinion, the Plaintiffs' claims in this respect are not correct.

25. The Plaintiffs should, given the recent precedents rendered by the Lebanese courts since the beginning of the financial crisis in Lebanon, receive a fair and just adjudication on the merits of their claims and, should they prevail, obtain a genuine remedy for any damages awarded.

26. The courts in Lebanon have remained fully operational throughout the current financial crisis, except for limited closures due to rallies and to the COVID-19 pandemic.  In spite of a slowdown due to the abovementioned closures, cases are being filed, litigated and decided, including involving disputes relating to the crisis.  In my opinion, a court in Lebanon is capable of adjudicating the claims against Defendants in a fair and reasonably efficient manner.

27. The Lebanese legal system traces to the country's 1926 Constitution.  Similar to the United States, Lebanon has adopted separation of powers principles as between the executive, legislature, and judiciary.

28. Similar to the U.S. federal system, Lebanon has a three-tiered system.  Decisions rendered by courts of first instance in Lebanon may be appealed to a three-judge Courts of Appeal and in turn to the Supreme Court of Lebanon, the Court of Cassation.

29. Lebanon places great emphasis on the judiciary's independence and the principle of litigants' equality under the law.  Article 1 of the CCP affirms that the "*[t]he judiciary is a power independent from the other powers in the investigation and resolution of lawsuits, and such independence cannot be restricted by any limit which is not provided for in the Constitution.*"

30. Article 7 of the CCP expressly provides for the equality of all litigants, "*Lebanese or foreigners,*" without any discrimination based on nationality.

31. Lebanon is a party to the U.N. International Covenant on Civil and Political Rights of 1966.  Lebanon's Constitutional Council has exalted the Covenant's provisions above national

statutes (CCP, Article 2). Article 14 of the Covenant states that *"[a]ll persons shall be equal before the courts and tribunals"* and protected by due process.

32. In my professional experience, the Lebanese judiciary rules based on the merits of each case. As a general remark, the Lebanese legal system is strongly inspired from the French one. The judiciary is governed and guided by the comprehensive CCP, which is modeled on the French system. In evaluating claims and rendering decisions, the judiciary follows the applicable codes and statutes, such as Lebanon's Code of Obligations and Contracts and Code of Commerce, which are also modeled on French law. The French inspiration has led Lebanese authors and courts to rely on the interpretations and solutions adopted by French scholars and jurisprudence, whenever the contents of the French and Lebanese texts of law were similar or sufficiently close.

33. The Plaintiffs are not without access to recourse in Lebanon in the present climate. To the contrary, there have been several cases pending in Lebanese courts in recent months involving disputes between banks operating in Lebanon and their customers and several judgments have been rendered by first instance courts and are currently the subject of appeals, which are still pending before the Courts of Appeal.

**F. Requested Relief is Available in Lebanon Under Lebanese Law**

34. In Lebanon, under Lebanese law, the Plaintiffs are free to assert any claims against Defendants for damages arising from the conduct alleged in the complaint.

35. Claims based on breach of contract and torts, including for fraud or wrongful domination of property or others, are available under Lebanese law.

36. A Lebanese court could award a judgment against Defendants and an order enforcing that judgment. If claims against them are found to be meritorious in Lebanon, the Defendants would face liability and judgments in the Lebanese courts.

### G. Conclusion

For all of the above outlined reasons, I am of the opinion that:

(i)     Based on the Lebanese statutes and decrees and the Agreement, it is my opinion that CL Bank was not obliged to abide by the Plaintiffs' request to transfer abroad funds from the Account.

(ii)    CL Bank acted consistent with Lebanese law in issuing and delivering the Checks to the Plaintiffs and thus fulfilling its obligations towards them.

(iii)   The Checks are valid payment instruments under Lebanese law.

(iv)    The Lebanese courts are competent to exercise jurisdiction over any claims related to the Agreement between CL Bank and the Plaintiffs, whether in contract or tort.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 7, 2020                    /s/ _Patrick G_

       Beirut                                  Patrick Soumrani

8