UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOSEPH A. DAOU and KAREN M. DAOU,          :
                                           :
                       Plaintiffs,         :
                                           :
        - against -                        :
                                           :     1:20-cv-04438-DLC
BLC BANK, S.A.L., CREDIT LIBANAIS,         :
S.A.L., AL-MAWARID BANK, S.A.L., and       :
BANQUE DU LIBAN,                           :
                                           :
                       Defendants.         :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## DECLARATION OF NAAMAN NADDOUR

Naaman Naddour declares as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an Executive Director at Banque du Liban (the "Central Bank"), the central bank of Lebanon, where I am the Head of Foreign Exchange and International Operations. I make this declaration to provide factual information supporting the Central Bank's motion to dismiss the Complaint against it. The facts stated in this declaration are based on my personal knowledge and my review of records maintained by the Central Bank.

2. My primary languages are Arabic and French but I also speak and write English in the course of my regular business activities. This declaration has been prepared in English.

### A.  The Central Bank's Financial and Regulatory Authority

3. The Central Bank was established in 1963 pursuant to Decree-Law no. 13513, which enacted the Lebanese Code of Money and Credit ("CMC"). The Central Bank's capital is wholly owned by the State of Lebanon. The Central Bank nonetheless acts as an autonomous authority, independent from the Lebanese Government, in each of its roles.

4.	Among other responsibilities, the Central Bank is vested by law with the exclusive right to issue and regulate the supply of the national currency. As stated in Article 70 of the CMC, the Central Bank is entrusted with the general mission of safeguarding the national currency in order to ensure Lebanon's sustained social and economic growth. This mission consists of:

- safeguarding Lebanese currency and managing the circulation of bank notes and coins;
- safeguarding economic stability in Lebanon;
- safeguarding the soundness of the Lebanese banking system; and
- developing Lebanon's monetary and financial markets.

5.	The Central Bank exercises broad authority to fulfill its mission. For example, it intervenes in the foreign exchange market by buying and selling foreign currencies in order to stabilize the Lebanese pound, which is pegged to the U.S. dollar. It operates and regulates the payment system in Lebanon. It controls bank liquidity by adjusting discount rates and by intervening in the open market. It imposes reserve requirements on banks' assets. It regulates banks' credit by imposing credit ceilings, by incentivizing banks to extend credit towards specific purposes or sectors, and by setting the terms and regulations governing credit in general.

6.	The Central Bank coordinates with the Lebanese Government in order to ensure consistency between the Central Bank's objectives and those of the Government. The Central Bank informs the Government about economic matters that might negatively affect the national economy and Lebanon's currency, and suggests measures that might benefit the balance of payments and public finance, as well as offering advice on promoting economic growth.

7.  The Central Bank also grants licenses to all domestic and foreign banks and other financial institutions doing business in Lebanon. The Banking Control Commission of Lebanon, an independent agency within the Central Bank, acts as the prudential supervisor overseeing the implementation of the Central Bank's regulations by these institutions. The Central Bank may also consult with the Association of Banks in Lebanon (ABL), a trade association comprised of all banks licensed by the Central Bank to operate in Lebanon, on various matters, including with respect to regulations that the Central Bank aims to issue.

### B. The Central Bank's Role as Banker to Lebanon's Public Sector and Financial Institutions

8.  In addition to its regulatory role, the Central Bank serves as the banker to Lebanon's public sector, including municipalities and other Lebanese government entities. It also has authority to maintain accounts for other central banks, domestic banks and financial institutions, and foreign banks and financial institutions. The Central Bank does not maintain accounts or provide any financial services for any entities apart than other central banks, domestic and foreign banks, or financial institutions. The Central Bank does not have legal authority to maintain accounts for individuals, and it does not maintain any such accounts except for its own employees as stated in the paragraph number 18.

9.  In 1995, the Central Bank authorized banks operating in Lebanon to maintain foreign currency accounts at the Central Bank. The U.S. dollars in these accounts belong to the depositing banks, and not to any of those banks' customers or to the Central Bank. These accounts at the Central Bank constitute a significant portion of the banks' foreign currency assets.

10. Banks maintaining accounts with the Central Bank may issue checks drawn on the funds held in those accounts, including their U.S. dollar accounts. The banks need not and do

not seek approval or authorization from the Central Bank to issue such checks. The Central Bank makes payment on those checks provided that the bank's account has sufficient funds to cover it.

11. The preprinted check forms that the Central Bank provides to Lebanese banks all bear the legend "Payable à/AT BEIRUT." This has been the case since before the current financial crisis. This legend is placed on the checks as a consequence of Lebanese law, which requires that checks state where they must be paid. Thus, any checks drawn on the Central Bank by a bank operating in Lebanon may be negotiated or deposited only in Lebanon.

### C. The Current Financial Crisis

12. Unfortunately, Lebanon's economy and financial systems are in a state of grave crisis. For years, the Lebanese Government has been operating with large fiscal deficits funded by public debt, much of which is held by the Central Bank and Lebanon's commercial banks. Lebanon also suffers from large trade deficits. As a result, the unofficial market value of the Lebanese pound has declined significantly against the U.S. dollar, which, among other effects, reduces the effective income and purchasing power of Lebanese residents. Civil unrest resulted in the complete closure of Lebanon's banks for two weeks in late October, 2019.

13. To address these challenging circumstances, the Central Bank has deployed multiple measures to help the Lebanese economy and banking system survive. Among the most critical measures, the Central Bank has: (a) restricted international transfers of the U.S. dollar deposits that Lebanese banks hold with the Central Bank to those transactions that further matters of vital national interest, namely the financing of wheat, medical and fuel imports into Lebanon; (b) required Lebanese banks to refrain from distributing dividends for financial year 2019 and to increase their capital by 20 percent by the end of June 2020 (later extended to

December 2020); and (c) issued a circular in December 2019 reducing interest rates on bank deposits in Lebanese pounds and U.S. dollars.

14. Following the restriction by the Central Bank on international transfers of US dollar deposits that Lebanese Banks hold with the Central Bank, on November 17, 2019 the ABL announced that it was implementing restrictions on all overseas transfers of foreign currency, with certain limited exceptions. A copy of the ABL's release is attached as Exhibit 1. In a series of statements posted on Twitter by the Central Bank on January 25, 2020, the Governor of the Central Bank confirmed as follows: that existing deposits that were on the books of Lebanese banks before November 17, 2019 "can be moved freely inside Lebanon"; that "all funds received by Lebanese banks from abroad after November 17th are free to be transferred out"; and that the Central Bank "is providing the liquidity needed by banks in both Lebanese pound and dollars, but under one condition that the dollars lent by [the Central Bank] won't be transferred abroad." A copy of these statements is attached as Exhibit 2.

15. On 30 April 2020, the Lebanese Government through its Council of Ministers unanimously adopted a Financial Recovery Plan (reflecting exclusively the views of the Lebanese Government) that sets out several key proposals to put the Lebanese economy back on a long-term sustainable growth path. As part of the Financial Recovery Plan, the Lebanese Government (currently in caretaker mode) committed that the restrictions on international transfers effected in Lebanon in November 2019 would remain in place until the Lebanese economy stabilizes. The relevant portion of the Financial Recovery Plan is attached as Exhibit 3. In addition, in the Financial Recovery Plan, the Lebanese Government committed to taking action to assure the restrictions on international transfers would be implemented in a uniform and comprehensive manner to avoid any unequal treatment of bank depositors.

16. If this lawsuit is allowed to continue, it would frustrate the goal of maintaining foreign currency resources until the Lebanese economy stabilizes. Other accountholders in Lebanon with financial means and access to foreign courts would start similar lawsuits, prejudicing the interests of small accountholders who do not enjoy such access. Any challenges to these restrictions on overseas transfers are best resolved in Lebanon, where the interests of accountholders can be addressed in a fair and equitable manner.

### D. The Central Bank Reasonably Did Not Expect to Be Sued in the United States

17. The Central Bank is headquartered in Beirut and has nine branches, all of which are in Lebanon. The Central Bank has no office in the United States and it does not employ any personnel in the United States.

18. The Central Bank does not regularly transact business in the United States except to maintain U.S. dollar accounts with the Federal Reserve Bank of New York and several correspondent banks. It does not offer any banking services to United States residents and does not solicit business from United States residents. Indeed, other than opening accounts for its staff for the sole purpose of depositing their salaries, the Central Bank does not offer banking services to any individuals.

19. The Central Bank does not have a customer or other relationship with the Plaintiffs in this case, Joseph and Karen Daou. The Central Bank had no role in the issuance of the checks issued by BLC Bank, Credit Libanais, and AM Bank to the Plaintiffs. We did not become aware of those checks until we received communications from the U.S. banks where the Plaintiffs sought to deposit them.

[signature on following page]

- 7 -

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 30th day of November, 2020 at Beirut, Lebanon.

_____
Naaman Naddour     *November 30th 2020*