# EXHIBIT

# 1

| **Al CHERIF for Translation & Services** | الشريف للترجمة والخدمات |
|---|---|
| *Sworn Translation – Legalization – Typing*<br>*Beirut – Sami El-Solh Street. Azar & Fakhoury Bld. –*<br><br>*Ground floor. Telefax: 01/398701 – Mobile: 03/816494*<br>e.mail: fayezsharif@gmail.com | ترجمة قانونية – مصادقات – طباعة<br>بيروت – سامي الصلح – مقابل وزارة العدل – بناية عازار وفاخوري – الطابق<br>الأرضي – تلفاكس: 01/398701 – خلوي: 03/816494<br>البريد الالكتروني: fayezsharif@gmail.com |

(Margin: Basis # 323/2020, Summary Order # 52/2020)

Summary Order
In the Name of the Lebanese People

AFTER VERIFICATION AND INSPECTION,

IT APPEARED THAT on December 2, 2019, the Plaintiff, ALAIN MERHEJ, Esq., through his representative, Mr. Johnny Merhej, Esq., filed a petition against the Defendant, CREDIT BANK S.A.L., pursuant to which the Plaintiff stated that he deposited in his account with the Defendant bank the amount of Fifty Thousand US Dollars pursuant to a bank transfer/wire; that on October 19, 2019, he requested the transfer of Fifty Thousand US Dollars from this account to his account in the United Arab Emirates (UAE), Dubai Emirate, so he could pay the rental of his house in the mentioned Emirate; however, the Defendant Bank refused to make the required transfer with no reason or legitimate evidence; that the Plaintiff warned the Defendant by registered mail through the Notary Public; and concluded by requesting that the deadlines be reduced to the minimum possible considering the urgency of the matter and that a summary order be rendered pursuant to which the Defendant Bank would be bound by the transfer of USD 44,000.00 from the Plaintiff's account opened with the Defendant under A/C # 0061012850605816000 to his account with the National Bank of Dubai (NBD), Jumeirah Branch, No. 1015225116003, IBAN: AE 5802 6000 101 5225 11 60 03, Swift: EBILAEADJUM, under penalty of coercive fine of Twenty Million Lebanese Pounds for each delay day;

THAT on December 9, 2019, the Defendant filed through Mr. Paul Jean Merheb Harb, Esq., a first statement of defense, pursuant to which it stated that the Lebanese Economy is currently witnessing exceptional circumstances and very difficult conditions which had its impacts on the financial and monetary aspects in the local and national market, in general, and on the bank field, in particular, resulting in these



unprecedented and unpredicted monetary and economy circumstances, out of the control of the administration of the other Lebanese banks which had to take provisional measures to ensure the public interest and to maintain the customers' interests, among which the restrictions on the foreign transfers, and such measures were confirmed by the Association of Banks which issued instructions on November 17, 2019 to enforce restrictions and rules on the foreign transfers; that the Plaintiff asked during this monetary crisis, and in particular, on November 19, 2019, and not in October 19, 2019, as mentioned in the petition, the transfer of an amount of Forty Thousand US Dollars to his account in Dubai for him to be able to settle the rental of his house, which he claimed to be due; that the Plaintiff did provide in the petition the lease contract, but a mere certificate of lease contract data registration issued by the Government of Dubai, and said certificate does not state the rental maturity date, being not considered an evidence or a right justification for the transfer request, since the Plaintiff does work in Dubai and makes a revenue and income therein where he can ensure the rental; that said reality is confirmed in the periodical transfers the Plaintiff makes to his account with the Defendant, proving that he does work abroad and is making an income that allows him to pay the rental; that the Plaintiff did transfer, after the refusal date, an amount of Ten Thousand US Dollars, simply he could have kept this money to pay the rental with; that the Defendant ensures that it is totally and completely ready and undertakes to allow and permit the Plaintiff to draw the entire balance from his account by any available means, in particular, by cheques drawn to BDL or through internal transfers or weekly cash withdrawals; the Defendant also declared that the foreign cross-border foreign is a bank service which the Bank may have the right to approve or refuse in the absence of legal or contractual text compelling the bank to make the required transfer; in the conclusion, the Defendant requested that the claim be rejected since the terms and conditions for the application of Article 579 of the Code of Civil Proceedings are not met, in particular the urgency factor, and the obvious abuse; and that the Plaintiff be bound by the fees, expenses, fines, and damages;

THAT on December 11, 2019, the Plaintiff filed a first statement of defense pursuant to which he stated that the Defendant acknowledged that the Plaintiff's funds are deposited with the Bank and that these funds cover the value he is requesting to



transfer, based on its proposal to pay the amount by other means' that the Plaintiff does not accept the suggested substitutional means as proposed by the Bank since the Plaintiff needs this money in USD; that the Bank did not suggest the possibility of withdrawing the amount in cash and in USD, however, suggested the payment by cheque drawn on BDL, and said cheque does not allow the Plaintiff to obtain the amount in cash; that the Bank suggested the payment of the amount in the national currency which shall cause damages and inevitable losses to the Plaintiff; that all the Defendant's allegations for such purpose shall be rejected since pursuant to Article 249 of the Code of Obligations & Contracts, the Creditor shall have the right to collect the debt, purpose of obligation, in cash, and pursuant to Article 293 of the Code of Obligations & Contracts, the payment shall be made in the Creditor's hands or in the hands of any person appointed by the latter for such purpose, being the bank in Dubai Emirate as per the letter sent to the Defendant; that the Plaintiff only agrees that the payment be made in cash in the same currency as the account i.e. in USD to his legal attorney of the Bank is refusing the transfer abroad; that the Court dealing with matters of urgency has jurisdiction since it is proved the obvious abuse of the Plaintiff's rights, represented by the Bank's abstention to transfer the amount to the Plaintiff's account in Dubai and the Bank's violation of its contractual and banking obligations, for having defaulted the terms of Articles 249 and 293 of the Code of Obligations & Contracts; and finally, the Plaintiff reiterated his previous claims and requests;

THAT on December 18, 2019, the Defendant filed a statement of defense pursuant to which it stated that the Plaintiff illegally invoked the terms of Articles 249, 293 and 299 of the Code of Obligations & Contracts, pursuant to which the debt should be repaid similarly in the same kind and nature; while pursuant to Article 307 of the Code of Commerce, the bank receiving under deposit and trust an amount of money shall become the owner of the money, and may return its value in an equivalent value and not in kind and personally; that the legal nature of the deposit can be depreciated pursuant to the provisions of Article 691 of the Code of Obligations and Contracts; and therefore should be rejected Articles 249, 293 and 299 of the Code of Obligations & Contracts, relying on the provisions related to the depreciated loan, in particular Articles 754 and 759 of the Code of Obligations & Contracts, pursuant to which the



loan shall become the title and ownership of the borrower, and the latter shall return the loan in kind and in nature; the Defendant asked that the Plaintiff's claims and statements should be rejected; and finally, reiterated its previous claims and requests;

THAT on January 8, 2020, the Plaintiff filed a second statement of defense pursuant to which he stated that the present conflict comprises two litigant parties, the Defendant Bank and the Plaintiff; that the latter is the weaker party who shall be protected, being a small depositor, has expenses and fees to be paid in Lebanon and abroad, as living expenses, school tuitions, rentals, residential loans, and credit cards; that the Plaintiff is not bound by revealing his assets and liabilities upon requesting an operation with the bank, noting that considering the relationship with the branch's manager, he used to provide the latter with oral instructions through phone call to make any operation with the bank; that the transfer of funds abroad comes in the context of the ordinary banking deals between the Plaintiff and the Defendant and is not an exceptional process currently requested; that the bank's refusal to make the transfer jeopardizes his rights, since he used to and is still counting on his account with the Defendant to settle his financial dues and obligations; that the expenses requested to be paid are urgent and necessary expenses and by not paying such expenses, the Plaintiff and his family should be liable to legal accountability; that the Defendant defaulted the provisions of Article 307 of the Code of Commerce and the overall legal texts invoked in its last statement, by defaulting the payment of the deposit in kind; and finally, the Plaintiff asked the rejection of the Defendant's claims and statements, and reiterated his previous requests;

THAT on January 15, 2020, the Defendant filed a statement of defense and reiterated its previous claims and statements; and

THAT on the trial hearing session dated January 15, 2020, both Parties reiterated their claims and the trial was closed;

NOW, THEREFORE,



WHEREAS the Plaintiff asks that a summary order be rendered to enforce the Defendant for the transfer from his account opened with the Defendant Bank under # 0061012850605816000 the amount of USD 44,000.00 to his account with the National Bank of Dubai (NBD), Jumeirah Branch, No. 1015225116003, IBAN: AE 5802 6000 101 5225 11 60 03, Swift: EBILAEADJUM, under penalty of coercive fine of Twenty Million Lebanese Pounds for each delay day, stating that the Defendant's refusal to make the requested transfer or to allow the Plaintiff to withdraw the amount in cash in the account currency, i.e. USD, constitutes an obvious abuse of the Plaintiff's rights and incurs him with serious damages and engages him in legal accountability for being unable to pay the rental of his house in Dubai;

WHEREAS the Defendant asked the rejection of the proceedings being the Court dealing with urgency matters incompetent to discuss such claim; and declared that the foreign cross-border foreign is a bank service which the Bank may have the right to approve or refuse in the absence of legal or contractual text compelling the bank to make the required transfer; that his refusal to make the transfer, disputed under the present proceedings, is due to the economic crisis in the country, for which the banks had imposed restrictions on foreign transfer to ensure the public interest and to maintain the smaller depositors' rights; expressing its total and complete readiness to pay the requested amount pursuant to bank cheque drawn on the BDL or to pay its equivalent in the national currency which shall constitute a collection of the debt in the light of the provisions of Article 307 of the Code of Commerce and Articles 754 and 759 of the Code of Obligations & Contracts, abolishing and rejecting thus the obvious abuse of the Plaintiff's rights;

WHEREAS pursuant to Section 2 of Article 579 Code of Civil Proceedings, the Judge in Chambers dealing with matters of Urgency is conferred the authority and power to take the measures to remove the obvious abuse and infringement of legitimate rights and circumstances;

WHEREAS Section 2, in contrary to Section 1 of the same Article, does not require an urgency to be provided and the failure to address the right origin, however, it requires the fulfillment of two joint conditions, the first, the existence of the right or



the legitimate situation of the Plaintiff, and the second, the evidence that this right or this legitimate situation has been abused;

WHEREAS the abuse referred to in Article 579 above is the obvious and clear abuse, absolutely with no doubt or ambiguity, with the no conflict about its obviousness, which is in fact an act or an abstention to an act made by a person out of his legitimate rights, causing damages to third parties, i.e. the usurping or illegitimate act which inflicts the lack of any serious conflict about its existence or obviousness;

WHEREAS it should be first discussed the Plaintiff's legitimate right to ask for the transfer abroad or cross-border transfer; and thereafter to consider if the Defendant's refusal to make the transfer abroad could be considered as obvious abuse of rights;

WHEREAS after reviewing the prima facie of the documents provided in the file, undisputed by the Defendant, it is confirmed that the Plaintiff owns a current account in USD opened with the Defendant Bank, that pursuant to the account statements, attached to the petition, the balance of the account is of USD 48,715.00;

WHEREAS after reviewing the documents provided in the file, it appears that the Plaintiff works in the UAE, Dubai, where he leased a house; and that he is consistently transferring amounts to his account opened with the Defendant Bank through funds transferred in USD;

WHEREAS the Plaintiff asked the Defendant to transfer the amount of USD 40,000.00 to his account in Dubai for the Plaintiff to be able to pay the rental of his house; however, the Defendant refused to abide by the request;

WHEREAS the Plaintiff declared that the Defendant's refusal to transfer the amount, under request, or to allow the Plaintiff to withdraw the amount in USD and in cash, caused severe damages to the Plaintiff who is unable to ensure the required amount to pay his contractual obligations and engage his legal accountability;



WHEREAS the Defendant justifies its refusal as to the required transfer by the economic crisis in Lebanon;

WHEREAS the Lebanese economic system is a free system guaranteeing the individual initiative and the personal ownership as set forth in the Preamble of the Lebanese Constitution;

WHEREAS the free system is based on the free negotiation and exchange, including the freedom to dispose of the capital and to transfer the same with no restrictions, unless otherwise provided in law;

WHEREAS, although it is not explicitly provided for in the Lebanese legal texts that transfers/wires are among the regular operations carried out by the Lebanese banks, however, such operations have been significantly applied as secure and fast operation to pay debts to avoid transferring the liquid cash money, therefore, bank transfers became a daily and non-exceptional transactions to which the banks have referred to upon their customers' requests;

WHEREAS the Lebanese legislator did not keep pace with the development imposed by the Globalization and the cross-border dealings, introducing the transfer operations and other modern techniques in its legal texts, similarly to the French law, since Article 0312-1-1 of the French Monetary & Financial Code defined the operations related to the bank account, among the debit and credit financial transfers, as ordinary operations carried out by the banks, similarly to the cash deposit, the cheques, the payment by cards, or in cash, or other means;

In the French text, it is literally states as follows:

Article D 312-1-1 (modified by Decree No. 2018-1175 of October 18, 2018 Article 1):

- A- List of the most representative services attached to a payment account: 1... 2... 3... 4... 5... 6... 7... 8... 9 occasional SEPA transfer;
- B- Other banking services:

a) Account credit operations:
1- Cash payment; 2- transfer receipt; 3- cheque payment

b) Account debit operations:
1- Issuance of a transfer

Pursuant to the abovementioned Article, the issuance of a transfer is defined as being the operation through which the Bank transfers the amount from its customer's account to another account determined by the latter and pursuant to the customer's instructions.

However, pursuant to the vocational and professional customs of the Lebanese banks, the bank transfer is a regular and daily transaction carried out at the customers' strict instructions, similarly as cheques deposit and payment, withdrawal of cash money or by debit cards, under the same terms as in the banks in France and other countries having a free economic system as Lebanon, consistently with the principles governing this system, in particular, the principle of securing individual ownership, and the individual's right to dispose of his capital;

WHEREAS the use of the French legislator the expression "customer's instructions" clearly and undoubtedly confirms that the transfer, as the payment by cheque or the request of funds' withdrawal in cash, shall be made automatically and upon request, and the bank may not accept or refuse the same, and the French Cassation Court decided that the enforcement of any transfer which lasts more than twenty four hours is to be considered an error to be borne by the Bank which shall abide by its contractual liability;

"The bank under the obligation of recovering funds it has under its deposal, a transfer order should be executed within twenty four hours" (Commercial Cassation Court on September 18, 2012, No. 868).

WHEREAS considering the development in the concept of banking transfer in different legislations, the transfer is anymore being considered as amicable contract

between the customer and the bank, as the Defendant is stating, but became a means of the deposit contract or the current account opening enforcement means between the bank and the customer, the creditor; the cross-border transfer is currently a formal legitimate act which effects are enforced through written entries without requiring the material liquid money transfer abroad;

WHEREAS the bank should abide by its obligations towards its creditor, the customer, by recovering the deposit, upon first request, since whenever the customer issues the transfer order, the bank shall not have any discretionary power in deciding whether to make the transfer or not or discussing with the customer the reason of the transfer and its necessity, the bank should be bound by executing the transfer unless the customer's account is insolvent;

WHEREAS by reconsidering the obvious information provided in the current proceeding, the Defendant bank previously acknowledged that it had made foreign transfers to the Plaintiff's order without disputing the solvency of the latter's account, and did not invoke the non-fulfillment of any of the transfer conditions (as that the country to be transferred to is a sanctioned country), the Defendant Bank stated solely to the current economic crisis with no evidence provided to prove that this crisis is a force majeure, as for the bank;

WHEREAS the Defendant's statements, as the ability of the Plaintiff to provide the rental from his account in Dubai, since he is working therein, and that there is no necessity to transfer the amounts abroad, should be rejected from non-seriousness;

WHEREAS the Defendant offered to settle the transfer value by bank cheque drawn on BDL, invoking the provisions of Articles 307 of the Code of Commerce and 754 and subsequent of the Code of Obligations & Contracts;

WHEREAS in all cases, and pursuant to the provisions of Article 754 of the Code of Obligations & Contracts, the borrower should return the borrowed money or other things, under the depreciation loan, a similar amount, in kind and in capacity; and pursuant to Article 307 Code of Commerce, the Bank has to recover the deposit

amount by an equivalent upon the depositor's request, the Defendant's proposal to pay to the Plaintiff by bank cheque drawn to the BDL is not accepted since such cheque is solely for payment under the restrictions and does not allow the Plaintiff to obtain his money in cash;

WHEREAS the Plaintiff, being the owner of the account, has the sole right to decide the operation he wants to make and to give instructions about the operation to the Bank and the latter should abide by the same as long as the account is solvent, and since there is no legal text justifying the refusal of the customer's account, and therefore, the Defendant's refusal as to make the transfer, is unfounded to legal justification or legitimate evidence, and thus, shall be rejected the Defendant's claims and requests to the contrary;

WHEREAS based on the Constitutional principles ensuring the private and personal ownership, the freedom of disposing by the capital, and the freedom of negotiating that safeguards the personal initiative, in the absence of a code authorizing the bank to put restrictions on the freedom of accounts managing, disposal, and transfer, as the Capital Control, as to be mentioned without limitation, the Bank's refusal to execute the transfer request by the Plaintiff should be considered a flagrant violation of the Lebanese Constitution, the Internal Legal System, and the applicable customs and rules;

WHEREAS based on the above, it is confirmed that the Plaintiff, as being the owner of the account opened with the Defendant Bank, has the legitimate right to ask the transfer of the amount from his account to another account he owns abroad; that the Defendant Bank's refusal to abide by the Plaintiff's instructions as to the execution of the requested transfer shall be considered illegitimate act including a flagrant violation to the Lebanese Constitution, the internal legal system, and the principles upon which the Lebanese Economy system is based as aforementioned, which is to be considered an obvious and clear abuse of the Plaintiff's rights, incurring him with confirmed material and economic damages, justifying the intervention of the present Court to take the appropriate measures to relieve the abuse pursuant to the provisions of Section 2 Article 579 of the Code of Civil Proceedings;

WHEREAS based on the result achieved by the Court, there is no need to discuss the remaining redundant or contrary claims and reasons;

For all these reasons,

I, the undersigned, Rania Rahme, the Judge in Chambers dealing with matters of Urgency in Maten, hereby order and decide as follows:

First:

THAT the Defendant, CREDIT BANK S.A.L., be bound by taking all necessary measures to transfer the amount of USD 44,000.00 from the Plaintiff's account opened with the Defendant under A/C # 0061012850605816000 to his account with the National Bank of Dubai (NBD), Jumeirah Branch, No. 1015225116003, IBAN: AE 5802 6000 101 5225 11 60 03, Swift: EBILAEADJUM, under penalty of coercive fine of Twenty Million Lebanese Pounds for each delay day;

Second:

THAT any redundant or contrary claim be rejected;

Third:

THAT the Defendant be bound by all legal fees and expenses.

Summary Order executable on its original rendered in public in Jdeidet El Maten, on January 22, 2020.


Clerk              Judge Rania Rahme
(Signature)        Judge in Chambers dealing with matters of Urgency in Maten
                   (Signature)

أساس: ٣٢٣/ ٢٠٢٠

القرار: ٢٠٢٠/٥٢

قرار

باسم الشعب اللبناني

نحن رانيا رحمه قاضي الأمور المستعجلة في المتن،

لدى التدقيق،

تبيّن أنه بتاريخ ٢٠١٩/١٢/٣ تقدّم المدعي المحامي آلان مرعب بواسطة وكيله الاستاذ جوني مرعب استحضارا بوجه المدعى عليه بنك الاعتماد المصرفي ش.م.ل، عرض فيه أنه أودع في حسابه لدى المصرف المدعى عليه مبلغاً قدره خمسين الف د.أ بموجب حوالة مصرفية وأنه بتاريخ ٢٠١٩/١٠/٢٩ طلب تحويل اربعين الف د.أ من هذا الحساب الى حسابه في دولة الامارات العربية المتحدة – امارة دبي لكي يتمكن من دفع ايجار منزله في الامارة المذكورة فرفض المدعى عليه اجراء التحويل المطلوب دون اي سبب او مبرر شرعي وأنه انذر المدعى عليه بموجب كتاب بواسطة الكاتب العدل، وخلص الى طلب تقصير المهل الى أقصى حد بالنظر للضرورة الملحة واصدار الحكم بالزام المصرف المدعى عليه بأن يحوّل من حسابه المفتوح لديه برقم 006101285060581600 مبلغاً قدره /٤٤٠٠٠/ د.أ الى الى حسابه في دبي لدى مصرف الامارات دبي الوطني فرع الجميرة رقم 1015225116003، IBAN: AE 5802 6000 101 5225 11 60 03 السويفت: EBILAEADJUM تحت طائلة غرامة اكراهيه قدرها عشرين مليون ل.ل عن كل يوم تأخير،

وأنه بتاريخ ٢٠١٩/١٢/٩ قدم المدعى عليه بوكالة الاستاذ بول جان مرعب جريج لائحة جوابية اولى أدلى فيها بأن الاقتصاد اللبناني يمر حاليا بظروف استثنائية وأوضاع صعبة جداً انعكست على الوضعين المالي والنقدي في السوق المحلية ككل وفي القطاع المصرفي بشكل خاص وقد نتج عن هذه الظروف الاقتصادية والنقدية غير المسبوقة وغير المرتقبة والخارجة عن ادارة سائر المصارف اللبنانية اتخاذ عدة تدابير مؤقتة حتمتها المصلحة العامة والحرص على المحافظة على مصالح العملاء

قاضي الأمور المستعجلة في المتن

رانيا رحمه

-٣-

ومن ضمن هذه التدابير وضع قيود على التحويل الخارج، وقد تم تأييد تلك التدابير
من قبل جمعية المصارف التي أصدرت توجيهات بتاريخ ١٧/١١/٢٠١٩ بوضع قيود
وضوابط على التحويل الخارجي وبأن المدعى طلب في ظل الازمة النقدية وتحديداً
بتاريخ ١٩/١٠/٢٠١٩ وأيضاً في ١٩/١٠/٢٠١٩ كما ورد في الاستخضار تحويل
مبلغ اربعين الف دولار الى حسابه في دبي من اجل تسديد بدل ايجار منزله الذي يزعم
انه مستحق، وبأن المدعي لم يبرز بالاستخضار عقد الايجار بل بمجرد شهادة تسجيل
بيانات عقد ايجار صادرة عن حكومة دبي وهذه الشهادة لا عين تواريخ استحقاق بدل
الايجار رهي لا تشكل ذريعة ولا مبرر صحيح لطلب التحويل لا سيما بأن المدعي
يعمل في دبي ويحقق دخله هناك بحيث يمكنه تأمين بدل الايجار وهذه الحقيقة ثابتة
من التحويلات الدورية التي يجريها المدعي الى حسابه لدى المدعى عليه الامر الذي
يثبت عمله في الخارج وانه بإستطاعته تأمين بدل الايجار، وبأن المدعى حول الى
حسابه لدى المدعى عليه بعد تاريخ رفض الاخير اجراء التحويل له مبلغاً قدره عشرة
الاف دولار، فكان بمكنه بكل بساطة عدم تحويل هذا المبلغ وتسديد بدل الايجار
بواسطته، وبأن المدعى عليه يؤكد استعداده التام وتعهده بتمكين المدعى من سحب
كامل رصيد حسابه بشتى الوسائل المتاحة لا سيما بواسطة شيكات مسحوبة على
مصرف لبنان أو بواسطة حوالات داخلية او سحوبات نقدية اسبوعية، كما أدلى بأن
التحويل الخارجي العابر للحدود هو خدمة مصرفية يعود للمصرف حق الموافقة على
اجرائه او رفضه في غياب وجود اي نص قانوني او تعاقدي يلزم المصرف بإجراء التحويل
المطلوب، وطلب رد الدعوى لعدم توافر شروط تطبيق المادة ٥٧٩ أ.م.م لا سيما
عنصر العجلة وشرط التعدي الواضح وتضمين المدعي الرسوم والنفقات وغرامة
والعطل والضرر.

وانه بتاريخ ١٣/١٢/٢٠١٩ قدم المدعي لائحة جوابية اولى ادلى فيما بأن
المدعى عليه اقر بوجود اموال للمدعي لديه تغطي القيمة التي يطلب تحويلها بدليل
عرضه ليفاء ها بطرق وسائل أخرى، وبأن المدعي لا يوافق على الوسائل البديلة
المطروحة من قبل المصرف لأن المدعي مضطر للمبلغ بالدولار الاميركي وان
المصرف لم يطرح تمكينه من سحب المبلغ نقدا بالدولار الاميركي بل بعرض الايفاء
بواسطة شيك مسحوب على مصرف لبنان ومثل هذا الشيك لا يمكن المدعي من

قاضي الأمور المستعجلة في المتن

رائد رحمه

- ٢ -

الاستحصال على غرمه نقداً، وأن عرض ابقاء القيمة بالعملة الوطنية يلحق بالمدعي   حـامـل
اضراراً وخسارة محتمة وبأنه يقتضي رد كافة ادلاءات المدعى عليه لهذه الجهة لأن
المادة ٢٤٩ م.ع تنطى الذاتي الحق في استيفاء موضوع موجبه بالذات عيناً ولأن
المادة ٢٩٢ م.ع تنص على أن التنفيذ يجب أن يتم بين يدي الدائن أو يدي الشخص
الذي يعينه لهذا الغرض وهو المصرف المعين في إمارة دبي بالكتاب المرسل الى
المدعى عليه، وبأن المدعي يوافق فقط على تسديد المبلغ نقداً بعملة الحساب اي
بالدولار الأميركي لوكيله القانوني اذا كان المصرف لا يريد التحويل الى الخارج وبأن
اختصاص قضاء المحلة متوافر لثبوت التعدي الواضح على حقوق المدعي والمتمثل
بامتناع المصرف عن تحويل المال الى حساب المدعي في دبي وخرق المصرف
لالتزاماته التعاقدية والمصرفية لمخالفته نص المادتين ٢٤٩ و٢٩٣ م.ع، وكرر مجمل
اقواله وطلباته السابقة.

وأنه بتاريخ ٢٠١٩/١٢/١٨ قدم المدعى عليه لائحة جوابية أدلى فيها بعدم
قانونية تذرع المدعي بالمواد ٢٤٩ و٢٩٣ و٢٩٩ م.ع لأنها توجب ايفاء الشيء
المستحق لمنه في حين أن المادة ٣٠٧ تجارة نصت على ان المصرف الذي يتلقى
على سبيل الوديعة مبلغاً من المال يصبح مالكاً له ويجب عليه ان يرده بقيمة تعادله
وليس عيناً وبالذات، وبأن الطبيعة القانونية للوديعة هي عزية الاستهلاك وفق احكام
المادة ٦٩١ م.ع وهذا التصنيف يوجب استبعاد المواد ٢٤٩ و٢٩٣ و٢٩٩ م.ع
والركون الى احكام المواد المتعلقة بقرض الاستهلاك لا سيما المادة ٧٥٤ و٧٥٩ م.ع
التي تنص على ان الاشياء المقرضة تصبح ملكاً للمقترض الذي عليه ان يرجع ما
يضارع الشيء المقرض نوعاً وصفةً، وطلب رد كل ما جاء في لوائح المدعي وكرر
مجمل اقواله وطلباته السابقة،

وأنه بتاريخ ٢٠٢٠/١/٨ قدم المدعي لائحة جوابية ثانية أدلى فيها بأن في النزاع
الراهن طرفان المصرف والمدعى عليه وبأن هذا الاخير هو الطرف الاضعف الذي
يجب حمايته وهو من سمار المودعين ولديه مصاريف ونفقات في لبنان والخارج من
معيشة ومدارس وايجار وقروض سكنية وبطاقات ائتمان، وبأن المدعى لسى ملزماً
والكشف على كل ما له وما عليه عند طلب كل بعملية من المصرف، مع العلم انه
قاضي الأمور المستعجلة في التي

رانيل رحمه

ويحكم علاقته مع سائر فروعه كان يعطي الأخير التعليمات الثمينة عن البنك لتنفيذ

العمليات التي كل يرغب القيام بها، وبأن طلب تحويل الأموال إلى الخارج يأتي في

سياق التعامل المصرفي العادي بين المدعي والمدعى عليه وهو ليس عملية استثنائية

يطلبها المدعي راهناً وبأن عدم اجراء التحويل يعرض حقوقه للضياع لأن كان وما

زال يعول على حسابه لدى المدعى عليه لدفع مستحقاته المالية وبأن النفقات

المطلوب دفعها من نفقات عاجلة وضرورية وأن عدم دفعها يعرض المدعي وعائلته

للمساءلة القانونية، وبأن المدعى عليه خالف المادة ٣٠٧ تجارة ويجمل المواد

القانونية التي تفرع بها في لائحته الأخيرة لأنه تخلف عن رد الوديعة عيناً وطلب رد

كل ما جاء في لوائح المدعى عليه وكرر،

وأنه بتاريخ ٢٠٢٠/١/١٥ قدم المدعى عليه لائحة جوابية كرر فيها،

وأنه في جلسة المحاكمة المنعقدة بتاريخ ٢٠٢٠/١/١٥ كرر الفريقان ختمت
المحاكمة،

## بناء عليه،

حيث إن المدعي يطلب إصدار القرار بإلزام المدعى عليه بأن يحوّل من حسابه
المفتوح لديه برقم 0061012850605816000 مبلغاً قدره /٤٤٠٠٠/ ـ . إلى
حسابه في دبي لدى مصرف الامارات دبي الوطني فرع الجميرة رقم
1015225116003، IBAN : AE 5802 6000 101 5225 11 60 03
السويفت: EBILAEADJUM تحت طائلة غرامة اكراهية قدرها عشرين مليون ل.ل
عن كل يوم تأخير، مدللاً بأن رفض المدعى عليه اتمام التحويل المطلوب او تمكينه
من سحب المبلغ نقداً بعملة الحساب اي الدولار الاميركي بشكل تعدياً واضحة على
حقوقه ويلحق به الاضرار الاكيدة ويعرّضه للمساءلة القانونية لعدم تمكنه من تسديد
بدل ايجار منزله في دبي،

وحيث إن المدعى عليه الذي طلب رد الدعوى لعدم توافر شروط اختصاص
قضاء العجلة، أدلى بأنه غير ملزم قانوناً او عقداً باجراء التحويل العابر للحدود الذي
لا يعدو كونه مجرد خدمة مصرفية يحق للمصرف قبول او رفض اجرائها وبأن سبب
قاضي الأمور المستعجلة ج المتي

رائيا وحمه

- ٦ -

المذكور مبلغاً قدره /٤٨٧١٥ د.أ،

وحيث يتضح ايضاً بمراجعة المستندات المبرزة من قِبَل المدعي ان هذا الاخير يعمل في الأمارات العربية المتحدة- دبي حيث يشغل منزلاً عن طريق الايجار وأنّه يَعدي جِبَايَة المفروخ في المصرف المدعى عليه باستمرار عن طريق تحويل المبالغ اليه بالدولار الاميركي،

وحيث ان المدعي طلب من المدعى عليه تحويل مبلغ /٤٠٠٠٠/ د.أ الى حسابه في دبي لكي يتمكن من تسديد بدل ايجار منزله، لكن الاخير رفض الامتثال الى طلبه،

وحيث يدلي المدعي بأن رفض المدعى عليه تحويل المبلغ موضوع الطلب او تمكينه من سحبه نقداً بعملة الحساب اي بالدولار الاميركي يلحق به أضراراً جسيمة ويمنعه من تأمين المبلغ اللازم لتسديد التزاماته التعاقدية ويعرّضه للمساءلة القانونية،

وحيث ان المدعى عليه يبرر رفضه اجراء التحويل المطلوب بالأزمة الاقتصادية التي يعاني منها لبنان،

وحيث ان النظام الاقتصادي اللبناني هو نظام حرّ يكفل المبادرة الفردية والملكية الخاصة وفق ما نصت عليه مقدمة الدستور اللبناني،

وحيث إن النظام الحرّ يقوم على حرية التداول le libre échange ومن ضمن ذلك حرية التصرف برأس المال وتحويله دون قيود الا تلك المنصوص عليها في القانون،

وحيث وإن لم يرد صراحةً في النصوص القانونية اللبنانية ان التحاويل les virements هي من ضمن العمليات الاعتيادية التي تقوم بها المصارف اللبنانية، الا أنّ هذا النوع من العمليات قد اكتسب اهمية كبرى كوسيلة سريعة وآمنة لايفاء الديون تغني عن نقل العملة مادياً، بحيث أصبحت عمليات التحويل من صلب العمليات اليومية غير الاستثنائية التي تقوم بها المصارف،

وحيث ان المشترع اللبناني لم يواكب التطور الذي فرضته العُوْلَمَة والتعامل التجاري العابر للحدود عن طريق لحظ عمليات التحويل وسواها من التقنيات الحديثة

قاضي الأمور المستعجلة في المتن

رانيا رحمه

- ٧ -

في نصوصه القانونية كما فعل نظيره الفرنسي ـ حيث عددت المادة 1-1-312 D من Code monétaire et financier الفرنسي ، عمليات الدفعة بالحساب المصرفي فأوردت التحاويل المحلية المحددة والدائمة من ضمن العمليات العادية التي تقوم بها المصارف وذلك أسوة بالإيداع النقدي Versement en espèces وإيداع الشيكات remise de chèques والدفع بواسطة البطاقة paiement par carte وسحب الأموال retrait d'espèces وغيرها.

وقد جاء في النص الفرنسي المذكور ما حرفيته:

Article D 312-1-1 ( modifié par le décret n 2018 -1175 du 18 decembre 2018 art 1) :

A- Liste des services les plus représentatifs rattachés à un compte de paiement:

1.. 2.. 3..4..5..6..7..8.. 9- virement SEPA occasionnel

B- Autres services bancaires :

a)- operations au credit du compte :

1  Versement d'espèces 2- reception d'un virement 3  remise de chèque

b)  operation au débit du compte

1  émission d'un virement

وقد عرّفت المادة الآنفة الذكر عملية إصدار التحويل émission d'un virement بأنها العملية التي بموجبها يقوم المصرف بتحويل مبلغ من المال من حساب زبونه الى حساب هو يحدده هذا الأخير ، ت ، لتطبيقه "l'établissement qui tient le compte vire sur instruction du client une somme d'argent du compte du client vers un autre compte".

الا انه ووفقاً للعرف المهني المتبع من قبل المصارف اللبنانية أضحت التحاويل من صلب العمليات والخدمات الاعتيادية اليومية التي تتم بناء لتعليمات الزبون تماماً كما هي الحال بالنسبة لعمليات ايداع الشيكات وصرفها وسحب الاموال نقداً او بواسطة البطاقة، وذلك على غرار المصارف في فرنسا وغيرها من البلدان التي تتمتع بنظام اقتصادي حر وانسجاماً مع كافة المبادئ التي تحكم مثل هذا النظام واهمها مبدأ حماية الملكية الفردية وحق الفرد بالتصرف برأس ماله،

وبحيث ان استعمال المشترع الفرنسي لعبارة instructions du client انما يدلّ بصورة واضحة واكيدة على ان عملية التحويل أسوة بعملية الدفع بموجب شيك او بطلب سحب الاموال نقداً تتم بصورة تلقائية وعفوية الطلب ولا يحق للمصرف قبول او رفض اجرائها، حتى ان محكمة التمييز الفرنسية اعتبرت ان استغراق اجراءات انفاذ امر التحويل اكثر من اربع وعشرين ساعة يشكل خطأ على عاتق المصرف ويرتب

قاضي الأمور المستعجلة في المتن

رانيا رحمه

- ٨ -

انعقاد مسؤوليّة التعاقديّة،

<< La banque ayant l'obligation de restituer les fonds qu'elle a en dépôt, un ordre de virement doit être exécuté dans les vingt quatre heures >> (Cass. Com. 18/9/2012 num. 868)

وحيث إنه وتبعاً للتطور الذي شهده مفهوم التحويل المصرفي في مختلف التشريعات، لم يعد يعتبر **التحويل** عمليّة رضائيّة بين العميل والمصرف بل أصبح يشكل وسيلة لتنفيذ عقد الوديعة أو فتح الحساب الجاري بين المصرف وزبائنه الفضيل، وأضحى **التحويل** العابر للحدود مجرّد عمل قانوني شكلي يرتّب آثاره عن طريق **قيود كتابيّة ولا يستلزم نقل النقود ماديّاً الى الخارج؛**

وحيث وطالما أنه يتوجب على المصرف تنفيذ التزامه تجاه دائنه العميل فإنه عندما يصدر الأخير أمر التحويل لا يكون للمصرف اي سلطة استنسابيّة في تقرير اجراء التحويل المطلوب او مناقشة العميل بسبب التحويل او مدى لزومه، بل يكون ملزماً بإجرائه الا اذا كان حساب العميل غير مليء؛

وحيث بالعودة الى معطيات الدعوى الراهنة، فإنّ المصرف المدعى عليه الذي أقرّ بأنه سبق له أن أجرى عدة تحاويل خارجيّة لأمر المدعي، لم يدّلع بملاءة حساب الاخير كما لم يتذرع بعدم توافر شروط التحويل (كأن تكون الدولة المطلوب جرء التحويل اليها هي من عداد الدول المحظّرة sanction countries مثلاً)، بل تذرع فقط بالازمة الاقتصاديّة الحاليّة دون ان يقدّم اي اثبات على كون هذه الازمة هي بمثابة القوة القاهرة بالنسبة اليه؛

وحيث إن ما أدلى به المدعى عليه حول قدرة المدعي على تأمين بدل الايجار من حسابه في دبي كونه يعمل هناك وعدم ضرورة تحويل المبالغ له الى الخارج،هو مستوجب الاهمال لافتقاره الى الجدية؛

وحيث ان المدعى عليه عرض تسديد قيمة الحوالة بواسطة شيك مصرفي مسحوب على مصرف لبنان، متذرعاً بالمواد ٣٠٧ تجارة و ٧٥٤ وما يليها م.ع،

وحيث بمقتضى احكام المادة ٧٥٤ م.ع التي تلزم المقترض أن يرد النقود او غيرها من المثلبات موضوع قرض الاستهلاك مقداراً بماثلها نوعاً وصفةً، والمادة ٣٠٧

قاضي الأمور المستعجلة في المتن

رانيا رحمه

- ٩ -

تجارة التي تلزم المصرف بإعادة الوديعة بقيمة تعادلها عند أول طلب من المودع، لا
يكون عرض المصرف الدفع بواسطة شيك مسحوب على مصرف لبنان مقبولاً طالما
ان هذا الشيك **لا يؤول الأ الى** التسديد في القيود **ولا يمكن المدعي من الحصول**
على أمواله نقداً،

وحيث وطالما أنه يعود للمدعي وحده بصفته صاحب الحساب تحديد العملية
التي يرغب بإجرائها وإعطاء التعليمات المحددة بشأنها للمصرف والتي يجب على
الأخير **الامتثال** لها طالما ان حسابه مليء وطالما أنه لا يوجد اي نص قانوني يبرر
عدم الاستجابة لطلبه، فيكون رفض المدعى عليه اجراء التحويل المطلوب غير مسند
الى اي مبرر قانوني او سبب مشروع وترد ادلاءات المدعى عليه المخالفة،

وحيث والحالة ما تقدم وانطلاقاً من المبادئ الدستورية التي تكفل الملكية الخاصة
وحرية التصرف برأس المال وحرية التداول والتي تصون المبادرة الفردية، وفي ظلّ
غياب اي قانون يجيز للمصرف وضع القيود على حرية تحريك الحسابات والتصرف
بها وتحويلها كمثل قانون الـ capital control على سبيل المثال لا الحصر، فإن
رفض المصرف المدعى عليه اتمام التحويل المطلوب من المدعي يشكل مخالفة
صارخة وواضحة للدستور اللبناني وللنظام القانوني الداخلي وللعرف والعادة السائدين،

وحيث تأسيساً على كل ما تقدم يكون قد أضحى من الثابت أن للمدعي بصفته
صاحب حساب جار لدى المصرف المدعى عليه حقاً مشروعاً بطلب اجراء تحويل
مبلغ من المال من حسابه المذكور الى حسابه في الخارج، وأن رفض المصرف
المدعى عليه الامتثال الى تعليمات المدعي حول كيفية اجراء التحويل المطلوب انما
يشكل عملاً غير مشروع ينطوي على مخالفة صارخة للدستور اللبناني وللنظام
القانوني الداخلي وللمبادئ التي يقوم عليها النظام الاقتصادي اللبناني وفق ما سبق
بيانه اعلاه، الامر الذي يشكل تعد واضح وساطع على حقوق المدعي، ويلحق به
أضراراً اقتصادية ومادية أكيدة ويبرر تدخل هذه المحكمة لاتخاذ التدبير الأيل الى رفع
هذا التعدي سنداً للفقرة الثانية من المادة ٥٧٩ أ.م.م،

وحيث انه وبعد النتيجة التي توصلت إليها المحكمة، لم يعد ثمة حاجة لبحث
سائر الأسباب والمطالب الزائدة أو المخالفة،

قاضي الأمور المستعجلة في المتن

رانيا رحمه 

- ١٠ -

لذلك،

نقرر :

اولاً: الزم المدعى عليه بنك الاعتماد المصرفى ش.م.ل بان يحول من حساب المدعى آلان مرهج المفتوح لديه برقم 0061012830605816000 مبلغاً قدره /٤٤٠٠٠/ د.أ الى حساب هذا الاخير في دبي لدى مصرف الإمارات دبي الوطني فرع الجميرة رقم 1013225116003، IBAN 03 60. ٢٢ 5225 101 6000 5802 AE البتريفتة EBILAEADJUM تحت طائلة غرامة اكراهية قدرها ثلاثة ملايين ل.ل عن كل يوم تأخير،

ثانياً: رد ما زاد او خالف،

ثالثاً: تضمين المدعى عليه الرسوم والنفقات القانونية كافة،

قراراً معجل التنفيذ صدر وافهم علناً في جديدة المتن بتاريخ ٢٠٢٠/١/٢٢

الكاتب / مني

القاضي رقيا رحمه
قاضي الأمور المستعجلة -ج المتن

رانيا رحمه