# EXHIBIT 2

| Al CHERIF for Translation & Services | الشريف للترجمة والخدمات |
|---|---|
| Sworn Translation – Legalization – Typing<br>Beirut – Sami El-Solh Street. Rabbat Bld. –<br><br>Ground floor. Telefax: 01/398701 - Mobile: 03/816494<br>e.mail: fayezsharif@gmail.com<br>www.alcheriftranslation.com | ترجمة قانونية – مصادقات – طباعة<br>بيروت – سامي الصلح – مقابل وزارة العمل – بناية الرباط – الطابق الأرضي –<br>تلفاكس: 01/398701 – خليوي: 816494<br>البريد الالكتروني: fayezsharif@gmail.com |

Margin:   Plaintiff: Imad EL MEREHBI
              Defendant: BLOM Bank
              Basis: 597/2020
              Award No: 275/2020

## Award

### In the Name of the Lebanese People

The Judge of Urgent Matters in Beirut

Upon perusal and inspection,

It appeared that on 02/12/2019, the Plaintiff Mr. Imad EL MEREHBI, his proxy Me. Ali EL TOUFAILY, filed a complaint against the Defendant BLOM Bank S.A.L., in which he stated that he owns a dollar (USD) account at the Defendant due and payable on the 19th of each month and that on the date of the due withdrawal date, he visited the bank to transfer money to England as usual and withdraw cash, but the bank refused to make the transfer and withdraw cash, which constitutes a violation of the Code of Money and Credit especially that the deposit is a type of contract between the bank and the client and they have rights and obligations by virtue thereof, and the bank's conduct constitutes a clear infringement of the client's rights and caused damage in the absence of the force majeure, pursuant to the provisions of paragraph two of article 579 of the Code of Civil Procedure without any exposure to the origin of the right and requested to oblige the Defendant to transfer an amount equivalent to £150,000 from his account no 190/02/873/6764861/1/8 in dollars which is due and payable on the 19th of each month to HSBC England as shown from previous transfers, and oblige him to execute all his orders regarding any external transfer and to hand him over what he wants in cash after



withdrawing it from his account on the maturity date, as well as obliging him e to write bank cheques to be collected abroad within the limits of his account and under the penalty of a fine amounting to USD 100,000 for each day of delay in implementation provided that the decision is effective as is.

It appeared that on 13/12/2019, the Defendant BLOM Bank S.A.L., its proxy Me. Jihad ZEIN, submitted a plea in which he challenges the jurisdiction of the Court of Urgent Matters is not competent to consider this lawsuit because of the fact that it requires exposure to the origin of the right and the research on the client's right to oblige the bank to provide the transfer service abroad and to hand him over the banknotes as well as the obligations of the parties. He added that the transfers presented by the Plaintiff date back to 2012 and 2014 and were made from a joint account that no longer exists, but the transfer from the Plaintiff's personal account in September 2019 was the only one made by the Plaintiff regardless of the beneficiary's identity, which negates his habit of financing his place of residence with his two sons and the payment of their university fees and the needs of his trade, adding that all documents presented by the Plaintiff are subject to negligence, particularly the statements attributed to universities in the United Kingdom that do not bear the signature or stamp of the relevant department. Moreover, it is not possible to move the frozen account before it is timely. He also stated that the transfer was consensual between three parties and the absence of the consent of any of them leads to the incompleteness of the contract and the loss of one of its basic pillars and there is no legal basis that obliges the bank to provide the offshore transfer service, and that the bank is obliged to repay the deposit at an equivalent value in one or several payments, and that it was not obliged to pay it back in cash and therefore the bank's position could not be regarded as a reluctance to comply with the obligation of the deposit refund to its owner. He also added that he had no objection to putting an end to the contractual relationship with the Plaintiff, closing the account and handing him over a bank cheque drawn on the Bank of Lebanon and requested to dismiss the case on procedural grounds due to the absence of an obvious infringement of rights and for its relation to the origin and the absence of the element of urgency and danger, otherwise the dismissal

of the case on the merits for freezing the deposit for a certain period and due to invalidity, non-permanence and the lack of reasons for the legal basis, stressing his willingness to hand over the deposit and close the account by virtue of a bank cheque drawn on the Bank of Lebanon, retaining its right to close the account automatically and charge the Plaintiff with all the expenses.

It appeared that during the session held on 17/12/2019 both parties repeated their previous statements and demands and announced the conclusion of the trial.

It also appeared that on 20/12/2019, the Plaintiff submitted through his proxy a memorandum in which he confirmed that banking services are an integral part of the banking activities that the bank is required to perform. The bank's deposit of a cheque drawn on the Bank of Lebanon is considered illegal because it's decided by one party without his consent and caused him serious damage. He reiterated his previous statements and demands.

A preliminary decision was issued by this court on 16/01/2020 with its stipulations.

It appeared that on 29/01/2020, the Defendant submitted through its proxy a plea in pursuance of the preliminary decision, noting that overseas transfers of $75,000 from the Plaintiff's account were not routinely made per year from 2014, but they were rather limited to $1000 on a semi-monthly basis in 2014, 2015 and 2016, but not for the Plaintiff's two sons, as he had never transferred money to his son from his personal account. He added that obliging any Lebanese bank to transfer money abroad involves a violation of what is prescribed by the Lebanese laws and regulations which oblige banks to maintain part of their deposits in Lebanon under strict control of the Bank of Lebanon, and that its decision to stop providing the overseas transfer service was taken because he knew that the funds available to its correspondents outside Lebanon are not sufficient to cover all transfer requests so that overseas transfers are currently limited to small amounts justified by exceptional and emergency cases that do not bear a delay and which the client cannot secure in any other way. Moreover, the Plaintiff's refusal to receive a bank cheque on the grounds that it



is non-exchangeable is unjustified on the basis of the applicable legal rules, thus the bank's offer to pay by virtue of a cheque drawn to the Bank of Lebanon constitutes in fact and by law a discharge in terms of returning the deposit to its owner. He reiterated his previous statements and demands.

On 18/02/2020, the Plaintiff submitted through his proxy a plea confirming that overseas transfers were made since 2010 and to his son's account in 2018 and 2019. He also ascertained that his claim was based on the provisions of the Constitution and the Code of Money and Credit. He added that the bank cheque offered by the Defendant cannot be currently collected and thus is not considered a means of discharge such as money, but a payment tool, which has completely lost its reciprocal value and is no longer valid for fulfilling. He stated that he is requesting money to pay the due fixed university fees, charges and invoices. He reiterated his previous statements and demands.

On 06/07/2020, the Defendant submitted through his proxy a plea in which he confirmed the existence of an exceptional case in the country justifying the placement and regulation of temporary restrictions in order to maintain monetary and banking stability in Lebanon, and stated that the bank has no legal or contractual obligation to pay back part of the Plaintiff's deposit by transferring his funds abroad. He reiterated his previous statements and demands.

In the session held on 21/07/2020, both parties reiterated their statements and the trial was concluded.

A preliminary decision was issued by this court on 08/09/2020 with its stipulations.

On 15/09/2020, the Plaintiff submitted through his proxy a plea in pursuance of the preliminary decision, noting that he had a current account at the Defendant/bank, from which all transfers to England were made, and a frozen savings account from which he transfers to the current account at the monthly maturity. He presented a receipt proving that he paid the university fees of his



son Kamal, as well as the university's account number in order to enforce the preliminary decision. He reiterated his previous demands.

Thereupon,

Whereas the Plaintiff requests to oblige the Defendant to transfer an amount equivalent to £150,000 from his account n°190/02/873/6764861/1/8 in American dollars which is due and payable on the 19th of each month to HSBC Bank in England in order to pay the outstanding amounts including the due fixed university fees to his sons through transfers, charges and invoices.

He stated that the Defendant's refusal to transfer and withdraw the money in cash constitutes a violation of the Code of Money and Credit and a clear infringement on his rights, which causes him damage in the absence of force majeure, pursuant to the provisions of paragraph two of Article 579 of the Code of Penal Procedure without any exposure to the origin of the right, and that banking services are an integral part of the banking activities that the bank is required to perform. The bank's offer to provide of a cheque drawn on the Bank of Lebanon is considered illegal because it's decided by one party without his consent and causes him serious damage. It is not considered a means of discharge but a means of payment only.

Whereas the Defendant requests to dismiss the case on procedural grounds due to the absence of an obvious infringement of rights and its relation to the origin and the absence of the element of urgency and danger, otherwise the dismissal of the case on the merits for freezing the deposit for a certain period and due to invalidity, non-permanence and the lack of reasons for the legal basis because there is no legal rule obliging the bank to provide the transfer service abroad, and the obligation is to return the deposit in a value equivalent to one or several payments, and he is not obliged to return it in cash, stressing his readiness to hand over the deposit and close the account under a cheque drawn to Bank of Lebanon, retaining the right to close the account automatically.



Whereas paragraph two of Article 579 of the Code of Penal Procedure, on which the Plaintiff's current lawsuit is based, allows the Judge of Urgent Matters to remove the clear infringement of legitimate rights or conditions.

Whereas the Judge of Urgent Matters is by fact and law the trier of fact and draws on prima facie evidence, it must be understood that it is based on the obvious prima facie evidence that is not likely to be seriously contested.

Whereas the clear infringement that allows the Judge of Urgent Matters to intervene to put an end thereto is that behavior that is blatantly illegitimate and unlawful, but when ambiguity arises regarding the legitimacy of the reported act and when the court, in light of the evidence and proofs presented before it, is unable to conclusively decide that it is unlawful, the quality of clarity about any reported infringement will be absent and the First Instance Court must make the ruling.

Whereas the Plaintiff considers that the Defendant has unjustly refrained from making the transfer to pay for his sons' living expenses and university fees as well as providing operational amounts for his business and completing the stamp duty on the transfer of ownership of the house he recently purchased and the law firm expenses, which constitute a violation of the Lebanese Constitution and the Code of Money and Credit and one of its obligations, while the Defendant emphasizes the lack of competence of the Judge of Urgent Matters to make a ruling because it requires scrutiny and interpretation of the contract concluded between both parties, determining the obligations of each party and the existence of force majeure, as well as the inability to oblige him to provide this service neither legally nor contractually, especially since he is willing to provide the Plaintiff with a bank cheque drawn on the Bank of Lebanon

Whereas in order to resolve the current issue, it is necessary first to proceed from the definition of "bank transfer" and determine its legal nature, secondly to examine the jurisdiction of this court to make a ruling regarding the Plaintiff's claims and to characterize the Defendant's position and the possibility of considering it as a clear violation of legitimate rights and conditions, justifying the intervention of this court to put an end thereto.

Whereas a bank transfer means a process that consists of emptying the account of a person called the transferor and upon his request of a certain amount of money and credit such amount to another account in the name of the transferor himself or in the name of another person called the beneficiary. The process is carried out with the consent of all parties, especially the bank.

Whereas the bank's consent to carry out the order is necessary, it is not free to accept or not because once the bank agrees to open the account, it is implicitly committed to the client counter service, including the acceptance of cheques and transfer orders addressed to it, and therefore the bank's treasury service to the client arises from the <u>said contract</u>, which is a purpose intended by the client upon opening the account and the bank shall not ask the client about the reason behind making the transfer. The bank's commitment to all these services arises from one complex contract linking him to his client.

Whereas the above infers that a bank transfer is an obligation on the bank, and these obligations arise from the contract's explicit and implicit terms and are complemented by the proper banking practices and customs applicable to the parties, i.e. they are contractual obligations or at least their basis are mentioned in the contract upon opening an account.

Whereas it is inferred from the foregoing that the bank transfer is an obligation on the bank, and these obligations arise from the contract's explicit and implicit terms and are complemented by the proper banking practices and customs applicable to both parties, the intervention of the Judge of Urgent Matters pursuant to the stipulations of Article 579 of the Code of Penal Procedures once the bank abstains from making a certain bank transfer abroad requested by the client, and under the exceptional financial and economic circumstances that Lebanon is going through and the absence of legislation regulating the relationship between banks and their customers, in particular the provision of necessary remittances abroad and the failure to adopt the Capital Control draft law, which is still under discussion, depends <u>first</u> on the extent to which the abused right is unequivocally proven, and <u>second</u> on the right worthy of protection, taking into account the interests of both the depositor and the



national economic and financial situation; the last principle referred to is given effect when a conflict arises between the two rights, so that any measure taken by the Judge of Urgent Matters falls within his jurisdiction, - as a response to the client's request - on the basis of the damage that cannot be compensated.

Returning to the facts of the current dispute, it is established that the Plaintiff has a frozen account in American dollars at the bank/Defendant, which is due on the 19th of each month, and owns a current account that is funded from the frozen account at the maturity date, as stated by the Plaintiff. The Defendant did neither present any evidence to the contrary nor prove it to be untrue.

Whereas on the one hand, the Plaintiff did not provide the clear and sufficient documents to prove that the amounts claimed had to be transferred to secure operational amounts for his business, and to complete the stamp duty on the transfer of ownership of the house he recently purchased and the law firm expenses, and his request was not associated with securing his vital rights in a manner that his right would be more worthy of protection than the bank's right to place restrictions on the operations in certain circumstances, on the other hand. Therefore, the terms of the paragraph two of Article 579 of the Code of Penal Procedures do not exist, and the Plaintiff's request needed to be answered in this respect.

Whereas it is clear from all the data that the Plaintiff requests to oblige the bank to transfer an amount of money to secure due university fees for his two sons in England.

Whereas given the data and documents presented, it appears that the Plaintiff had previously transferred amounts of money to his son Kamal's account during the years 2018 and 2019, and the Plaintiff has presented university attestations indicating that both Danny and Kamal were registered at two universities in England this year and the Defendant's did not contest the validity thereof. In addition, the Plaintiff had previously detailed in the warning notified by the Defendant on 23/11/2019 the value of each university fee: £12,000 for the registration of his son Danny at the University of the West of England and



£6,250 for his son Kamal at BCPC Center for Psychotherapy and Counselling LTD-BATH.

Whereas the right to education is a fundamental human right and the right of each individual, which is enshrined in the Lebanese Constitution and provided for under the Universal Declaration of Human Rights (1948) and in a number of core international instruments on human rights, so that his dignity is respected and his personality is best developed aiming at achieving self-realization and becoming an active society member; No one should be denied this right for any reason.

Whereas the right to education is one of the vital rights of human nature, the Defendant declares that his refusal to carry out the transfer process to secure university fees for the Plaintiff's sons is based on its right to preserve the stability of the banking sector by preserving foreign currency reserves and avoid the loss of its liquidity;

Whereas in the light of the aforementioned conflict of rights, this court must conduct a balancing act and determine the right more worthy of protection, not from its own perspective, but from the basic vital right and how much damage was caused by the exercise or non-exercise of this right and its compensation. The Court considers in the present case that the human right to learn and pursue his studies in order to achieve self-realization, therefore respecting and protecting the parents' right to provide the needs of their children abroad through money transfers that secure this right to study is the right more worthy of protection which outweighs any contractual, financial or circumstantial considerations, especially since the damage that will result from the bank's failure to transfer the funds to the Plaintiff's children for educational purposes is not compensable as they will lose their university seat if the tuition fees were not paid.

Whereas based on the above, as long as it is unequivocally established that the Plaintiff's children are pursuing their studies in England, as long as the bank has already made transfers to the benefit of the Plaintiff to that end, and as long as the request for transfer abroad is linked to the provision of basic and vital rights



to the Plaintiff's two sons so that his right is more worthy of protection, the Defendant's refusal to carry out the overseas transfer required in the present lawsuit can be included in the category of clear infringement of right. The intervention conditions of the Judge of Urgent Matters shall be in accordance with the provisions of paragraph two of Article 579 of the Code of Penal Procedures to oblige the bank to make the required transfer and the request in this regard must be approved.

Whereas therefore the Defendant/BLOM Bank S.A.L must be obliged to transfer the sum of £18,250 or its equivalent in US dollars on the date of transfer from the Plaintiff's current account n°019/02/300/1684676/1/8 funded from his frozen account, which is due every 19th of the month to his son Kamal EL MEREHBI's account in England at HSBC Bank, under a fine of 500,000 L.L. for each day of delay.

Whereas according to the result reached by the court, all the claims and reasons that augment or infringe must be refuted, either because it received an implicit response or because it became useless.

Therefore,

it is decided:

1 - The Defendant is obliged to transfer the amount of £18,250 or its equivalent in US dollars on the date of transfer from the Plaintiff's account n°019/02/300/1684676/1/8 to the account of his son Kamal EL MEREHBI in England at HSBC bank based on previous transfers under a penalty of 500,000 Lebanese pounds for each day of delay.

2 – Dismiss the request for the issuance of the decision effective as is.

3 – Refute all other claims that augment or infringe

4 – Charge both parties equally with the expenses.

A decision issued and assimilated publicly in Beirut on 15/10/2020.

Clerk                                                   Judge Mary-Christine Eid



/signature/ /signature/

~~Whereas according to the result reached by the court, all the claims and reasons that augment or infringe must be refuted, either because it received an implicit response or because it became useless.~~

*Omitted intentionally*

---

**True translation of the Arabic text herewith attached.**



قرار

باسم الشعب اللبناني

إن قاضي الأمور المستعجلة في بيروت

لدى الإطلاع والتدقيق،

تبين انه بتاريخ 2019/12/2 قدم المدعي السيد عماد المرعبي وكيله الأستاذ علي الطفيلي استحضاراً بوجه المدعى عليه بنك لبنان والمهجر ش.م.ل عارضاً فيه انه يملك حساب لدى المدعى عليه بالدولار مستحق ومتوجب الدفع بتاريخ التاسع عشر من كل شهر وانه بتاريخ استحقاق السحب راجع المصرف لإجراء التحويل الى انكلترا كما جرت العادة والسحب نقداً الا انه رفض اجراء التحويل والسحب نقداً ما يشكل مخالفة لقانون النقد والتسليف خاصة ان الإيداع نوع من العقد بين المصرف والزبون ويتمتعان بحقوق وواجبات بموجبه وان تصرف المصرف يشكل تعدياً واضحاً على حقوقه الحق به ضرراً في غياب القوة القاهرة عملاً بأحكام الفقرة الثانية من المادة 579أ.م.م دون اي تعرض لأصل الحق وطلب الزام المدعى عليه بتحويل مبلغ يعادل 150000 جنيه استرليني من حسابه رقم 190/02/873/6764861/1/8 بالدولار الأميركي المستحق والمتوجب في التاسع عشر من كل شهر الى مصرف HSBC انكلترا كما هو ظاهر من عمليات التحويل السابقة، كما و الزامه بتنفيذ كافة اوامره لجهة اي تحويل خارجي والزامه بتسليمه ما يريد نقداً سحباً من حسابه بتاريخ الإستحقاق والتوجب كما تنظيم شيكات مصرفية تحصل في الخارج ضمن حدود حسابه وتحت طائلة غرامة اكراهية قدرها 100000 د.أ عن كل يوم تأخير في التنفيذ على ان يكون القرار معجل التنفيذ على اصله.

وتبين انه بتاريخ 2019/12/13 قدم المدعى عليه بنك لبنان والمهجر ش.م.ل وكيله الأستاذ جهاد زين لائحة جوابية ادلى فيها بعدم اختصاص قضاء الأمور المستعجلة للنظر بالدعوى لما تتطلبه من تعرض لأساس الحق والبحث في احقية العميل في الزام المصرف بتقديم خدمة التحويل الى الخارج وتسليمه الأوراق النقدية وموجبات الفرقاء، واضاف ان التحويلات المبرزة من المدعي تعود الى العامين 2012 و 2014 واجريت من حساب مشترك لم يعد قائماً، اما التحويل من حساب المدعي الشخصي في ايلول 2019 هو الوحيد الذي اجراه المدعي بمعزل عن هوية المستفيد ما ينفي اعتياده على تمويل محل اقامته مع ولديه ودفع اقساطهما الجامعية وحاجات تجارته، وان كافة المستندات المبرزة من المدعي مستوجبة الإهمال وخاصة الإفادات المنسوبة الى جامعات في المملكة المتحدة التي لا تحمل توقيع او ختم الدائرة ذات الصلة، هذا فضلاً عن انه يتعذر تحريك الحساب المجمد قبل حلول اجله، وادلى ايضاً ان عملية التحويل رضائية بين ثلاثة اطراف بحيث ان غياب رضى احدهم يؤدي الى عدم اكتمال العقد وفقدانه احد اركانه الأساسية ولا قاعدة قانونية تلزم المصرف بتقديم خدمة التحويل الى الخارج وان الموجب على عاتقه هو رد الوديعة بقيمة تعادله دفعة واحدة او عدة دفعات كما انه ليس مجبراً ان يردّها نقداً ولا يمكن بالتالي اعتبار موقف المصرف بمثابة ممانعة في التقيد بموجب رد الوديعة لصاحبها، واضاف انه لا مانع لديه من وضع حد للعلاقة التعاقدية مع المدعي واقفال الحساب وتسليمه شيكاً مصرفياً بالرصيد مسحوب على مصرف لبنان وطلب رد الدعوى شكلاً لإنتفاء التعدي الواضح على الحقوق ولتعلقه بالأساس ولعدم توافر عنصر العجلة والخطر المحدق والا في الأساس رد الدعوى لعلة تجميد الوديعة لأجل ولعدم الصحة وعدم الثبوت ولإفتقار الأسباب المساقة الى الأساس القانوني مؤكداً على استعداده لتسليم الوديعة واقفال الحساب بموجب شيك مصرفي مسحوب على مصرف لبنان محتفظاً بحقه بإقفال الحساب تلقائياً وتضمين المدعي النفقات كافة

وتبين انه في الجلسة المنعقدة بتاريخ 2019/12/17 كرر الفريقان اقوالهما ومطالبهما السابقة واعلن اختتام المحاكمة

| | هامش |
|---|---|

وتبين انه بتاريخ 2019/12/20 قدم المدعي بواسطة وكيله مذكرة اكد فيها على ان الخدمات المصرفية هي جزء لا يتجزأ من الأعمال المصرفية المتوجبة على البنك للقيام بها ، كما ان ايداع المصرف شيك مسحوب على مصرف لبنان يعتبر تصرف غير قانوني كونه يأتي من طرف واحد دون موافقته ويلحق به ضرراً كبيراً وكرر اقواله ومطالبه السابقة

وتبين ان قراراً اعدادياً صدر عن هذه المحكمة بتاريخ 2020/1/16 قضى بما قضى به في متنه

وتبين انه بتاريخ 2020/1/29 قدم المدعى عليه بواسطة وكيله لائحة انفاذاً للقرار الإعدادي اشار فيها الى ان التحويلات من حساب المدعي الى الخارج لم تكن روتينية بقيمة 75000 د.أ سنوياً من عام 2014 بل ان التحاويل اقتصرت في الأعوام 2014 و2015 و2016 على الف دولار بوتيرة شبه شهرية ولكن ليس لولدي المدعي الذي لم يحوّل يوماً لإبنه من حسابه الشخصي ، واضاف ان الزام اي مصرف لبناني تحويل مبالغ من المال الى الخارج ينطوي على تجاوز لما تفرضه القوانين والأنظمة اللبنانية التي تلزم المصارف بالإبقاء على جزء من ايداعاتها في لبنان وذلك تحت رقابة صارمة من مصرف لبنان ، وان قراره بالتوقف عن تقديم خدمة التحويل الى الخارج كان لعلمه بأن الأموال المتوافرة له لدى مراسليه خارج لبنان لا تكفي لتغطية جميع طلبات التحويل بحيث تقتصر التحاويل الخارجية حالياً على المبالغ الضئيلة المبررة بالحالات الإستثنائية والطارئة التي لا تحمل التأجيل والتي يتعذر على العميل تأمينها بغير وسيلة ، هذا فضلاً عن ان رفض المدعي لتسلمه شيك مصرفي بحجة انه غير قابل للصرف غير مبرر بالإستناد الى القواعد القانونية المرعية الإجراء ، وبالتالي فإن عرضه الإيفاء بواسطة شيك مسحوب على مصرف لبنان يشكل بالواقع والقانون ابراء لذمته بموجب رد الوديعة الى صاحبها وكرر اقواله ومطالبه السابقة

وتبين انه بتاريخ 2020/2/18 قدم المدعي بواسطة وكيله لائحة جوابية اكّد فيها اجراء تحويلات الى الخارج منذ العام 2010 والى حساب ابنه في العامين 2018 و2019 ، كما اكّد ان مطالبته تستند الى احكام الدستور والى قانون النقد والتسليف ، واضاف ان الشيك المصرفي الذي يعرض المدعى عليه تسليمه لا يمكن تحصيله حالياً ولا يعتبر بالتالي وسيلة ابراء كالنقود انما اداة للدفع وفقد كلياً قيمته التبادلية ولم يعد صالحاً للإيفاء ، وان ما يريده من طلب الأموال هو لدفع ما هو مستحق بذمته من اقساط جامعية ثابتة ورسم وفواتير مستحقة بذمته ، وكرر اقواله ومطالبه السابقة

وتبين انه بتاريخ 2020/7/6 قدم المدعى عليه بواسطة وكيله لائحة جوابية اكد فيها على توافر حالة استثنائية في البلاد تبرر وضع قيود مؤقتة وتنظيمها حفاظاً على الإستقرار النقدي والمصرفي في لبنان ، كما انه لا موجب قانوني ولا تعاقدي يقع على المصرف لرد جزء من وديعة المدعي بواسطة تحويل امواله الى الخارج وكرر اقواله ومطالبه السابقة

وتبين انه في الجلسة المنعقدة بتاريخ 2020/7/21 كرر الفريقان واعلن اختتام المحاكمة،

وتبين ان قراراً اعدادياً صدر عن هذه المحكمة بتاريخ 2020/9/8 قضى بما قضى به في متنه

وتبين انه بتاريخ 2020/9/15 قدم المدعي بواسطة وكيله لائحة انفاذاً للقرار الإعدادي اشار فيها الى انه لديه حساب جاري في المصرف المدعى عليه وصدرت منه كافة التحويلات الى انكلترا كما لديه حساب توفير مجمد ويحول منه الى الحساب الجاري عند الإستحقاق الشهري ، وابرز ايصالاً يثبت دفعه لقسط ابنه كمال في الجامعة وابرز رقم حساب الجامعة انفاذاً للقرار الإعدادي وكرر مطالبه السابقة،

بناءً عليه

حيث ان المدعي يطلب الزام المدعى عليه بتحويل مبلغ يعادل 150000 جنيه استرليني من حسابه رقم 861/1/8/873/67/64/190/02 بالدولار الأميركي المستحق والمتوجب في التاسع

| هامش |
|---|

عشر من كل شهر الى مصرف HSBC انكلترا لدفع ما هو مستحق بذمته من اقساط جامعية ثابتة لولديه من خلال التحويلات، ورسوم وفواتير مستحقة بذمته،

مدلياً ان رفض المدعى عليه اجراء التحويل والسحب نقداً يشكل مخالفة لقانون النقد والتسليف ، و تعدياً واضحاً على حقوقه يلحق به ضرراً في غياب القوة القاهرة عملاً بأحكام الفقرة الثانية من المادة 579أ.م.م دون اي تعرض لأصل الحق، كما ان الخدمات المصرفية هي جزء لا يتجزأ من الأعمال المصرفية المتوجبة على البنك للقيام بها ، و ان عرض المصرف شيك مسحوب على مصرف لبنان يعتبر تصرف غير قانوني كونه يأتي من طرف واحد دون موافقته ويلحق به ضرراً كبيراً هذا فضلاً عن انه ليس وسيلة لإبراء الذمة بل وسيلة دفع فقط ،

وحيث يطلب المدعى عليه رد الدعوى شكلاً لإنتفاء التعدي الواضح على الحقوق ولتعلقها بالأساس ولعدم توافر عنصر العجلة والخطر المحدق والا في الأساس رد الدعوى لعلة تجميد الوديعة لأجل ولعدم الصحة وعدم الثبوت ولإفتقار الأسباب المساقة الى الأساس القانوني اذ لا قاعدة قانونية تلزم المصرف بتقديم خدمة التحويل الى الخارج وان الموجب على عاتقه هو رد الوديعة بقيمة تعادلها دفعة واحدة او عدة دفعات كما انه ليس مجبراً ان يردها نقداً مؤكداً على استعداده لتسليم الوديعة واقفال الحساب بموجب شيك مصرفي مسحوب على مصرف لبنان محتفظاً بحقه بإقفال الحساب تلقائياً،

وحيث تجيز الفقرة الثانية من المادة 579أ.م.م  التي يسند اليها المدعي دعواه الراهنة، لقاضي الأمور المستعجلة إزالة التعدي الواضح على الحقوق او الأوضاع المشروعة ،

وحيث ان قاضي الأمور المستعجلة هو بالواقع والقانون قاضي اليقين le juge de l'évidence وهو اذ يستند إلى الظاهر فيجب ان يفهم من ذلك انه يستند إلى الظاهر الأكيد الواضح الذي لا يحتمل أي منازعة جدية،

وحيث ان التعدي الواضح الذي يجيز لقاضي الأمور المستعجلة التدخل لوضع حد له، هو ذلك التصرّف الصارخ بعدم مشروعيته وعدم قانونيته Manifestement illicite، اما متى اعترى الفعل المشكو منه بعض الالتباس حول مشروعيته ومتى لم تتمكن المحكمة في ضوء ما طُرح امامها من ادلة وقرائن من البت بصورة قاطعة بعدم المشروعية، تنتفي صفة الوضوح عن أي تعد مشكو منه ويبقى لمحكمة الأساس البت بالنزاع،

وحيث ان المدعي يعتبر ان المدعى عليه امتنع دون وجه حق عن اجراء عملية التحويل لتسديد نفقات معيشية واقساط ولديه الجامعية وتأمين مبالغ تشغيلية على اعمال مؤسسته اضافة الى استكمال رسوم طابع نقل ملكية المنزل الذي اشتراه حديثاً ورصيد اتعاب مكتب المحاماة مخالفاً بذلك الدستور اللبناني وقانون النقد والتسليف وموجب ملقى على عاتقه ، في حين يؤكد المدعى عليه على  عدم اختصاص قضاء العجلة للبت بالطلب لما يتطلبه من تدقيق وتفسير للعقد الموقع بين الفريقين وتحديد موجبات كل فريق ومدى توافر القوة القاهرة فضلاً عن عدم امكانية الزامه بإجراء هذه الخدمة  لا قانوناً ولا تعاقدياً سيما وانه على استعداد للإيفاء بواسطة شيك مصرفي مسحوب على مصرف لبنان،

وحيث انه لحلّ المسألة الراهنة ، يقتضي اولاً الإنطلاق من تعريف التحويل المصرفي وتحديد طبيعته القانونية ، للبحث ثانياً في مدى اختصاص هذه المحكمة للبت بمطالب المدعي وتوصيف موقف المدعى عليه المصرف و امكانية اعتباره تعدياً واضحاً على الحقوق والأوضاع المشروعة يبرّر تدخّل هذه المحكمة لوضع حدّ له،

| | هامش |
|---|---|

وحيث يُقصد بالنقل او التحويل المصرفي العملية التي تتلخص في تفريغ حساب شخص يسمى الآمر وبناء على طلبه من مبلغ نقدي معين وقيد هذا المبلغ في الجانب الدائن لحساب آخر قد يكون بإسم الآمر نفسه او بإسم شخص آخر يسمى المستفيد، وتتم العملية برضى جميع الأطراف ولاسيما رضا المصرف،

وحيث ان رضى المصرف بتنفيذ الأمر لازم ، ولكنّه ليس حراً لأن البنك عند قبوله فتح الحساب يلتزم ضمناً بخدمة صندوق العميل service de caisse ومنها قبول الشيكات واوامر النقل الموجهة اليه ،وبالتالي تنشأ خدمة خزينة العملاء على البنك من العقد المذكور وهو غرض يستهدفه العميل من فتح الحساب  وليس له ان يسأل عن سبب رغبة العميل في اجراء التحويل ،فإلتزام البنك بهذه الخدمات كلّها ينشأ من عقد واحد مركب يربطه بعميله

وحيث يُستدل مما تقدّم ان التحويل المصرفي هو التزام على عاتق المصرف ، وهذه الإلتزامات تنشأ من العقد في شروطه الصريحة والضمنية وتكمّلها العادات والأعراف المصرفية الصحيحة والنافذة على الطرفين ، اي انها موجبات تعاقدية او على الأقل تجد اساسها في عقد فتح الحساب،

وحيث ولئن يُستدل مما تقدّم ان التحويل المصرفي هو التزام على عاتق المصرف ، وهذه الإلتزامات تنشأ من العقد في شروطه الصريحة والضمنية وتكمّلها العادات المصرفية والأعراف الصحيحة والنافذة على الطرفين ، الا ان تدخل قاضي الأمور المستعجلة استناداً الى نص المادة ٥٧٩أ.م.م عند تمنّع المصرف عن اجراء تحويل مصرفي معين الى الخارج يطلبه منه العميل ، وفي ظلّ الظروف المالية والإقتصادية الإستثنائية التي يمرّ بها لبنان وعدم صدور تشريع ينظّم علاقة المصارف مع عملائها ولاسيما منها ما هو متعلق بتأمين التحويلات المالية الضرورية الى الخارج وعدم اقرار مشروع الكابيتال كونترول الذي لا يزال موضوع نقاش، يبقى مرهوناً اولاً بمدى ثبوت الحق المعتدى عليه ثبوتاً لا لبس فيه ، وثانياً ، ومع الأخذ في عين الإعتبار مصلحة كل من المودع والوضعين الإقتصادي والمالي الوطنيين ، بالحق الأجدر بالحماية بحيث يفعل هذا المبدأ الأخير المشار اليه عند تنازع الحقين امامه،فيكون اي تدبير يتخذه قاضي الأمور المستعجلة ضمن صلاحياته – اجابة لطلب العميل او ردّاً له–على اساس الضرر الذي لا يمكن ان يعوّض ،

وحيث بالعودة الى معطيات النزاع الراهن ، فثابت ان المدعي يملك حساب لدى المدعى عليه مجمد بالدولار يستّحق في التاسع عشر من كل شهر ، كما يملك حساب جارٍ يتم تمويله من الحساب المجمد عند الإستحقاق وفق ما ادلى به المدعي، ولم يبرز المدعى عليه ما يثبت عكس هذا الإدلاء ولم يثبت عدم صحته،

وحيث من ناحية اولى، لم يبرز المدعي المستندات الواضحة والكافية لإثبات توجب المبالغ المطالب بتحويلها  لتأمين مبالغ تشغيلية على اعمال مؤسسته اضافة الى استكمال رسوم طابع

| | هامش |
|---|---|

نقل ملكية المنزل الذي اشتراه حديثاً ورصيد أتعاب مكتب المحاماة، كما ان طلبه لا يرتبط بتأمين حقوق حيوية عائدة له بحيث يكون حقه هو الأجدر بالحماية من حق المصرف في وضع قيود على عملياته في ظروف معينة من ناحية ثانية، بحيث لا تكون بالتالي شروط الفقرة الثانية من المادة ٥٧٩أ.م.م متوافرة، ويمسي طلب المدعي مستوجب الردّ لهذه الناحية،

وحيث ثابتٌ من المعطيات كافة، ان المدعي يطلب الزام المصرف بتحويل مبلغ من المال لتأمين اقساط جامعية مستحقة لولديه في انكلترا،

وحيث ومن العودة الى ظاهر المعطيات والمستندات المبرزة، يتبين ان المدعي سبق ان حوّل الى حساب ابنه كمال مبالغ مالية خلال العامين ٢٠١٨ و٢٠١٩، كما ابرز المدعي افادة جامعية لكل من ولديه داني وكمال تفيدان تسجيلهما في جامعتين في انكلترا للعام الحالي ولم ينازع المدعى عليه في صحتهما، هذا فضلاً عن انه سبق ان فصّل في الإنذار المبلّغ من المدعى عليه بتاريخ ٢٠١٩/١١/٢٣ قيمة كل قسط جامعي والبالغ ١٢٠٠٠ جينيه استرليني عن تسجيل ابنه داني في UNIVERSITY of the west of England ومبلغ ٦٢٥٠ جنيه استرليني عن ابنه كمال في BCPC Center for psychotherapy and counseling LTD –BATH،

وحيث ان الحق في التعلم هو حق من حقوق الإنسان الأساسية وحق كل فرد، وهو حق مصان في الدستور اللبناني ومنصوص عنه في الإعلان العالمي لحقوق الإنسان (١٩٤٨) وفي عدد من الصكوك الدولية الأساسية المعنية بحقوق الإنسان، بحيث تحترم كرامته ويتحقق نمو شخصيته على افضل وجه حتى يتمكن من تحقيق ذاته ويصبح عنصراً فاعلاً في المجتمع، ولا يحرم اي شخص من هذا الحق لأي سبب كان،

وحيث في حين ان الحق في التعلم هو من الحقوق الحيوية اللصيقة بالطبيعة البشرية، يدلي المدعى عليه ان رفضه اجراء عملية التحويل لتأمين اقساط جامعية لولدي المدعي يستند الى حقه في الحفاظ على استقرار القطاع المصرفي عبر الحفاظ على احتياطي العملات الأجنبية والحؤول دون فقدان السيولة لديه،

وحيث ان هذه المحكمة و لدى تعارض الحقّين المذكورين، لا بدّ لها من اجراء عملية موازنة وتقرير الحق الأجدر بالحماية، ليس من منظارها الخاص انما انطلاقاً من الحق الحيوي الأساسي ومقدار الضرر الناتج عن ممارسة او عدم ممارسة هذا الحق وقابليته للتعويض، وترى المحكمة في القضية الحاضرة ان حق الإنسان في التعلم واستكمال دراسته توصلاً الى تحقيق الذات، وبالتالي احترام وحماية حق الأهل في تأمين حاجات اولادهم في الخارج من خلال اجراء التحويلات التي تؤمن هذا الحق بالدراسة، هو الحق السامي الأجدر بالحماية والذي يتفوق على اية اعتبارات عقدية او مالية او ظرفية، خاصة ان الضرر الذي سينتج عن امتناع المصرف عن تحويل الأموال للغاية التعليمية لأولاد المدعي غير قابل للتعويض اذ انهما سيخسران مقعدهما الجامعي في حال عدم تسديد القسط،

وحيث تأسيساً على ما تقدم، وطالما ثابتٌ ان اولاد المدعي يتابعون دراستهم في انكلترا ثبوتاً لا

| هامش |
|---|

لبس فيه ، وطالما ان المصرف سبق له ان اجرى تحويلات لمصلحة المدعي لهذه الغاية، وطالما ان طلب التحويل الى الخارج يرتبط بتأمين حقوق اساسية وحيوية عائدة لولدي المدعي بحيث يكون حقه الأجدر بالحماية، ، فيمكن بالتالي ادراج رفض المدعى عليه اجراء التحويل الخارجي المطلوب في الدعوى الحاضرة في خانة التعدي الواضح على الحق ، وتكون شروط تدخل قاضي الأمور المستعجلة عملاً بأحكام الفقرة الثانية من المادة 579أ.م.م لإلزام المصرف بإجراء التحويل المطلوب متحققة ويمسي الطلب لهذه الناحية مستوجب القبول،

وحيث يقتضي بالتالي الزام المدعى عليه بنك لبنان والمهجر ش.م.ل بأن يحول مبلغ 18250 جنيه استرليني او ما يعادله بالدولار الأميركي بتاريخ التحويل من حساب المدعي الجاري رقم 8/1/168467/300/02/019 الممول من حسابه المجمد الذي يستحق كل تاسع عشر من الشهر، الى حساب ابنه كمال المرعبي في انكلترا لدى مصرف HSBC تحت طائلة غرامة اكراهية قدرها خمسمائة الف ليرة لبنانية عن كل يوم تأخير في التنفيذ ،

وحيث بالنتيجة التي توصلت اليها المحكمة ، يقتضي ردّ سائر ما زاد او خالف من مطالب واسباب اما لكونها لاقت رداً ضمنياً واما لكونها اصبحت دون فائدة

لذلك

يقرّر:

1- الزام المدعى عليه بنك لبنان والمهجر ش.م.ل بأن يحول مبلغ 18250 جنيه استرليني او ما يعادله بالدولار الأميركي بتاريخ التحويل من حساب المدعي رقم 8/1/168467/300/02/019 الى حساب ابنه كمال المرعبي في انكلترا لدى مصرف HSBC انطلاقاً من عمليات التحويل السابقة تحت طائلة غرامة اكراهية قدرها خمسمائة الف ليرة لبنانية عن كل يوم تأخير في التنفيذ ،

2- ردّ طلب اصدار القرار بصيغة النافذ على الأصل

3- ردّ سائر المطالب الزائدة او المخالفة

4- تضمين الفريقين مناصفة النفقات

قراراً صدر وافهم علناً في بيروت بتاريخ 2020/10/15

الكاتب (رشير)                            القاضي ماري- كريستين عيد

وحيث بعد النتيجة التي توصلت اليها المحكمة لم يعد ... مطالب واسباب اما لكونها لاقت رداً ضمنياً واما لكونها اصبحت دون فائدة