# EXHIBIT 40

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24206-CIV-MARTINEZ/AOR

LARA GEORGE MANSOUR a/k/a LARA
SAMAHA, Married name,

   Plaintiff,

v.

MONA BACH MANSOUR, individually, et al.,

   Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Plaintiff Lara George Mansour's ("Plaintiff" or "Mansour") Motion for Relief from a Judgment or Order Pursuant to Rule 60 of the Federal Rules of Civil Procedure (hereafter, "Motion for Relief") filed on June 3, 2019 [D.E. 83]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 86]. The undersigned held an evidentiary hearing on this matter on October 8, 2019 [D.E. 124]. For the reasons stated below, the undersigned respectfully recommends that the Motion for Relief be GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

On November 17, 2017, Mansour filed her Complaint in this action naming the following individuals as defendants: Mansour's mother, Mona Bach Mansour ("Mona"); Mansour's brother, Alexander George Mansour ("Alexander"); Mansour's sister, Rolly George Mansour ("Rolly") (collectively, "Mansour Defendants"); the Mansour Defendants' attorneys in Lebanon, Dany George Macaron ("Macaron") and Fadi Wadih Layoun ("F. Layoun"); Rabih Jamil Noureddine ("Noureddine"); Mohammed Ali Barbar ("Barbar"); Ali Ahmad Bou Hamdan ("Hamdan");

Marlene Wadih Layoun ("M. Layoun"); Amira Ahmad Marabouni ("Marabouni"); Lebanon's Minister of Justice, Salim Jreissati ("Jreissati"); the judge presiding over legal proceedings initiated by Mansour in Lebanon (hereafter, the "Lebanese Proceedings"), Ziad Mekanna ("Mekanna"); and the prosecutors in Lebanon, Samir Hammoud ("Hammoud") and Ziad Abo Haidar ("Haidar"). See Compl. [D.E. 1].

The Complaint arises from a dispute over the estates of Mansour's father and aunt, located in Lebanon, and valued at approximately $15,000,000.00 (hereafter, "The Estates"). Id. ¶¶ 18-20. Mansour alleges that members of her family defrauded her of her interests in The Estates. Id. ¶¶ 20-26. Mansour initiated the Lebanese Proceedings to reclaim her interests in The Estates, but alleges that certain Lebanese government officials, Lebanese fiduciaries, and other influential Lebanese individuals aided in her family's illegal acts and stymied her attempts to seek legal recourse in Lebanon. Id. ¶¶ 26-38.

On October 17, 2018, Mansour filed an Amended Complaint adding Jreissati's personal assistant, Pascal Antoun ("Antoun"), as a defendant (Jreissati, Mekanna, Hammoud, Haidar, and Antoun, collectively, the "Lebanese Government Defendants"). See Am. Compl. [D.E. 7].

On March 25, 2019, a Clerk's Default was entered against Rolly, Mona, M. Layoun, F. Layoun, Macaron, and Alexander. See Clerk's Default [D.E. 79]. On April 5, 2019, Mansour filed a Notice of Voluntary Dismissal with Prejudice dismissing her claims against all Defendants with prejudice (hereafter, "Notice of Voluntary Dismissal") [D.E. 81]. Later that day, the Court entered an Order of Dismissal with Prejudice dismissing this case with prejudice (hereafter, "Order of Dismissal") [D.E 82].

On June 3, 2019, Mansour filed her Motion for Relief requesting that the Court vacate the Order of Dismissal on the grounds that the filing of the Notice of Voluntary Dismissal was a

2

product of coercion and duress. See Motion for Relief [D.E. 83 at 7-8]. On July 17, 2019, the Lebanese Government Defendants filed their Response to the Motion for Relief (hereafter, "Response") [D.E. 94]. The remaining Defendants did not file any opposition to the Motion for Relief. Mansour filed her Reply on July 24, 2019 [D.E. 98].

In their Response, the Lebanese Government Defendants state that, after the Amended Complaint had been filed, and based on the allegations therein, Macaron and Mekanna each filed criminal complaints against Mansour in Lebanon predicated on defamation and slander (hereafter, "Defamation Actions"). See Response [D.E. 94 at 5-6].

The following witnesses testified at the evidentiary hearing held on October 8, 2019: Mansour; and Mansour's husband, Elie Samaha ("Samaha"). See Exhibit and Witness List [D.E. 125]. The undersigned found Mansour and Samaha to be credible and their testimony to be consistent. Only one exhibit was admitted into evidence, namely, Mansour's Exhibit A, consisting of the affidavit of Lorne E. Berkeley ("Berkeley"), Mansour's initial attorney in this case (hereafter, "Berkeley Aff.") [D.E. 98-3]. See Exhibit and Witness List [D.E. 125]. The Lebanese Government Defendants did not challenge the veracity of the Berkeley Aff.[1]

**FACTS**

A. Mansour's Testimony

1. Mansour is a Lebanese citizen and a Florida resident.

---

[1] At the evidentiary hearing, the Lebanese Government Defendants sought to introduce into evidence the Declaration of Chahid Sakhr El Hachem, to serve as an expert affidavit on issues of foreign law (hereafter, the "Hachem Declaration") [D.E. 128-1]. Because the Hachem Declaration does not address the Notice of Voluntary Dismissal that Plaintiff seeks to set aside in her Motion for Relief, it was not admitted into evidence.

3

2. On April 1, 2019, Mansour and Samaha decided to return to Lebanon based on the advice of Majid Bouez ("Bouez"), their attorney in Lebanon, that a settlement had been reached in the Lebanese Proceedings.

3. Upon arriving at the airport in Beirut on April 2, 2019, Mansour was arrested and taken into custody.

4. In the course of her arrest, Mansour's cellular phone was seized, and she was told that she was going to be taken to a detention center where the situation would be explained to her.

5. After being detained at the airport for approximately 15 – 20 minutes, Mansour was placed inside a military vehicle occupied by armed soldiers, and was taken to an adjacent detention center.

6. Upon arrival at the detention center, Mansour was held in a waiting room and told that she had been arrested because of this case.

7. Mansour was shaking, crying, and very afraid.

8. From there, Mansour, who had been separated from Samaha, was taken to a foul-smelling room with no light, windows, or air conditioning, and placed in a small cage. A hole in the floor of that cage was to serve as Mansour's latrine. The bed in the cage was small and broken.

9. Mansour was kept in the cage for 12 hours without food.

10. While in the cage, Mansour heard a woman screaming and crying. Mansour believed that the woman was being tortured or harmed. Upon hearing the screams, Mansour fell to the floor in a panic and began screaming and crying out for help. In her hysteria, Mansour came to believe that she could potentially suffer a heart attack or a stroke.

11. Mansour is a diabetic and takes medication for her diabetes.

4

12. A soldier entered the room and asked Mansour why she was screaming. Mansour responded that she did not feel well, could not breathe, and had not taken her medication. In response, the solider told Mansour to shut up, ran the blade of his knife along the bars of her cage, and told her that he did not want to hit her if she continued yelling.

13. The following day, Mansour was transported to the Lebanese Internal Security Forces ("ISF") location by four armed soldiers for interrogation. A bag was placed over her head during the transport process.

14. Terrorists and other dangerous criminals are housed at the ISF.

15. Upon arriving at the ISF, Mansour was forced to remove her clothes and told that if she did not comply, her clothes would be removed for her.

16. While removing her clothes, Mansour was crying, screaming, and nearing the point of breakdown.

17. Thereafter, Mansour was taken to an interrogation room where she was questioned by an official by the name of Captain Sassine regarding this case. Soldiers were present during the interrogation.

18. The interrogation lasted for approximately 6-7 hours.

19. Mansour had not eaten for 24 hours prior to the interrogation.

20. When the door to the interrogation room was opened, Mansour was able to see Macaron and Alexander standing outside the doorway talking and laughing.

21. During the interrogation, Mansour was told that she would not permitted to leave the ISF if she did not dismiss this case and set aside the defaults that had been entered.

22. Mansour refused and stated that she would never dismiss this case, even if that decision resulted in her death.

23. Mansour was crying during the interrogation.

24. After Mansour's refusal, she was taken by armed and masked soldiers to a dark underground area within the ISF where dangerous criminals and terrorists were housed in cells.

25. Mansour was placed in an area near those cells and kept there overnight.

26. Mansour believed she would be killed that night.

27. The following morning, masked soldiers tortured an incarcerated terrorist within her sight.

28. Mansour interpreted that act as a threat that she would suffer a similar fate if she did not dismiss this case.

29. Given all that had transpired, Mansour felt unwell and collapsed. She was then given water and her blood pressure and blood sugar were checked.

30. Mansour was again taken to the interrogation room and again asked by Captain Sassine if she would dismiss this case. Mansour refused.

31. Captain Sassine left the interrogation room and returned an hour later with Samaha.

32. Samaha, who was crying, explained to Mansour that they would not be permitted to leave the ISF if she did not dismiss this case.

33. Mansour still refused.

34. A cellular phone was then brought into the interrogation room and Samaha was instructed to call Berkeley and direct him to dismiss this case.

35. Samaha complied and phoned Berkeley. However, during the conversation between Samaha and Berkeley, Mansour was able to snatch the phone away. While in possession of the phone, Mansour advised Berkeley that she and Samaha had been taken hostage and were

6

going to be killed. Mansour instructed Berkeley to call the Federal Bureau of Investigation ("FBI") for assistance and not to dismiss this case.

36. Captain Sassine then took the phone away from Mansour, returned it to Samaha, and instructed Samaha to tell Berkeley to dismiss this case.

37. Samaha complied. However, Mansour was yelling during the telephone conversation, so Berkeley would overhear, and instructing Berkeley to seek assistance from the FBI and not to dismiss this case.

38. A soldier told Mansour to stop screaming and warned her that failure to comply would result in her being taken underground and tortured.

39. The Notice of Dismissal was filed on April 5, 2019, and the Order of Dismissal was entered later that day. However, Mansour and Samaha were not released until April 11, 2019. Their release was only secured by pressure exerted by the United States government.

B. Samaha's Testimony

40. Samaha is Mansour's husband and a United States citizen.

41. Samaha and Mansour returned to Lebanon in April 2019 because they were advised that a settlement had been reached in the Lebanese Proceedings and that Mansour would receive her claimed inheritance upon her return to that country.

42. Upon their arrival on April 2, 2019, Mansour was taken into custody.

43. On April 4, 2019, Samaha was instructed to report to the ISF, where Mansour was being held.

44. At the ISF, Samaha was taken immediately to an underground area where dangerous criminals and terrorists were held. There, he found Mansour. The pair were kept in that area overnight.

7

45. Thereafter, Mansour and Samaha were taken to different interrogation rooms.

46. Samaha was interrogated about this case and instructed to dismiss it. Samaha was told that if he and Mansour did not comply, their daughter would be taken into custody and tortured.

47. Eventually, Samaha was taken to the interrogation room where Mansour was being kept.

48. A cellular phone was brought into the room and Samaha was instructed to call Berkeley to have him dismiss this case. Mansour was screaming and crying.

49. Samaha complied, but Mansour snatched the phone from him during the conversation and pleaded with Berkeley to call the FBI and not dismiss this case.

50. Captain Sassine grabbed the phone from Mansour and gave it back to Samaha and again instructed him to direct Berkeley to dismiss this case.

51. Samaha complied because he was afraid that he and Mansour would be killed if he did not.

52. Mansour never agreed to the filing of the Notice of Voluntary Dismissal.

53. Although an Order of Dismissal was entered dismissing this case, Mansour and Samaha were advised that they would not be released until Berkeley sent a letter of assurance that this case had specifically been dismissed with prejudice.

54. Berkeley complied and sent the requested correspondence contingent upon Mansour, Samaha, and their daughter being permitted to leave Lebanon.

55. Samaha and Mansour were released on April 11, 2019, with the assistance of the United States government.

56. On April 12, 2019, Mansour and Samaha boarded a flight out of Lebanon.

57. Samaha explained that any delay in filing the Motion for Relief was attributed to: threats of retribution, including death, if Samaha and Mansour returned to the United States and shared their ordeal with the Court; and a lack of funds necessary to file the Motion for Relief.

58. The Motion for Relief was filed days after receiving the funds necessary to proceed from the sale of a property.

 C. <u>Berkeley Aff.</u>

59. Berkeley initially served as Mansour's attorney in this case. <u>See</u> Berkeley Aff. [D.E. 98-3 <u>Id.</u> ¶ 4].

60. On April 2, 2019, Samaha advised Berkeley that Mansour had been taken hostage upon their arrival in Beirut because she had filed this case. <u>Id.</u> ¶¶ 5-7.

61. On April 4, 2019, Bouez informed Berkeley that Samaha had been taken hostage as well. <u>Id.</u> ¶ 9.

62. Bouez further informed Berkeley that Mansour and Samaha would not be released until this case had been dismissed along with the Lebanese Proceedings. <u>Id.</u> ¶ 11.

63. Because Mansour and Samaha were being held hostage and because they would not be released until this case had been dismissed, Berkeley filed the Notice of Voluntary Dismissal. <u>Id.</u> ¶¶ 12-13.

64. Berkeley was further advised that Mansour's and Samaha's release was also contingent on Berkeley sending correspondence to Macaron confirming the dismissal of this case specifically with prejudice. <u>Id.</u> ¶¶ 14-16; <u>see</u> Berkeley Aff. Comp. Ex. A [D.E. 98-3 at 7-8]; Berkeley Aff. Comp. Ex. B [D.E. 98-3 at 15-18]. Below is a portion of Berkeley's exchange with Macaron via WhatsApp concerning this demand:

9

_chat
[4/8/19, 3:14:00 PM] Dany Macaron: Messages to this chat and calls are now secured with end-to-end encryption.
[4/8/19, 3:14:00 PM] Dany Macaron: Hiiii
[4/8/19, 3:17:30 PM] Dany Macaron: Hello this is the lawyer Dany maakaron from Lebanon the lawyer of the sister and brother and mother of Lara I am the person who's in charge of the case and pls I will send you an what's up text to be added to finalize the case of Lara and Elie so they can be released
[4/8/19, 3:28:32 PM] Dany Macaron: <attached: 00000004-PHOTO-2019-04-08-15-28-32.jpg>
[4/8/19, 3:28:50 PM] Dany Macaron: <attached: 00000005-AUDIO-2019-04-08-15-28-50.opus>
[4/8/19, 3:29:29 PM] Dany Macaron: <attached: 00000006-AUDIO-2019-04-08-15-29-29.opus>
[4/8/19, 3:31:13 PM] Dany Macaron: Danymaakaron@gmail.com
[4/8/19, 3:35:08 PM] Lberk: I have received it. I will type it up and sign it and email it back to you. As I explained, in the United States Court system we file a notice of voluntary dismissal with prejudice in order to Close out a case and it's finality. So I cannot file this document with the court. The court case is actually closed in the system which means no documents can be filed. However I will provide it to you so you have it for your comfort.
[4/8/19, 3:41:10 PM] Dany Macaron: I appreciate ..waiting for your email...
[4/8/19, 4:44:53 PM] Dany Macaron: Pls if you signed and scanned thank you
[4/8/19, 5:20:25 PM] Dany Macaron: Pls if you can send it as soon as possible with our delication so we can printed tonight it already midnight that tomorrow the realase can be done(request *the name of Mr Pascal wadih antoun(lawyer and colleague). fady wadih layoun .Marlene wadih layoun.mona Omar Bach. Rolly George mansour . Alexandre George Mansour. and if possible all other names mentioned in the case..
[4/8/19, 5:21:07 PM] Lberk: Yes, I am working on it.
[4/8/19, 6:55:56 PM] Dany Macaron: ?

See Berkeley Aff. Comp. Ex. B [D.E. 98-3 at 17].

65. Berkeley also complied with this demand to secure Mansour and Samaha's release. See Berkeley Aff. [D.E. 98-3 Id. ¶ 15].

66. Berkeley acted under duress and for the sole purpose of securing Mansour and Samaha's release from captivity. Id. ¶ 19.

## APPLICABLE LAW

Rule 60 of the Federal Rules of Civil Procedure ("Rule 60") provides, in pertinent part:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> ***
>
> **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> ***

  **(6)** any other reason that justifies relief.

Fed. R. Civ. P. 60.

  Rule 60(b)(3) applies to "judgments which were unfairly obtained, not [to] those which are factually incorrect." Cordell v. Pac. Indem. Co., 380 F. App'x 942, 943 (11th Cir. 2010) (quoting Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir.1978)). "To prevail on a 60(b)(3) motion, the movant must prove by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." Cordell, 380 F. App'x at 943 (quoting Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir.2007)). Additionally, the movant "must also show that the conduct prevented the losing party from fully and fairly presenting his case or defense." Cordell, 380 F. App'x at 943 (quoting Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir.2000)).

  Rule 60(b)(6) "is inappropriate where the case falls into one of the other categories listed in subsections (1)–(5) of Rule 60(b)." Motes v. Couch, 766 F. App'x 867, 869 (11th Cir. 2019) (citing United States v. Real Prop. & Residence Located at Route 1, Box 111, Firetower Rd., Semmes, Mobile Cty., Ala., 920 F.2d 788, 791 (11th Cir. 1991)). "Under Rule 60(b)(6), the catchall provision of Rule 60(b), a party may also seek relief based on any other reason that justifies relief. To qualify for relief under this catchall provision, the moving party must demonstrate that the circumstances are sufficiently extraordinary to warrant relief." Jeffus v. Ray, 377 F. App'x 963, 965 (11th Cir. 2010) (citations and quotations omitted). "Rule 60(b) empowers the district court to vacate judgments whenever appropriate to accomplish justice." Motes, 766 F. App'x at 869 (citing Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984)).

11

Generally, a Rule 60(b) motion must be made within a reasonable time. See Fed. R. Civ. P. 60(c)(1). "What constitutes a reasonable time depends upon the circumstances of each case, including whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner." Gill v. Wells, 610 F. App'x 809, 811–12 (11th Cir. 2015) (quotations omitted) (quoting BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271, 1275 (11th Cir.2008)).

## DISCUSSION

The Lebanese Government Defendants argue that the Motion for Relief should be denied because:

- ➤ Mansour failed to meet and confer with the Lebanese Government Defendants prior to filing the Motion for Relief.

- ➤ The Motion for Relief is untimely.

- ➤ The Motion for Relief does not satisfy the requirements of Rule 60(b)(3) or Rule 60(b)(6)

- ➤ This case is subject to dismissal.

See Response [D.E. 94 at 7-21]. The undersigned addresses each argument in turn.

### 1. *Meet and Confer requirement*

The Lebanese Government Defendants argue that the Motion for Relief should be denied because Mansour violated Local Rule 7.1(a)(3) by failing "to make any effort to meet and confer prior to filing." See Response [D.E. 94 at 7-8].

Local Rule 7.1(a)(3) states in pertinent part:

> (3) *Pre-filing Conferences Required of Counsel.* Prior to filing any motion in a civil case . . . counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion. . . . *Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or*

12

>  *deny the motion* and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Local Rule 7.1(a)(3) (emphasis added). Thus, the imposition of sanctions or denial of a motion for failure to comply with Local Rule 7.1(a)(3) is discretionary. See Stiles Corp. v. Mt. Hawley Ins. Co., No. 12-CV-62045, 2013 WL 12086270, at *3 (S.D. Fla. Nov. 5, 2013) ("However, even where a violation of Local Rule 7.1 occurs, 'the Court enjoys discretion to decide whether to deny the motion because of the violation.") (quoting Alequin v. Darden Restaurants, Inc., No. 12-CV-61742, 2013 WL 3939373, at *9 (S.D. Fla. July 12, 2013)).

While Mansour concedes that she failed to comply with Local Rule 7.1(a)(3) prior to filing the Motion for Relief, she argues that a meet and confer would have been futile. See Reply [D.E. 98 at 4].

Given the Lebanese Government Defendants' arguments concerning the frivolousness of Mansour's claims, see Response [D.E. 94 at 15-21], and the discretionary language in Local Rule 7.1(a)(3), the undersigned finds that the Motion for Relief should not be denied on these grounds.

### 2. *Timeliness of the Motion for Relief*

The Lebanese Government Defendants further argue that the Motion for Relief should be denied because it was not "made within a reasonable time" as required by Rule 60(c)(1). See Response [D.E. 94 at 11-12]. As noted above, the Order of Dismissal was entered on April 5, 2019 and the Motion for Relief was filed on June 3, 2019 [D.E. 82, 83].

"What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." Ashford v. Steuart,

13

657 F.2d 1053, 1055 (9th Cir. 1981) (citing Lairsey v. Advance Abrasives Co., 542 F.2d 928, 930-31 (5th Cir. 1976)). "Most courts utilize a two-part analysis to evaluate reasonableness, taking into account the reasons for the delay and the potential for prejudice to the non-movant. First, the plaintiff must offer a good reason for any delay in filing. Second, the court must evaluate any potential for prejudice to the non-movant, which may result from reopening the judgment." Harduvel v. Gen. Dynamics Corp., 801 F. Supp. 597, 603 (M.D. Fla. 1992) (citations and quotations omitted) (citing Smith v. Jackson Tool & Die, Inc., 426 F.2d 5, 8 (5th Cir.1970)).

Based on Samaha's testimony regarding a lack of funds and threats of retribution, the undersigned finds good cause for the two-month delay in filing the Motion for Relief. See, e.g., Bucklon v. Sec'y, Fla. Dep't of Corr., 606 F. App'x 490, 494–95 (11th Cir. 2015) (holding that a Rule 60 motion filed 18-months after grounds for relief arose was made within a reasonable time).

Additionally, the only prejudice that the Lebanese Government Defendants claim to have sustained is having to litigate what they deem to be a frivolous claim. The undersigned does not find that this rises to the level of prejudice that would support denial of the Motion for Relief. See Harduvel, 801 F. Supp. At 604 ("The defendant faces only the hardship attending further litigation in an already protracted lawsuit and the prospect of an unfavorable result. These are not reasons sufficient to render the filing untimely.") (citing Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984)).[2]

---

[2] The Lebanese Government Defendants also argue that they dismissed the Defamation Actions in Lebanon in reliance of the Notice of Voluntary Dismissal. See Response [D.E. 94 at 12]. Given Mansour and Samaha's credible testimony regarding the treatment they received in Lebanon in connection with the prosecution of the Defamation Actions, the undersigned finds it curious that the Lebanese Government Defendants are arguing prejudice from the dismissal of the Defamation Actions.

14

Because Mansour has shown good cause for the delay and the Lebanese Government Defendants have not made a sufficient showing of prejudice, the undersigned concludes that the Motion for Relief was not untimely pursuant to Rule 60(c)(1).

### 3. *Requirements of Rule 60(b)(3) or Rule 60(b)(6)*

The Lebanese Government Defendants further argue that the Motion for Relief fails under: Rule 60(b)(3) because Mansour cannot show "that her decision to dismiss the case was the result of duress or other misconduct by any of the Defendants"; and Rule 60(b)(6) because Mansour has failed to demonstrate "exceptional circumstances sufficient to justify relief from the final judgment." See Response [D.E. 94 at 12-15].

*a. Rule 60(b)(3)*

As articulated above, to prevail under Rule 60(b)(3), the movant must: (1) "prove by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct"; and (2) "show that the conduct prevented the losing party from fully and fairly presenting his case or defense." Cordell, 380 F. App'x at 943. Moreover, relief requested from a judgment secured by duress and coercion triggers Rule 60(b)(3). See Interactive Edge, Inc. v. Martise, No. 97-CV-3354, 1998 WL 35131, at *3 (S.D.N.Y. Jan. 30, 1998).

"Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." Herald v. Hardin, 95 Fla. 889, 891 (Fla. 1928); see also McIntosh v. Consol. Edison Co. of New York, No. 96-CV-3624, 1999 WL 151102, at *2 (S.D.N.Y. Mar. 19, 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000) ("To succeed on a theory that an agreement was procured by duress, a plaintiff must show that he was compelled to agree to its terms by way of

15

wrongful and oppressive conduct that precluded the plaintiff from the exercise of his own free will.").

The credible testimony provided by Mansour and Samaha, along with the Berkeley Affidavit, demonstrate by clear and convincing evidence that Mansour, Samaha, and Berkeley's actions with respect to the filing of the Notice of Voluntary Dismissal were a product of duress and coercion. Specifically, the credible evidence before the undersigned is that: Mansour and Samaha were detained by armed guards; subjected to harsh psychological and physical conditions; and threatened with violence against them and their daughter and with lengthy imprisonment, all to force the filing of the Notice of Voluntary Dismissal. Additionally, Berkeley's unchallenged affidavit states that he filed the Notice of Voluntary Dismissal under duress to free Mansour and Samaha from their ordeal and guarantee their, and their daughter's, safe return to the United States. This is confirmed by the text exchange via WhatsApp between Berkeley and Macaron.

Moreover, given that the Notice of Voluntary Dismissal was filed and the Order of Dismissal was entered before a responsive pleading to the Amended Complaint had been filed, or any significant litigation had transpired, the undersigned further finds that Mansour was prevented from fully and fairly presenting her case.

The Lebanese Government Defendants also oppose the Motion for Relief by stating under oath that they were not involved in Mansour's arrest and detention. See Declarations of Lebanese Government Defendants [D.E. 94-1-94-5]. However, it is undisputed that the ordeal described herein occurred in conjunction with the issuance of an arrest warrant against Mansour, which was based on the Defamation Actions filed by Macaron and Mekanna. See Mekanna Decl. [D.E. 94-1 ¶¶ 14-20]; see also Response [D.E. 94 at 5-6, 12-14] ("As a result of the Arrest Warrant issued

against her, Plaintiff was detained at Beirut-Rafik Hariri International Airport upon arriving in Lebanon on April 2, 2019.").

In light of the foregoing, the undersigned finds that the Motion for Relief satisfies the requirements of Rule 60(b)(3).

    a.    <u>Rule 60(b)(6)</u>

Initially, the undersigned notes that Rule 60(b)(6) "is inappropriate where the case falls into one of the other categories listed in subsections (1)–(5) of Rule 60(b)." <u>Motes</u>, 766 F. App'x at 869 (citing <u>Real Prop. & Residence</u>, 920 F.2d at 791). Thus, granting the Motion for Relief pursuant to Rule 60(b)(3) renders moot the alternative Rule 60(b)(6) grounds. Nevertheless, for the sake of completeness, the undersigned addresses the Lebanese Government Defendants' argument that Mansour has failed to demonstrate the exceptional circumstances necessary to obtain relief under Rule 60(b)(6). <u>See</u> Response [D.E. 94 at 14-15].

"Rule 60(b) vests wide discretion in courts, but [the Supreme Court has] held that relief under Rule 60(b)(6) is available only in extraordinary circumstances. . . . Whether to grant relief under Rule 60(b) is a matter for the district court's sound discretion." <u>Lambrix v. Sec'y, Fla. Dep't of Corr.</u>, 851 F.3d 1158, 1170 (11th Cir. 2017) (some alterations in original) (citations and quotations omitted).

Considering Mansour's and Samaha's credible testimony regarding Mansour's detention and its harsh circumstances, which caused the filing of the Notice of Voluntary Dismissal, the undersigned finds it appropriate to grant the Motion for Relief on this alternative ground. <u>See</u> <u>Motes</u>, 766 F. App'x at 869 ("Rule 60(b) empowers the district court to vacate judgments whenever appropriate to accomplish justice.") (citing <u>Griffin</u>, 722 F.2d at 680).

17

### *4. Potential dismissal of this case*

The Lebanese Government Defendants further argue that the Court should use its discretion to deny the Motion for Relief because: the Court is without personal and subject matter jurisdiction over the Lebanese Government Defendants; the Lebanese Government Defendants are immune from suit in this case; and the Court should defer to Lebanon in adjudicating Mansour's cause of action under the doctrine of international comity. See Response [D.E. 94 at 15-20].

"Rule 60(b) . . . is a remedial provision intended to prevent injustice by allowing parties their day in court . . . . Recognizing the remedial intention of the rule, this Court has noted that it should be given a liberal construction." Greater Baton Rouge Golf Ass'n v. Recreation & Park Comm'n for Par. of E. Baton Rouge, 507 F.2d 227, 228 (5th Cir. 1975) (citing Padgett v. United States, 272 F.2d 774, 776 (5th Cir. 1959)). "It is generally held that even where there may be evidence in the record which would call for dismissal, any doubt should be resolved in favor of a trial on the merits." Greater Baton Rouge, 507 F.2d at 229 (citing Tozer v. Charles A. Krause Mill. Co., 189 F.2d 242, 245 (3d Cir. 1951); see also Rivera v. United States, 761 F. Supp. 126, 128 (S.D. Fla. 1991) ("Courts liberally apply Rule 60(b)(6) to allow a claim to be heard on its merits.").

Because a decision on the merits of this action had not been made prior to the entry of the Order of Dismissal, and the Lebanese Government Defendants will have the opportunity to raise these defenses in their response to the Amended Complaint, the undersigned does not find it appropriate to deny the Motion for Relief on these grounds. See Walton for Estate of Smith v. Fla. Dep't of Corr., No. 16-CV-1130, 2019 WL 462844, at *4 (M.D. Fla. Feb. 6, 2019) (granting relief under Rule 60(b) so that a decision on the merits could be made).

## RECOMMENDATION

In light of the foregoing, the undersigned RESPECTFULLY RECOMMENDS that the Motion for Relief [D.E. 83] be GRANTED. Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 8th day of January, 2020.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Jose E. Martinez
      Counsel of Record