UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH A. DAOU and KAREN M. DAOU,<br><br>                                  Plaintiffs,<br><br>     -against-<br><br>BLC BANK, S.A.L.; CREDIT LIBANAIS, S.A.L.;<br>AL-MAWARID BANK, S.A.L.; and BANQUE<br>DU LIBAN,<br><br>                                  Defendants. | Case No. 1:20-cv-04438 (DLC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OF AM BANK S.A.L.**

**SQUIRE PATTON BOGGS (US) LLP**
Gassan A. Baloul
Mitchell R. Berger
2550 M Street NW
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Joseph S. Alonzo
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

*Counsel for Defendant AM Bank S.A.L.*

January 8, 2021

# TABLE OF CONTENTS

                                                                                                                                       **Page**

TABLES OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT ............................................................................................................................... 2
I.     THE PARTIES' FORUM SELECTION AGREEMENT REQUIRES
       DISMISSAL. ................................................................................................................ 2
II.    PLAINTIFFS HAVE NOT MADE A PRIMA FACIE SHOWING OF
       PERSONAL JURISDICTION OVER AM BANK, REQUIRING DISMISSAL. ............. 6
III.   PLAINTIFFS FAIL TO ASSERT THEIR CLAIMS UNDER LEBANESE LAW,
       WHICH REQUIRES DISMISSAL OF THOSE CLAIMS. ............................................ 8
IV.   PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NO DAMAGES. ................ 10
CONCLUSION ........................................................................................................................ 10

# TABLES OF AUTHORITIES

Page(s)

**Federal Cases**

*Atlantic Marine Constr. Co. v. U.S. Dist. Court*,
   571 U.S. 49 (2013) ...................................................................................................................2

*Brodsky v. Match.com LLC*,
   09 Civ. 5328, 2009 U.S. Dist. LEXIS 101167 (S.D.N.Y. Oct. 28, 2009) ................................5

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991) ...................................................................................................................4

*Donnay USA, Ltd. v. Donnay Int'l S.A.*,
   705 F. App'x 21 (2d Cir. 2017) .................................................................................................3

*Giordano v. UBS, AG*,
   134 F. Supp. 3d 697 (S.D.N.Y. 2015) .......................................................................................3

*Hau Yin To v. HSBC Holdings, PLC*,
   700 F. App'x 66 (2d Cir. 2017) .................................................................................................7

*HDtracks.com, LLC v. 7digital Ltd.*,
   No. 18 Civ. 5823, 2020 U.S. Dist. LEXIS 21027 (S.D.N.Y. Feb. 6, 2020) ..............................7

*Karl Koch Erecting Co. v. New York Convention Center Dev. Corp.*,
   838 F.2d 656 (2d Cir. 1988) ......................................................................................................5

*Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2013) ........................................................................................................7

*Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013) ......................................................................................................6

*Licci v. Lebanese Canadian Bank*,
   739 F.3d 45 (2d Cir. 2013) ........................................................................................................8

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014) ..............................................................................................2, 3, 4

*McLarty Capital P'ship SBIC v. Brazda*,
   No. 18-cv-2599 (DLC), 2018 U.S. Dist. LEXIS 103615 (S.D.N.Y. June 20,
   2018) ..........................................................................................................................................2

*Medoil Corp. v. Citicorp.*,
   729 F. Supp. 1456 (S.D.N.Y. 1990) ..........................................................................................5

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007)..................................................................................................3

*Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*,
   No. 14-CV-4819, 2015 U.S. Dist. LEXIS 176994 (S.D.N.Y. Sep. 21, 2015)...........................8

*Silverman v. Carvel Corp.*,
   192 F. Supp. 2d 1 (W.D.N.Y. 2001) ........................................................................................5

*Stutts v. De Dietrich Grp.*,
   465 F. Supp. 2d 156 (E.D.N.Y. 2006) .....................................................................................8

*In re Terrorist Attacks on Sept. 11, 2001*,
   295 F. Supp. 3d 416 (S.D.N.Y. 2018), *rev'd and remanded on other grounds
   sub nom.*, *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779
   F. App'x 66 (2d Cir. 2019) .....................................................................................................6

*Togut v. Forever 21 Retail, Inc.*,
   285 F. Supp. 3d 643 (S.D.N.Y. 2018).....................................................................................7

**Rules**

Fed. R. Civ. P. 12................................................................................................................2, 7

**PRELIMINARY STATEMENT**

Every aspect of this lawsuit centers on Lebanon, and Plaintiffs contractually agreed with AM Bank (the "Bank") that they would litigate in Lebanon over whatever disputes they might have. Plaintiffs cannot disavow that forum-selection agreement. They opened their accounts with AM Bank in December 2019, fully aware and in the midst of the Lebanese economic and banking crisis, and circumstances are no different today. Nor can Plaintiffs avoid their forum-selection agreement with professed safety concerns, because they do not need to appear personally in a Lebanese court to litigate against the Bank. *See* the Declaration of Waddah H. El Chaer filed herewith ("El Chaer Decl."), ¶ 12. Further anchoring their claims in Lebanon, Plaintiffs opened accounts at AM Bank by making a local transfer from another Lebanese bank, and their funds remain safely on deposit at AM Bank in Lebanon, where the Bank has offered to return Plaintiffs' funds to them in the same manner in which they were deposited—by a check drawn on Lebanon's Central Bank, the Banque du Liban ("BDL"). Still more, the BDL has made clear that Plaintiffs' claims implicate Lebanon's sovereign interests in managing that nation's ongoing economic crisis, and thus should be adjudicated in Lebanon. *See* Naddour Declaration (ECF #65) at ¶¶ 13, 16. This Lebanon-centric lawsuit does not belong in this Court, and should be dismissed pursuant to the doctrine of *forum non conveniens*.

Nor could Plaintiffs keep their claims in this Court because they fail to make a *prima facie* showing of personal jurisdiction over the Bank. They have not shown, and could not show, that AM Bank processed transactions through its U.S. correspondent banks that give rise to the Plaintiffs' claims. Rather, as confirmed in the Bank's moving brief ("Motion," ECF #58) as well as the Declaration of Youssef El Khoury ("YEK Decl.," ECF #41-2), there have been only two transactions into or out of the Plaintiffs' accounts at the Bank, neither of which was processed through the Bank's U.S. correspondent banks. Plaintiffs argue that they should be permitted jurisdictional discovery, but

1

courts routinely deny jurisdictional discovery where, as here, plaintiffs fail to make a *prima facie* showing of jurisdiction.

In light of these insurmountable flaws in Plaintiffs' claims, this Court need not consider those claims on the merits. Nevertheless, Plaintiffs' claims are subject to dismissal under Rule 12(b)(6), because they fail to plausibly state a claim under governing Lebanese law. Plaintiffs also fail to plausibly allege damages, because they deposited funds with the Bank in the form of a check drawn on the BDL and payable in Lebanon, and—at Plaintiffs' request—the Bank provided Plaintiffs with a check, for the full amount of their deposit (plus interest), drawn on the Bank's account at the BDL and payable in Lebanon. Neither Lebanese law nor the General Agreements with AM Bank that Plaintiffs signed require the Bank to return Plaintiffs' funds to them <u>in the United States</u>. Accordingly, separate from the forum selection clause and the lack of personal jurisdiction, and for the other reasons set forth in the Motion, Plaintiffs fail to state any claim against the Bank for which relief may be granted. The Amended Complaint ("Am. Compl.," ECF #50) must now be dismissed.

## **ARGUMENT**

**I.    THE PARTIES' FORUM SELECTION AGREEMENT REQUIRES DISMISSAL.**

The General Agreements that govern the parties' relationship include, at Article 68, a <u>mandatory</u> forum selection clause requiring Plaintiffs to bring their claims <u>exclusively</u> in the courts of Beirut, Lebanon. YEK Decl. ¶ 20 and Exhibits 2-3, Article 68. This alone requires dismissal of Plaintiffs' claims pursuant to the doctrine of *forum non conveniens*. *See, e.g.*, *Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60 (2013); *Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014) ("*Atlantic Marine* … reaffirms … a strong federal public policy supporting the enforcement of forum selection clauses."); *McLarty Capital P'ship SBIC v. Brazda*, No. 18-cv-2599 (DLC), 2018 U.S. Dist. LEXIS 103615, at *5 (S.D.N.Y. June 20, 2018) ("'[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to

2

the forum specified in that clause' unless 'extraordinary circumstances unrelated to the convenience of the parties' exist.") (quoting *Atlantic Marine*, 571 U.S. at 62).

The forum selection clause in the parties' General Agreements is "presumptively enforceable" pursuant to the "four-part analysis" courts in this Circuit apply when determining whether to dismiss based on a forum selection clause. *See* Motion at 8-9 (discussing *inter alia Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 702 (S.D.N.Y. 2015); *Martinez*, 740 F.3d at 217; *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007)). Article 68: (i) was clearly stated in the parties' contract, and thus was "reasonably communicated" to the Plaintiffs; (ii) is mandatory because it <u>requires</u> Plaintiffs to litigate their claims in Beirut; and (iii) plainly encompasses the parties and claims in this action. *See Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383-84 (internal quotations and citations omitted)). Plaintiffs do not dispute, and thus concede, each of these points, and thus that the forum selection clause is "presumptively enforceable."

Instead, Plaintiffs argue that the forum selection clause they agreed to in December 2019 is "unreasonable or unjust," and thus unenforceable, "due to the current crisis in Lebanon." *See* Plaintiffs' opposition brief ("Opposition" or "Opp.," ECF #73) at 9-10. But as the Amended Complaint makes clear, Plaintiffs were well aware of the Lebanese banking crisis when they signed the General Agreements containing Article 68 in December 2019. *See* Motion at 3-5. Plaintiffs thus cannot show any material change in circumstances in Lebanon since December 2019 that would make enforcement of the forum selection clause unreasonable or unjust. *See, e.g., Donnay USA, Ltd. v. Donnay Int'l S.A.*, 705 F. App'x 21, 25 (2d Cir. 2017) ("where—as here—'it can be said with reasonable assurance that at the time they entered the contract, the parties … contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable.'") (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S.

3

1, 16 (1972)).[1] Moreover, the El Chaer Decl. and the declaration of Plaintiffs' witness Dr. Karim Torbey (ECF #70) note that Lebanese courts have been handling numerous lawsuits similar to the one here. Plaintiffs' purported dissatisfaction with the outcomes of some of those cases does not render the forum selection clause unreasonable or unjust.

Plaintiffs also argue that requiring Plaintiffs to litigate in Beirut would involve "risking their lives and safety." Opp. at 10. But as explained in the El Chaer Decl., Plaintiffs would not have to travel to Lebanon at all to litigate their claims in Beirut. Rather, Lebanese courts permit plaintiffs to provide their Lebanese counsel with a power of attorney and then appear in the lawsuit through counsel without ever appearing in person. El Chaer Decl. ¶ 12. Plaintiffs have already demonstrated that they are fully capable of retaining counsel in Lebanon by filing sworn declarations of two Lebanese attorneys with their Opp., and retaining a third Lebanese attorney to send a demand letter to the Bank. Am. Compl. ¶ 342. Accordingly, litigating their claims in Beirut, in accordance with the General Agreements, would create no safety risk.[2]

The assertion in the declaration of Aline El Khoury that a Lebanese court might view Article 68 as a "contract of adhesion" is irrelevant because, as Plaintiffs' Opp. explicitly acknowledges, the enforceability of the forum selection clause is determined by U.S. federal law, not the law of the forum directed by the clause. Opp. at 9; *see e.g. Martinez*, 740 F.3d at 217-18 ("Federal law must govern the ultimate enforceability of a forum selection clause"). And under U.S. federal law, forum selection clauses remain presumptively valid in contracts of adhesion. *See, e.g., Carnival Cruise Lines, Inc. v.*

---

[1] Plaintiffs argue they "did not contemplate how dangerous Lebanon would become when they opened an account **with BLC in 2016**." Opp. at 14 (emphasis added). This has no bearing on what Plaintiffs knew about the crisis and conditions in Lebanon in **December 2019**, when they opened their accounts **at AM Bank**.

[2] For this and other reasons, the long discussion of the *Samaha* case in Plaintiffs' Opposition is wholly irrelevant, as are Plaintiffs' assertions about an incident involving Lebanese reporter Mohammad Zbib and three former employees of AM Bank's Chairman, Marwan Kheireddine. As the articles Plaintiffs' counsel appends to his declaration make clear, Mr. Kheireddine was not involved in and had no prior knowledge of the incident and turned the three men over to law enforcement as soon as he learned of it. (ECF #71-42).

*Shute*, 499 U.S. 585, 593-95 (1991); *Brodsky v. Match.com LLC*, 09 Civ. 5328, 2009 U.S. Dist. LEXIS 101167, *7-8 (S.D.N.Y. Oct. 28, 2009) ("Supreme Court authority and case law in this Circuit … makes clear that a forum selection clause is not unenforceable even if it appears in a contract of adhesion"). This is particularly true where, as here, there is no showing of unequal bargaining power, given that Plaintiffs are wealthy, sophisticated individuals who voluntarily sought a new banking relationship with AM Bank, while maintaining prior relationships with two other Lebanese banks.[3]

It is irrelevant that the forum selection clause requires Plaintiffs to bring their claims in Lebanon, but permits the Bank to bring claims against Plaintiffs either in Lebanon or in Plaintiffs' place of residence. "[T]he nonmutuality of [a] forum-selection clause does not render it invalid." *Medoil Corp. v. Citicorp.*, 729 F. Supp. 1456, 1459-60 (S.D.N.Y. 1990) (citing *Karl Koch Erecting Co. v. New York Convention Center Dev. Corp.*, 838 F.2d 656, 659-60 (2d Cir. 1988); *Silverman v. Carvel Corp.*, 192 F. Supp. 2d 1, 5 (W.D.N.Y. 2001) (same).

Even apart from the General Agreements, Plaintiffs' claims would be subject to dismissal pursuant to *forum non conveniens*. As the BDL motion to dismiss makes clear, permitting Plaintiffs' lawsuit to proceed here would substantially undermine Lebanon's sovereign interests in implementing monetary policy, including restrictions on transfers of currency out of Lebanon, to address an unprecedented crisis and rebuild its economy. *See* BDL Mem. of Law (ECF #63) at 1-2, 5-6, 21-27; Naddour Declaration at ¶¶ 12-16 (discussing measures taken by BDL to address the crisis, including restrictions on international transfers, and confirming that this lawsuit "would frustrate" BDL's efforts). On the contrary, New York has no significant interest in Plaintiffs'

---

[3] While U.S. law governs the forum selection clause's enforceability, the clause likely would also be enforceable under Lebanese law—and even if not, Lebanese courts would still be the proper forum for this dispute pursuant to Article 100 of the Lebanese Code of Civil Procedure, because the Bank is headquartered in Beirut, the Plaintiffs' Bank accounts were opened in Lebanon, the Plaintiffs' funds were deposited in Lebanon, and the Bank provided the Plaintiffs' representative with a check for their funds in Lebanon, payable in Beirut. *See* El Chaer Decl. ¶¶ 4-13.

5

claims against the Bank, given that no party resides in New York and none of the events at issue occurred in New York (not even any transactions through a correspondent bank).

## II. PLAINTIFFS HAVE NOT MADE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER AM BANK, REQUIRING DISMISSAL.

Apart from the parties' forum selection clause, Plaintiffs' claims against the Bank must be dismissed because Plaintiffs have not met their burden of "making a prima facie showing that personal jurisdiction over the defendant exists." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 424 (S.D.N.Y. 2018) (citation omitted), *rev'd and remanded on other grounds sub nom.*, *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66 (2d Cir. 2019); *see Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citation omitted).

As discussed more fully in the Motion, for specific jurisdiction over the Bank, Plaintiffs must make a *prima facie* showing that the Bank made financial transfers through U.S. banks that served "as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress," *Licci*, 732 F.3d at 171.[4] Plaintiffs have not done so, requiring dismissal. The only deposits or withdrawals on Plaintiffs' AM Bank accounts were (1) Plaintiffs' initial deposit of a check into the Daou-Gerges Account on December 3, 2019, which was cleared in Lebanon through the BDL's payment system; and (2) the transfer from the Daou-Gerges Account to the Daou Plaintiffs' Account on February 25, 2020, which was settled on the Bank's own books in Lebanon. YEK Decl. ¶¶ 29, 33-35, 37, 43-44, 51-52, 54. No transactions on Plaintiffs' Bank accounts were processed through the Bank's New York correspondent bank. *Id.* ¶¶ 34, 44, 54.[5]

---

[4] For this reason, the cases cited in Plaintiffs' Opp. in support of jurisdiction, including *Licci* and *Averbach*, are inapposite. In those cases, the court found that the plaintiffs had plausibly alleged that the foreign bank defendants had processed transactions giving rise to the plaintiffs' claims through their U.S. correspondent banks. Here, as confirmed in the Motion and the YEK Declaration, none of the transactions at issue were processed through the Bank's U.S. correspondents.

[5] The Declaration of Joseph Daou (ECF #68) **falsely** alleges that "AM Bank utilized its New York correspondent bank account" to accept the check deposit into the Daou-Gerges Account on December 3, 2019. Daou Decl. ¶ 152; *see also*

6

Faced with these facts, Plaintiffs are reduced to arguing that AM Bank somehow used the mere existence of its U.S. correspondent banks to solicit Plaintiffs' business. Opp. at 7-8. But this is insufficient to give rise to jurisdiction under *Licci*, which makes clear that "'mere maintenance' of a correspondent bank account in New York does not suffice to establish personal jurisdiction there." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 65 (2d Cir. 2012); *see id.* at 65 n.13 (collecting cases); *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) ("the mere maintenance of correspondent bank accounts at an affiliate bank in New York" does not give rise to personal jurisdiction) (citation omitted). Rather, *Licci* and its progeny require a showing that <u>transactions through</u> a U.S. correspondent bank give rise to Plaintiffs' injuries against the foreign bank defendant (here, AM Bank). Plaintiffs have not, and could not, make any such showing here, and thus Plaintiffs cannot make a *prima facie* showing of personal jurisdiction over the Bank.[6]

Finally, Plaintiffs retreat to the position that, even if they cannot make a *prima facie* showing of personal jurisdiction (which they have not and cannot), they "should be permitted discovery" with the goal of somehow manufacturing a basis for jurisdiction. Opp. at 7. But "'[d]iscovery need not be granted to allow a plaintiff to engage in an unfounded fishing expedition for jurisdictional facts.'" *Togut v. Forever 21 Retail, Inc.*, 285 F. Supp. 3d 643, 648 (S.D.N.Y. 2018) (quoting *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 315 (S.D.N.Y. 2015)); *HDtracks.com, LLC v. 7digital Ltd.*, No. 18 Civ. 5823, 2020 U.S. Dist. LEXIS 21027, at *17 (S.D.N.Y. Feb. 6, 2020) (same) (denying jurisdictional discovery where plaintiff failed to state a

---

*id.* ¶ 188 ("The Banks accepted our USD knowing the USD was coming through correspondent bank accounts in New York."). As set forth in the YEK Decl., these statements are **false.** The deposit into the Daou-Gerges Account was made by way of check drawn on CL's account at the BDL, which was cleared within Lebanon through the BDL's payment system. YEK Decl. ¶¶ 29-37. Plaintiffs have no basis to assert otherwise, and the Court should not credit these baseless and fact-free assertions, even on a Rule 12 motion, despite being presented in a sworn declaration.

[6] Plaintiffs' *non sequitur* allegations about a purported purchase of New York property by the Bank's Chairman cannot possibly create either general or specific personal jurisdiction over <u>the Bank</u>, nor are they relevant to the merits of Plaintiffs' claims.

7

*prima facie* claim for jurisdiction); *Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*, No. 14-CV-4819, 2015 U.S. Dist. LEXIS 176994, at *24-25 (S.D.N.Y. Sep. 21, 2015) ("To avoid what could amount to a fishing expedition, jurisdictional discovery is appropriate when Plaintiffs' preliminary showings . . . reveal more than mere speculations or hopes that jurisdiction exists.") (internal quotation marks and citation omitted). "District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction." *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) (collecting cases). Here, Plaintiffs are not entitled to jurisdictional discovery because they have failed to make a *prima facie* showing of personal jurisdiction over the Bank, and the only basis on which they plausibly allege such jurisdiction—transactions through the Bank's U.S. correspondent bank—has been squarely addressed and confirmed false in the YEK Declaration.

### III. PLAINTIFFS FAIL TO ASSERT THEIR CLAIMS UNDER LEBANESE LAW, WHICH REQUIRES DISMISSAL OF THOSE CLAIMS.

Under New York's choice-of-law rules, and as set forth more fully in the Motion, Lebanese substantive law applies to Plaintiffs' claims, because Lebanon is the jurisdiction with the greatest interest in the litigation. *See, e.g., Licci v. Lebanese Canadian Bank*, 739 F.3d 45, 48 (2d Cir. 2013) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)); Motion at 17-18. Plaintiffs do not argue otherwise; instead, they argue that a Lebanese court might not apply the law of Lebanon. But this Court applies New York choice-of-law rules to determine what substantive law to apply.[7]

Plaintiffs also argue (incorrectly) that the Bank "relies entirely on its unenforceable forum selection clause [to] foist a non-existent choice of law on Plaintiffs and without ever alleging Lebanese

---

[7] Unsurprisingly, and contrary to Plaintiffs' claims, a Lebanese court would likely apply Lebanese law to this dispute because AM Bank is a Lebanese bank and Plaintiffs are Lebanese citizens; Plaintiffs' accounts were opened in Lebanon; Plaintiffs' deposit was made in Lebanon; the primary obligations between the parties were to be performed in Lebanon; all the transactions at issue were processed within Lebanon; and the General Agreements contain multiple references to Lebanese laws. *See* El Chaer Decl. ¶ 14. On the contrary, there is no substantial connection between this action and New York.

law is different." Opp. at 20. While (as discussed in the Motion) Plaintiffs' claims fail to state viable claims under either Lebanese or New York law, this does not mean there is no difference. Rather, as set forth in the Motion and the Declaration of Malek Arslan (ECF #41-9), several of Plaintiffs' causes of action are not even recognized under Lebanese law.

Further, it is clear that under Lebanese law, as set forth in both the Arslan and El Chaer declarations, the Bank is under no obligation to provide Plaintiffs with a transfer of their funds outside of Lebanon or a check payable in the United States. *See* El Chaer Decl. ¶¶ 16-20; Arslan Decl. ¶¶ 14-19. Instead, under Lebanese law, the Bank may return Plaintiffs' funds in a form equivalent to the form in which they were received—here, by way of a check drawn on an account at BDL and payable in Lebanon. El Chaer Decl. ¶ 15-16. Accordingly, under Lebanese law the Bank was within its rights to return the funds by way of a check, drawn on the Bank's account at BDL and payable in Beirut, rather than by way of a transfer to the United States or a check payable in the United States. *Id*.

Plaintiffs' fact-free assertions that Bank personnel made oral representations that the Bank would provide Plaintiffs with their funds in the U.S. via wire transfers are directly contradicted by the General Agreements between the parties, which make clear that the Bank has the discretion to decline any transaction requested by Plaintiffs. Lebanese courts would not accept Plaintiffs' allegations as evidence, because the Lebanese Code of Civil Procedure requires that contradiction of a writing may only be proven through other written evidence, which Plaintiffs have not presented. El Chaer Decl. ¶¶ 21-22.[8]

---

[8] Plaintiffs also assert that the phrase "Valid to deposit in USA" was written on a "copy" of the check the Bank issued to Plaintiffs. However, the document to which Plaintiffs refer, Exhibit 23 to the Daou Declaration, makes clear that the phrase is not written on the check itself. Nor do Plaintiffs allege, nor could they, that a Bank employee wrote that phrase, rather than Plaintiffs or Plaintiffs' representative, and AM Bank could readily demonstrate as much from its retained copy of that document. In any event, that handwritten language on a transaction receipt cannot change the terms of the check itself, which states that the check is payable in "BEIRUT" and is "To be cleared in Lebanon."

## IV. PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NO DAMAGES.

Plaintiffs' claims also fail for the independent reason that they cannot show damages. Plaintiffs' only deposit of funds with the Bank was in the form of a check, drawn on Credit Libanais's account at BDL and payable exclusively in Beirut. Am. Compl. ¶ 313; YEK Decl. Exhibit 5 (ECF #41-7). Those funds were deposited into the Daou-Gerges Account in December 2019. *Id.* In February 2020, at Plaintiffs' request, AM Bank transferred those funds to the Daou Plaintiffs' Account, where they remain today. *See* Am. Compl. ¶ 52 (admitting that AM Bank has "credited Plaintiffs' account"). In March 2020, the Bank provided Plaintiffs with a check drawn on the Bank's account at the BDL, in the full amount Plaintiffs requested (an amount <u>larger</u> than Plaintiffs' deposit with the Bank), and payable in Beirut. Am. Compl. ¶¶ 337-38; YEK Decl. Exhibit 6 (ECF #41-8). Accordingly, the Bank has provided the Plaintiffs with the return of their funds (plus interest), in the same manner in which the Plaintiffs deposited them—by way of check drawn on a Lebanese bank's account at the BDL, payable in Beirut. This is all the Bank is required to do under Lebanese law. *See* El Chaer Decl. ¶¶ 15-20. The Bank is not obligated to provide Plaintiffs with their funds <u>in the United States</u>, particularly when BDL has restricted international wire transfers. In the meantime, Plaintiffs' funds remain in their account, and thus Plaintiffs cannot plausibly allege any damages and therefore cannot state viable claims against the Bank.

## CONCLUSION

The Amended Complaint should be dismissed as against AM Bank with prejudice.

Dated: January 8, 2021

Respectfully submitted,
**SQUIRE PATTON BOGGS (US) LLP**

/s/ **_Gassan A. Baloul_**
Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com
2550 M Street NW
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

Joseph S. Alonzo
joseph.alonzo@squirepb.com
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Counsel for Defendant AM Bank S.A.L.*